# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

MELISSA BUCK; CHAD BUCK; SHAMBER
FLORE; ST. VINCENT CATHOLIC
CHARITIES,

               Plaintiffs,

        v.

ROBERT GORDON, in his official capacity as
the Director of the Michigan Department of
Health and Human Services; HERMAN
MCCALL, in his official capacity as the
Executive Director of the Michigan Children's
Services Agency; DANA NESSEL, in her
official capacity as Attorney General of
Michigan; ALEX AZAR, in his official capacity
as the Secretary of the United States Department
of Health and Human Services; UNITED
STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

No. 1:19-cv-00286-RJJ-PJG

HON. ROBERT J. JONKER

**<u>BRIEF IN SUPPORT OF
MOTION TO INTERVENE</u>**

**ORAL ARGUMENT REQUESTED**

**EXPEDITED CONSIDERATION
REQUESTED**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND .....................................................................................................2

LEGAL STANDARD................................................................................................6

ARGUMENT ..........................................................................................................6

I.     THE DUMONTS ARE ENTITLED TO INTERVENTION AS OF RIGHT ...................6

     A.     The Dumonts' Motion Is Timely ...........................................................6

     B.     The Dumonts Have a Substantial Legal Interest in the Action............................7

     C.     The Dumonts' Interests May Be Impaired Without Intervention .......................11

     D.     No Other Party Adequately Represents the Dumonts' Interests...........................12

II.     IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS
DISCRETION TO ALLOW PERMISSIVE INTERVENTION .....................................13

CONCLUSION.....................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blount-Hill* v. *Bd. of Educ. of Ohio*,
 195 F. App'x 482 (6th Cir. 2006) ............................................................9

*Bradley* v. *Milliken*,
 828 F.2d 1186 (6th Cir. 1987) ..............................................................13

*City of St. Louis* v. *Velsicol Chemical Corp.*,
 708 F. Supp. 2d 632 (E.D. Mich. 2010)...................................................8

*Coalition to Defend Affirmative Action* v. *Granholm*,
 240 F.R.D. 368 (E.D. Mich. 2006) ........................................................10

*Dumont* v. *Lyon*,
 341 F. Supp. 3d 706 (E.D. Mich. 2018)...........................................2, 3, 9

*Fulton* v. *City of Phila.*,
 --F.3d--, 2019 WL 1758355 (3d Cir. 2019) ..........................................12

*Grutter* v. *Bollinger*,
 188 F.3d 394 (6th Cir. 1999) ...........................................6, 10, 12, 13

*Jansen* v. *City of Cincinnati*,
 904 F.2d 336 (6th Cir. 1990) .......................................................7, 8, 11

*Linton* v. *Comm'r of Health and Env't., State of Tenn.*,
 973 F.2d 1311 (6th Cir. 1992) .....................................................7, 8, 11

*Meriwether* v. *Trs. of Shawnee State Univ.*,
 2019 WL 2052110 (S.D. Ohio 2019)......................................................13

*Mich. State AFL-CIO* v. *Miller*,
 103 F.3d 1240 (6th Cir. 1997) .......................................................7, 11, 12

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am.* v. *City of Jacksonville*,
 508 U.S. 656 (1993) ...............................................................................10

*Purnell* v. *City of Akron*,
 925 F.2d 941 (6th Cir. 1991) ..............................................................6, 13

*Trbovich* v. *United Mine Workers of Am.*,
 404 U.S. 528 (1972)................................................................................12

*Usery* v. *Brandel*,
    87 F.R.D. 670 (W.D. Mich. 1980) ............................................................................10

**Other Authorities**

Fed. R. Civ. P. 24.....................................................................................6, 7, 12, 13

Fed. R. Civ. P. 41............................................................................................1, 5

## CONCISE STATEMENT OF REASONS
## <u>SUPPORTING PROPOSED INTERVENOR DEFENDANTS' POSITION</u>

The Dumonts satisfy all four requirements for intervention as of right. Fed. R. Civ. P. 24(a)(2). *First*, the Motion is timely because it is filed at the very early stages of this action (the "Action"). *Second*, the Dumonts have a substantial legal interest in the subject matter of the case because the Complaint directly challenges the Dumont's prior litigation, *Dumont et al.* v. *Gordon et al.*, 2:17-cv-13080-PDB-EAS (E.D. Mich. 2019). *Third*, the Dumonts' interest may be impaired in the absence of intervention because this Action directly challenges the enforceability of the *Dumont* Settlement Agreement, through which the Dumonts agreed to dismiss their claims against the State of Michigan with prejudice in return for a commitment to enforce the non-discrimination provision in child placing agency contracts. And *finally*, no party currently before the Court can adequately represent the Dumonts' interest because, although Defendants also seek to preserve the Settlement Agreement and defend the State's position reflected in the Settlement Agreement, Defendants are unlikely to assert all the defenses the Dumonts intend to assert.

Alternatively, this Court should exercise discretion to allow permissive intervention. Fed. R. Civ. P. 24(b)(1). Both Plaintiffs and the Dumonts raise claims or defenses related to whether the First, Fifth and Fourteenth Amendments to the U.S. Constitution require the State to permit state-contracted child placing agencies to violate the contracts' non-discrimination requirement that includes sexual orientation.

## PRELIMINARY STATEMENT

By their complaint, Plaintiffs seek to challenge *Dumont* v. *Gordon*, 2:17-cv-13080-PDB-EAS (E.D. Mich.) ("*Dumont*"), undo the relief obtained by Kristy and Dana Dumont ("the Dumonts") in the settlement of their claims, and force the State of Michigan to abandon the commitments it made in *Dumont* to prohibit state-contracted, taxpayer-funded child placing agencies ("CPAs") from discriminating against and excluding prospective foster and adoptive families headed by same-sex couples.

The core legal issues raised in this Action were asserted in *Dumont*, in which St. Vincent Catholic Charities ("STVCC"), Melissa Buck, Chad Buck, and Shamber Flore (collectively, the "*Buck* Plaintiffs") intervened as defendants, raising the identical constitutional arguments they now raise in this case. After denial of the State's and the *Buck* Plaintiffs' motions to dismiss, the State ultimately agreed to settle with the Dumonts and their co-plaintiffs and, in so doing, agreed to enforce the non-discrimination provisions in its CPA contracts and take corrective action against CPAs that failed to comply with those provisions. The *Dumont* court then dismissed the case "pursuant to the terms of the Settlement Agreement." *Dumont*, ECF No. 83 at PageID.1469; *see also* Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request only by a court order, on terms that the court considers proper."). That settlement meant that the Dumonts could pursue their goal of adopting a child out of foster care in Michigan without being denied access to the same array of CPAs that are available to heterosexual couples and without being subjected to the stigma of discrimination. Rather than take any of the procedural avenues available to them in *Dumont* to challenge the State's agreement to enforce the non-discrimination provisions in its CPA contracts, the *Buck* Plaintiffs instead filed this new suit as a collateral attack on the Settlement Agreement, which, if successful, would deprive the Dumonts of the benefit of their bargain with the State.

Because the Dumonts meet all prongs of the Sixth Circuit's inquiry for intervention as of right—(1) a timely motion; (2) a substantial legal interest that will be impaired; and (3) inadequate representation from the parties before the Court—and, in the alternative, for permissive intervention, they should be allowed to intervene in this Action to protect their interest in the State's enforcement of the non-discrimination provision in all of its CPA contracts.

## BACKGROUND

In 2016 and 2017, Kristy and Dana Dumont contacted two state-contracted CPAs, STVCC and Bethany Christian Services, to inquire about adopting a child from foster care and were turned away because the agencies stated that they "do[] not work with same-sex couples." *Dumont*, ECF No. 1 at PageID.16-17.   On September 20, 2017, the Dumonts, along with Erin and Rebecca Busk-Sutton (collectively the "*Dumont* Plaintiffs"),[1] filed a complaint against Nick Lyon, in his official capacity as the Director of the Michigan Department of Health and Human Services ("MDHHS"), and Herman McCall, in his official capacity as the Executive Director of the Michigan Children's Services Agency (collectively the "*Dumont* State Defendants"), in the Eastern District of Michigan, challenging the State's practice of permitting state-contracted and taxpayer-funded CPAs to use religious criteria to exclude same-sex couples from fostering or adopting children in the foster care system.   *See generally id.*   The case was assigned to the Honorable Paul D. Borman.   The *Dumont* Plaintiffs claimed that delegating the public function of providing foster care services to a religious organization and then authorizing the organization to exclude participants based on religious criteria violated the Establishment Clause.   *Id.* at

---

[1]      The claims of another Plaintiff, Jennifer Ludolph, who claimed only taxpayer standing, were dismissed.  *Dumont* v. *Lyon*, 341 F. Supp. 3d 706, 714 (E.D. Mich. 2018).  None of the other *Dumont* Plaintiffs are currently moving to intervene alongside the Dumonts.

PageID.1–4.   The *Dumont* Plaintiffs further claimed that discrimination based on sexual orientation in this government program violated the Equal Protection Clause because it furthered no legitimate government interest and, to the contrary, undermined the State's interest in finding families for children by reducing their placement options.

The *Buck* Plaintiffs, represented by the same counsel as in this Action, moved for leave to intervene in *Dumont*. *Dumont*, ECF No. 18. The *Dumont* Plaintiffs did not oppose the motion with respect to STVCC, acknowledging that STVCC's contracts with the DHHS were at issue. *Dumont*, ECF No. 21. Following oral argument on the motion with respect to Melissa Buck, Chad Buck and Shamber Flore, the *Dumont* court granted the motion to intervene in its entirety. *Dumont*, ECF Nos. 33 & 34.

The *Dumont* State Defendants and the *Buck* Plaintiffs both moved to dismiss the *Dumont* complaint. *Dumont* ECF Nos. 16 & 19. The *Buck* Plaintiffs' motion asserted (as does their complaint here) that the court could not constitutionally grant the relief sought by the *Dumont* Plaintiffs because it would violate STVCC's free exercise and free speech rights. Following oral argument, the *Dumont* court denied the motions to dismiss the *Dumont* Plaintiffs' constitutional claims, holding that their allegations that the State authorized state-contracted, taxpayer-funded agencies to use religious criteria to exclude same-sex couples stated claims under the Establishment and Equal Protection Clauses of the U.S. Constitution. *Dumont* v. *Lyon*, 341 F. Supp. 3d 706, 714 (E.D. Mich. 2018); *see also id.* at 740, 743 (holding that the allegations of the complaint "surely 'implicate' the Establishment Clause and plausibly suggest 'excessive entanglement'" and that the Dumont Plaintiffs were "entitled to an opportunity to conduct discovery to support their claim that the State's practice of continuing to contract with faith-based agencies that . . . turn away same-sex couples lacks a rational basis"). The court was also

"unconvinced" that STVCC could "prevail on a claim that prohibiting the State from allowing the use of religious criteria by those private agencies hired to do the State's work would violate St. Vincent's Free Exercise or Free Speech rights." *Id.* at 749.

Following denial of the motions to dismiss, the parties, including the *Buck* Plaintiffs, engaged in substantial discovery. This included the exchange of written discovery (including 37 interrogatories and 28 requests for admission propounded by the *Buck* Plaintiffs) and document production (totaling over 66,600 pages produced by the parties), through which it was revealed, inter alia, that:

- MDHHS requires CPAs to provide services including recruitment, orientation and training of prospective families pursuant to their CPA contracts (ECF No. 1-7 at PageID.124);

- It is MDHHS' position that CPAs under contract with MDHHS must work with all prospective foster or adoptive parents who need or seek such services (ECF No. 1-4 at PageID.94-95);

- MDHHS had determined, through special investigation, that two CPAs had policies of not accepting same-sex couples, and had taken corrective action against them (ECF No. 1-4 at PageID.88-90);

- MDHHS had initiated investigations, still in process, against STVCC and two branches of Bethany Christian Services for alleged anti-discrimination policy violations as a result of the allegations in the *Dumont* complaint (*Id.*; *see also* ECF No. 6-16 at PageID.379).

Before depositions and the briefing of dispositive motions, the *Dumont* Plaintiffs and the *Dumont* State Defendants began settlement discussions and jointly moved on January 23, 2019 to stay proceedings, alerting the *Buck* Plaintiffs that the purpose of the motion to stay was to allow for settlement discussions. *Dumont*, ECF No. 74. The *Dumont* court entered orders staying the case for 60 days to facilitate settlement. *Dumont*, ECF Nos. 76 & 81. On March 22, 2019, shortly before expiration of the stay, the *Dumont* Plaintiffs and Defendants Robert Gordon, in his official capacity as Director of MDHHS, and Jennifer Wrayno, in her official capacity as Acting

Executive Director of the Michigan Children's Agency, entered into a settlement agreement (the "Settlement Agreement") to resolve the *Dumont* Plaintiffs' claims. *Dumont*, ECF No. 82.

Pursuant to the Settlement Agreement, the *Dumont* State Defendants agreed, among other things, to continue including a non-discrimination provision in their CPA contracts that prohibits discrimination "against any individual or group because of race, sex, religion, age, national origin, color, height, weight, marital status, gender identity or expression, sexual orientation, political beliefs, or disability." *Dumont*, ECF No. 82 at PageID.1444.   The Settlement Agreement made clear that "turning away or referring to another contracted CPA an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for services under a [state contract]" violates the non-discrimination provision. *Id.* at PageID.1445.  The *Dumont* State Defendants also agreed to enforce the settlement provisions against state-contracted CPAs that MDHHS determines are in violation of or are unwilling to comply with the non-discrimination obligations up to and including termination of such contracts. *Id.* at PageID.1445–46.  In exchange, the *Dumont* Plaintiffs agreed to dismiss their claims against the *Dumont* State Defendants with prejudice.

Upon entering into the Settlement Agreement, the *Dumont* Plaintiffs and the *Dumont* State Defendants filed a stipulation of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). *Dumont*, ECF No. 82.  The court dismissed the *Dumont* case "pursuant to the terms of the Settlement Agreement." *Dumont*, ECF No. 83 at PageID.1469.  The *Buck* Plaintiffs took no action whatsoever with respect to the Settlement Agreement before the *Dumont* court.

## LEGAL STANDARD

Intervention should be granted as of right where a proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to intervene as a matter of right, proposed intervenors must establish: "(1) that the motion to intervene was timely; (2) that they have a substantial legal interest in the subject matter of the case; (3) that their ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent their interest." *Grutter* v. *Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999).

The court may also permit a party to intervene where she "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Purnell* v. *City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) ("Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the applicant's claim or defense and the main action have a question of law or fact in common.") (internal citation and punctuation omitted). The court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* at 951 (internal citation omitted); Fed. R. Civ. P. 24(b)(1)(B).

## ARGUMENT

### I. THE DUMONTS ARE ENTITLED TO INTERVENTION AS OF RIGHT.

#### A. The Dumonts' Motion Is Timely.

The Motion is timely filed because it is now only the start of this Action. In assessing timeliness under Rule 24, the court must consider:

> (a) the point to which the suit has progressed; (b) the purpose for which intervention is sought; (c) the length of time preceding the application during which the applicant knew or reasonably should have known of its interest in the case; (d) prejudice to the original parties due to the failure of the applicant to apply promptly for intervention upon acquiring the knowledge of its interest; and (e) any unusual circumstances of the case.

*Linton* v. *Comm'r of Health and Env't., State of Tenn.*, 973 F.2d 1311, 1317 (6th Cir. 1992).  In

*Mich. State AFL-CIO* v. *Miller*, a motion to intervene was held "timely as a matter of law" where

it was filed when "the case was obviously in its initial stage."  103 F.3d 1240, 1245 (6th Cir.

1997).  Here, the Motion was filed within a month of the Complaint and before any party has

responded to the Complaint or the motion for preliminary injunction.  This clearly satisfies the

timeliness requirement.

### B.      The Dumonts Have a Substantial Legal Interest in the Action.

The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient

to invoke intervention of right, " and has held that any "close cases should be resolved in favor

of recognizing an interest under Rule 24(a)."   *Miller*, 103 F.3d at 1245, 1247.   The *Buck*

Plaintiffs seek to force the State, in violation of its obligations under the Settlement Agreement,

to contract with organizations like STVCC that discriminate in the provision of adoption and

foster care services.   The Dumonts have a substantial interest in this Action for at least three

reasons.  *First*, the Dumonts have an interest in protecting the hard-fought Settlement Agreement

they obtained in exchange for the dismissal of their constitutional claims.  *Second*, the relief the

*Buck* Plaintiffs seek would vitiate the Dumonts' contractual rights under the Settlement

Agreement.  *Third*, the relief the *Buck* Plaintiffs seek would mean that the Dumonts would be

subjected to the practical and stigmatic injuries of having to pursue their desire to adopt a child

from foster care in a system in which agencies may discriminate against them.

-7-

*First*, a party has a substantial interest warranting intervention as of right where, as here, the proposed intervenor is party to a court-endorsed settlement agreement that is directly challenged in a separate litigation.  *See Jansen* v. *City of Cincinnati*, 904 F.2d 336, 342 (6th Cir. 1990) (granting motion to intervene where "[t]he proposed intervenors . . . are *parties* to the consent decree challenged in this action") (emphasis in original).   The *Jansen* v. *City of Cincinnati* case dealt with a collateral challenge by a group of white firefighters to a consent decree regarding race-based employment practices entered into by the City of Cincinnati and a group of black firefighters.  The black firefighters moved to intervene in the white firefighters' case to defend the consent decree.  The Sixth Circuit  held that the black firefighters had a "significant legal interest in the subject matter of the litigation" where they were "parties to [a] consent decree challenged in" the pending action and where "[a]t stake in this litigation is the proposed intervenors' interest in continuing" the mandates of the consent decree.  *Id.* at 341–42; *see also City of St. Louis* v. *Velsicol Chemical Corp.*, 708 F. Supp. 2d 632, 669 (E.D. Mich. 2010) (granting motion by United States to intervene as of right in suit brought by City of St. Louis against trustees challenging certain trusts established pursuant to settlement agreement to which United States was party).  As in *Jansen*, where the white firefighters' lawsuit sought to undo the affirmative action program established by the City's consent decree, here, the *Buck* Plaintiffs seek to undo the Settlement Agreement and the State's commitment to enforcing the non-discrimination provision in its CPA contracts.  The Dumonts, like the intervenors in *Jansen*, have a substantial interest in protecting the relief secured through adversarial negotiations with the State.

*Second*, the relief the *Buck* Plaintiffs seek would, if granted, infringe on the Dumonts' existing contractual rights.   The Sixth Circuit has recognized that a proposed

intervenor has a sufficient legal interest for intervention where the resolution of a litigation would directly impair her contractual rights.  *See, e.g.*, *Linton*, 973 F.2d at 1319 (reversing district court denial of motion by nursing homes to intervene as of right in suit brought by medical patients against state agency administering Medicare program because the district court "failed to recognize the alleged impairment of the movants' contractual and statutory rights"); *Dumont*, ECF No. 34 at PageID.783 ("[T]his action directly involves [proposed intervenors'] ability to continue to use religious criteria when performing child welfare services for the State of Michigan" pursuant to its contracts.); *cf. Blount-Hill* v. *Bd. of Educ. of Ohio*, 195 F. App'x 482, 486 (6th Cir. 2006) (affirming denial of motion to intervene where proposed intervenor was "not a party to any challenged contract nor [was] it directly targeted by plaintiffs' complaint"). Over more than two months, and after substantial discovery and motion practice, the Dumonts negotiated the terms of the Settlement Agreement, which requires that MDHHS contractors abide by the non-discrimination provision of their CPA contracts and provides for specific performance if MDHHS fails to include, investigate or enforce the non-discrimination provision, up to and including termination of such contracts.  (*See Dumont*, ECF No. 82.)  If the *Buck* Plaintiffs succeed in prohibiting Defendants from cancelling or not renewing STVCC's foster care and adoption contracts despite their continued discrimination (Compl., ECF No. 1 at PageID.51-52), they will render the Settlement Agreement a nullity and eliminate the entire benefit of the Dumonts' bargain with the *Dumont* State Defendants.

Third, the relief the *Buck* Plaintiffs seek here—the right to obtain State funding to provide public child welfare services and then employ religious eligibility criteria to exclude qualified same-sex couples—is precisely what was challenged in *Dumont*.  In considering the Dumonts' allegations, the *Dumont* court determined that the State's practice of permitting such

conduct constitutes a cognizable injury-in-fact. *Dumont*, 341 F. Supp. 3d at 720–22 (holding the *Dumont* Plaintiffs alleged stigmatic and practical "barrier" injuries-in-fact for Establishment and Equal Protection Clause claims because they "personally encountered the unequal treatment about which they complain through that act of being turned away as prospective adoptive parents" and faced unequal treatment "as a result of being turned away based upon their status as a same-sex couple" making "it more difficult for [same-sex couples to adopt] than it is for [heterosexual couples]") (quoting *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 666 (1993)) (alterations in original).  The Dumonts received the relief they sought in the Settlement Agreement.  The *Buck* Plaintiffs seek to undo that.  The practical effect would expose the Dumonts to unconstitutional "unequal treatment" and thus further practical and stigmatic injury.

The Dumonts' substantial interest in avoiding the injury that would result from the relief sought by the *Buck* Plaintiffs is well-recognized.  *Usery* v. *Brandel*, 87 F.R.D. 670, 676 (W.D. Mich. 1980) ("It is well-established that an applicant has 'a significant protectable interest' in rights which may be affected by interpretation in a pending case").  For example, in *Grutter* v. *Bollinger*, the Sixth Circuit found that prospective minority applicants to the University of Michigan had a "direct, substantial, and compelling" legal interest to support intervention as of right in a lawsuit brought by white applicants challenging the University's race-conscious admissions policy, where the proposed intervenors' "interest in gaining admission to the University" could be impacted if the University were ordered to stop considering race as a factor in admissions.  188 F.3d 394, 399 (6th Cir. 1999); *see also Coalition to Defend Affirmative Action* v. *Granholm*, 240 F.R.D. 368, 371, 375 (E.D. Mich. 2006) (granting motion to intervene by white prospective applicant to University in lawsuit challenging

state constitutional amendment barring "the use of race, sex, color, ethnicity, or national origin to promote diversity in public hiring, contracting and university admission decisions" because "if the present plaintiffs are successful in obtaining a ruling that the constitutional amendment is invalid, Russell's changes of gaining admission . . . may be diminished").  Here, the Dumonts have a "direct, substantial, and compelling" legal interest in the resolution of the *Buck* Plaintiffs' claims; it was the State's practice of allowing STVCC's discriminatory conduct that gave rise to the Dumonts' constitutional injuries in the first place.

### C.    The Dumonts' Interests May Be Impaired Without Intervention.

The Dumonts meet the "minimal" burden to show that "impairment of [their] substantial legal interest is possible if intervention is denied."  *Miller*, 103 F.3d at 1247 (internal citation omitted).  "[P]otential stare decisis effects can be a sufficient basis for finding an impairment of interest."  *Id.* (citing *Linton*, 973 F.2d at 1319).  Here, the Dumonts' substantial legal interests in preserving their Settlement Agreement and avoiding further constitutional injury may be impaired without intervention because the *Buck* Plaintiffs challenge the Settlement Agreement and would leave the Dumonts, who have dismissed their claims in exchange for a settlement that provided them the relief they sought, without recourse.

*Jansen* is directly on point.  There, the Sixth Circuit found that "disposition of the present action without the proposed intervenors would indeed impair or impede their ability to protect their rights guaranteed under the consent decree" because the resolution of the pending litigation could leave the defendant "with obligations to the proposed intervenors under the consent decree that are inconsistent with its obligations to plaintiffs" and any finding about the consent decree would bind the proposed intervenors "in any subsequent enforcement action." 904 F.2d at 342.  Likewise, here, adjudication of the *Buck* Plaintiffs' claims could preclude the Dumonts from enforcing the Settlement Agreement if the *Buck* Plaintiffs prevail on their claims

-11-

that the Constitution gives them the right to obtain a government contract to perform public child welfare services and use religious eligibility criteria when performing those services to turn away qualified families on the basis of their sexual orientation. The Dumonts have a right to intervene in this case to protect the Settlement Agreement and defend against an inconsistent resolution in this Court of the constitutionality of the State's practice with respect to its adoption and foster care contracts.

### D.     No Other Party Adequately Represents the Dumonts' Interests.

*Finally*, the Dumonts are entitled to intervene as of right because no current party adequately represents their interests. In assessing the final prong under Rule 24(a)(2), the Sixth Circuit has explained that "proposed intervenors are 'not required to show that representation will in fact be inadequate.'" *Grutter*, 188 F.3d at 400 (quoting *Miller*, 103 F.3d at 1247). Instead, a proposed intervenor need only show that representation *may* be inadequate, including by showing "that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id*. The burden of showing inadequate representation "should be treated as minimal." *Trbovich* v. *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

While the existing Defendants may seek the same relief as the Dumonts and may make some of the arguments that the Dumonts would make,[2] based on the parties' positions in the *Dumont* action, the Dumonts anticipate that they will assert different arguments than the

---

[2]     For example, both may argue that there is nothing in the Free Exercise or Free Speech Clauses that entitles a private organization to force the government to offer it a contract to perform a government service even though it is unwilling to comply with the contract's terms. *See Fulton* v. *City of Phila.*, --F.3d--, 2019 WL 1758355, at *11, *14 (3d Cir. 2019) (no reasonable likelihood of success on claim that enforcing non-discrimination policy in public foster care contracts violates free exercise or free speech rights of agencies that have religious objection to complying).

Defendants in defense of the State's practice of enforcing the non-discrimination provision in its adoption and foster care contracts with CPAs. For example, the Dumonts will argue that allowing state-contracted, taxpayer-funded CPAs to exclude same-sex couples based on religious grounds—the relief requested by the *Buck* Plaintiffs—would violate the Establishment and Equal Protection Clauses.[3]  When the *Dumont* Plaintiffs made these very arguments in *Dumont*, the State Defendants did not concur; rather, they moved to dismiss and argued against them.  *See Grutter*, 188 F.3d at 401 ("The proposed intervenors . . . have presented legitimate and reasonable concerns about whether the University will present particular defenses of the contested race-conscious admissions policies."); *Meriwether* v. *Trs. of Shawnee State Univ.*, 2019 WL 2052110, at *12 (S.D. Ohio May 9, 2019) (no adequate representation where proposed intervenors "articulated specific and reasonable concerns that [defendant] will not present their relevant defenses under Title IX, the Equal Protection Clause, and other anti-discrimination laws").

## II.      IN THE ALTERNATIVE, THE COURT SHOULD EXERCISE ITS DISCRETION TO ALLOW PERMISSIVE INTERVENTION.

Should the Court determine that the Dumonts are not entitled to intervene as of right, we respectfully request that the Court exercise discretion pursuant to Rule 24(b)(1) and grant permissive intervention.  Permissive intervention is appropriate where a prospective intervenor's claim or defense shares with the pending litigation "a common question of law or fact," Fed. R. Civ. P. 24(b)(1), and where intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties."  *Purnell*, 925 F.2d at 951 (quoting *Bradley* v. *Milliken*, 828 F.2d 1186, 1193–94 (6th Cir. 1987)).  In this case, for the reasons stated above and

---

[3]      The Dumonts also intend to assert heightened equal protection scrutiny for discrimination against married same-sex couples, a position the State Defendants contested in *Dumont*.

in the Proposed Answer, both Plaintiffs and the Dumonts raise claims or defenses related to whether the First, Fifth and Fourteenth Amendments to the U.S. Constitution require the State to permit state-contracted CPAs to violate the contracts' non-discrimination requirement that includes sexual orientation.   Indeed, it has apparently been the *Buck* Plaintiffs' position since they intervened in *Dumont* that their asserted rights directly impact those of the Dumonts. *Dumont*, ECF Nos. 18; 33 & 34; Compl. at PageID.29-32.   Granting the Dumonts' motion to intervene will not result in delay or undue prejudice because the case is in its very early stages.

**CONCLUSION**

For the reasons set forth above, we respectfully ask that the Court grant the Dumonts' motion to intervene in this Action.

Dated:  May 21, 2019

Respectfully submitted,

/s/ *Daniel S. Korobkin*

Jay Kaplan (P38197)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
Telephone:  (313) 578-6823
jkaplan@aclumich.org
dkorobkin@aclumich.org

Daniel Mach
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC  20005
Telephone:  (202) 675-2330
dmach@aclu.org

Leslie Cooper*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2633
lcooper@aclu.org

Garrard R. Beeney
Ann-Elizabeth Ostrager*
Leila R. Siddiky*
Jason W. Schnier*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ostragerae@sullcrom.com
siddikyl@sullcrom.com
schnierj@sullcrom.com

*Counsel for [Proposed] Intervenor Defendants
*Application for admission forthcoming*

-15-

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of W.D. Mich. LCivR 7.3(b)(i) because, excluding the parts exempted by W.D. Mich. LCivR 7.3(b)(i), it contains 4,290 words.  The word count was generated using Microsoft Word 2010.

/s/ *Daniel S. Korobkin*

Jay Kaplan (P38197)
Daniel S. Korobkin (P72842)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI  48201
Telephone:  (313) 578-6823
jkaplan@aclumich.org
dkorobkin@aclumich.org

Leslie Cooper*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY  10004
Telephone:  (212) 549-2633
lcooper@aclu.org

Daniel Mach
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC  20005
Telephone:  (202) 675-2330
dmach@aclu.org

Garrard R. Beeney
Ann-Elizabeth Ostrager*
Leila R. Siddiky*
Jason W. Schnier*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Telephone:  (212) 558-4000
beeneyg@sullcrom.com
ostragerae@sullcrom.com
siddikyl@sullcrom.com
schnierj@sullcrom.com

*Counsel for [Proposed] Intervenor Defendants*
**Application for admission forthcoming*