**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

MELISSA BUCK,
      *et al.*

      Plaintiffs,

  v.

ROBERT GORDON,
      *et al.*

      Defendants.

CASE NO. 1:19-CV-00286

HON. ROBERT J. JONKER
United States District Judge

ORAL ARGUMENT REQUESTED

**BRIEF FOR FEDERAL DEFENDANTS
IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

   I.    Statutory and Regulatory Background ......................................................... 3

   II.   The *Dumont* Litigation and Settlement Agreement ..................................... 5

   III.  Plaintiffs and their Threatened Injuries...................................................... 8

   IV.  Plaintiffs' Claims Against the Federal Defendants and Relief Sought........... 10

LEGAL STANDARD............................................................................................. 11

ARGUMENT ....................................................................................................... 11

   I.    Plaintiffs' Claims Against the Federal Defendants Are Not Ripe. ................. 12

   II.   Plaintiffs Lack Standing to Sue the Federal Defendants. ............................. 19

         A. Plaintiffs' Asserted Injuries Are Not Traceable to the Federal Defendants........... 20

         B. Granting Relief Against the Federal Defendants Would Not Redress Plaintiffs'
           Alleged Injuries. ................................................................................. 26

   III.  Plaintiffs Have Not Actually Stated Any Claims Against the Federal Defendants.......... 29

CONCLUSION..................................................................................................... 30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Adult Video Ass'n v. U.S. Dep't of Justice*,
  71 F.3d 563 (6th Cir. 1995) .............................................................................. 15, 18

*Allen v. Wright*,
  468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static
  Control Components, Inc.*, 572 U.S. 118 (2014) .............................................. 20, 27

*Ammex, Inc. v. United States*,
  367 F.3d 530 (6th Cir. 2004) .................................................................................. 21

*Anderson v. Charter Twp. of Ypsilanti*,
  266 F.3d 487 (6th Cir. 2001) .................................................................................. 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................... 11, 30

*Berry v. Schmitt*,
  688 F.3d 290 (6th Cir. 2012) .................................................................................. 16

*Bigelow v. Mich. Dep't of Nat. Res.*,
  970 F.2d 154 (6th Cir. 1992) .................................................................................. 12

*Binno v. Am. Bar Ass'n*,
  826 F.3d 338 (6th Cir. 2016) .................................................................................. 28

*Cooley v. Granholm*,
  291 F.3d 880 (6th Cir. 2002) ............................................................................ 12, 18

*Coyne ex rel. Ohio v. Am. Tobacco Co.*,
  183 F.3d 488 (6th Cir.1999) ................................................................................... 26

*Crawford v. U.S. Dep't of Treasury*,
  868 F.3d 438 (6th Cir. 2019), *cert. denied*, 138 S. Ct. 1441 (2018)........................ 21

*DeBolt v. Espy*,
  47 F.3d 777 (6th Cir. 1995) .................................................................................... 23

*Doe v. DeWine*,
  910 F.3d 842 (6th Cir. 2018) .................................................................................. 25

*Dumont v. Lyon*,
  No. 17-cv-13080 (E.D. Mich.)…………………………………………………………..6, 7

*Havens-Tobias v. Eagle*,
 127 F. Supp. 2d 889 (S.D. Ohio 2001) ................................................................. 30

*Jackson v. City of Columbus*,
 67 F. Supp. 2d 839 (S.D. Ohio 1998), *rev'd in part on other grounds*, 194 F.3d 737 (1999).... 7

*Jocham v. Tuscola Cnty.*,
 239 F. Supp. 2d 714 (E.D. Mich. 2003)................................................................. 30

*Kiser v. Reitz*,
 765 F.3d 601 (6th Cir. 2014) ........................................................................ 12, 16

*Kostopoulos v. Onewest Bank, FSB*,
 60 F. Supp. 3d 804 (E.D. Mich. 2014)................................................................... 14

*Ky. Press Ass'n, Inc. v. Ky.*,
 454 F.3d 505 (6th Cir. 2006) ............................................................................ 15

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)............................................................................ 19, 20, 26

*McCormick v. Braverman*,
 451 F.3d 382 (6th Cir. 2006) ........................................................................... 30

*McKay v. Federspiel*,
 823 F.3d 862 (6th Cir. 2016) ........................................................................... 17

*Miller v. City of Wickliffe*,
 852 F.3d 497 (6th Cir. 2017) ....................................................................... 16, 17

*Norton v. Ashcroft*,
 298 F.3d 547 (6th Cir. 2002) ....................................................................... 12, 19

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*,
 769 F.3d 447 (6th Cir. 2014) ........................................................................... 16

*Rasins Landscape & Assocs., Inc. v. Mich. Dep't of Transp.*,
 528 F. App'x 441 (6th Cir. 2013) ...................................................................... 27

*Renne v. Geary*,
 501 U.S. 312 (1991)..................................................................................... 15

*Reno v. Catholic Soc. Servs., Inc.*,
 509 U.S. 43 (1993)...................................................................................... 12

*Simon v. E. Ky. Welfare Rights Org.* [*EKWRO*],
  426 U.S. 26 (1976) ................................................................................... 20, 21, 26

*Solo v. United Parcel Serv. Co.*,
  819 F.3d 788 (6th Cir. 2016) ........................................................................ 6, 8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................................... 19

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ...................................................................................... 11, 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................ 6

*Texas v. United States*,
  523 U.S. 296 (1998) ...................................................................................... 12, 18

*United Steelworkers of Am., Local 2116 v. Cyclops Corp.*,
  860 F.2d 189 (6th Cir. 1988) .......................................................................... 12

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................. *passim*

*Winter v. Wolnitzek*,
  834 F.3d 681 (6th Cir. 2016) ......................................................................... 16

## **Statutes**

42 U.S.C. § 670 ........................................................................................................ 4

42 U.S.C. § 671(a)(18)(A) ...................................................................................... 4

42 U.S.C. § 2000bb .................................................................................................. 1

Mich. Comp. Laws Ann. § 722.124e ................................................................... 5

## **Rules**

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 11

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 11

**Adminstrative and Executive Materials**

45 C.F.R. § 75.102(b) ............................................................................... 4, 14, 23

45 C.F.R. § 75.300(c)............................................................................... *passim*

Health and Human Services Grants Regulation,
    81 Fed. Reg. 45,270 (July 13, 2016)...................................................... 22

Health and Human Services Grants Regulation,
    81 Fed. Reg. 89,393 (Dec. 12, 2016)................................................. 13, 22

## INTRODUCTION

This is a dispute between Plaintiffs and the State of Michigan. Indeed, Plaintiffs have not actually stated any claims against the Federal Defendants.[1] And even if Plaintiffs have stated claims against the Federal Defendants, those claims are not ripe and Plaintiffs lack standing to sue the Federal Defendants. For these reasons, and the reasons set forth below, the Court should dismiss Plaintiffs' Complaint as to the Federal Defendants.

Plaintiffs allege that the State Defendants—the Director of the Michigan Department of Health and Human Services, the Executive Director of the Michigan Children's Services Agency, and the Michigan Attorney General—have threatened to terminate the State's adoption and foster care contracts with child placing agencies, such as Plaintiff St. Vincent Catholic Charities, that decline to recommend same-sex couples as potential adoptive or foster parents on religious grounds. Plaintiffs thus seek injunctive and declaratory relief to prevent Michigan from terminating its contracts with St. Vincent.

Plaintiffs, however, seek relief not only against the State of Michigan, but also against the federal government. Although Plaintiffs do not clearly indicate which of their claims apply to the Federal Defendants, they appear to seek two types of relief relevant to the Federal Defendants. First, they seek a declaration that the federal Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq*, prohibits the Defendants from using a federal non-discrimination regulation to substantially burden Plaintiffs' religious exercise. As relevant here, the regulation requires recipients of federal adoption and foster care grants not to discriminate on the basis of sexual orientation in administering programs supported by such grants. Second, and relatedly,

---

[1] The Federal Defendants in this case are Secretary of Health and Human Services Alex Azar II and the U.S. Department of Health and Human Services (HHS).

Plaintiffs seek an injunction prohibiting the Defendants from penalizing Plaintiffs for their religious beliefs, speech, and practices regarding marriage.

Plaintiffs' claims against the Federal Defendants should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

*First*, Plaintiffs' claims against the Federal Defendants (to the extent they actually state any) are not ripe. Plaintiffs have identified no credible threat that the Federal Defendants will enforce the challenged regulation—or take any other action harmful to Plaintiffs—based on St. Vincent's conduct in this case. To the contrary, no one disputes that the Federal Defendants provided funding to Michigan for adoption and foster care services under the State's prior policy of providing religious accommodations to agencies that perform such services. In addition, as Plaintiffs acknowledge, the Federal Defendants have taken the position that, under certain circumstances, religious exceptions from the non-discrimination regulation are required under RFRA. Indeed, the Federal Defendants recently granted such an exception to South Carolina for a faith-based foster care agency in that state (and any similarly situated entity) that uses religious criteria in selecting prospective foster parents.

*Second*, Plaintiffs lack standing to sue the Federal Defendants for their alleged injuries in this case. Plaintiffs' injuries are not traceable to the Federal Defendants, and their requested injunctive relief against the Federal Defendants would not redress Plaintiffs' injuries. St. Vincent faces the threat of contract termination because of four actions by the State of Michigan: (1) Michigan's inclusion of non-discrimination provisions in its contracts with adoption and foster care agencies; (2) Michigan's decision to enter into a settlement agreement with the American Civil Liberties Union (ACLU) that requires the State to enforce those provisions;

(3) Michigan's decision to stop granting religious exemptions to agencies like St. Vincent that decline to recommend same-sex couples as potential adoptive or foster parents on religious grounds; and (4) Michigan's failure to seek an exception from the federal non-discrimination regulation for St. Vincent. The Federal Defendants are not responsible for any of those actions. Plaintiffs also have not shown that granting relief against the Federal Defendants would redress their injuries by causing Michigan to reverse course and begin accommodating St. Vincent's religious exercise. Indeed, the State's conduct to date, taken together with statements from State officials, strongly suggests that Michigan would follow the same course of action here even in the absence of the federal regulation.

*Third*, Plaintiffs have failed to actually state any claims against the Federal Defendants. Nowhere in their Complaint do Plaintiffs actually point to anything the Federal Defendants have allegedly done that has violated Plaintiffs' rights or contravened any requirement of law.

Because their claims against the Federal Defendants (to the extent they actually state any) are not ripe and because they lack standing to sue the Federal Defendants, Plaintiffs' claims against the Federal Defendants should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. Dismissal under Rule 12(b)(6) for failure to state a claim is also appropriate because Plaintiffs have not actually alleged that the Federal Defendants have violated their rights or otherwise acted unlawfully.

## BACKGROUND

## I.    Statutory and Regulatory Background

Title IV-E of the Social Security Act authorizes federal funding to states "[f]or the purpose of enabling each State to provide, in appropriate cases, foster care . . . [and] adoption

assistance" for eligible children. 42 U.S.C. § 670.[2] Title IV-E additionally prohibits states and

their subgrantees from "deny[ing] to any person the opportunity to become an adoptive or a

foster parent, on the basis of the race, color, or national origin of the person, or of the child,

involved." 42 U.S.C. § 671(a)(18)(A). The statute does not include a prohibition on denials

based on sexual orientation. Instead, HHS has promulgated a regulatory provision as part of its

Uniform Administrative Requirements, Cost Principles, and Audit Requirements for HHS

Awards (HHS UAR), rooted in an HHS "public policy requirement," that no person may be

"denied the benefits of, or subjected to discrimination in the administration of HHS programs

and services based on . . . sexual orientation." 45 C.F.R. § 75.300(c). The provision also

prohibits discrimination based on "religion." *Id.*; *see also id.* § 75.300(a) (requiring HHS to

incorporate "all relevant public policy requirements," including section 75.300(c)'s sexual

orientation and religious non-discrimination requirements, "either directly or by reference in the

terms and conditions" of  Title IV-E awards). Another provision in the HHS UAR authorizes

HHS to issue "[e]xceptions on a case-by-case basis" from this and other grant regulations except

where otherwise required by law. *See* 45 C.F.R. § 75.102(b).

      Title IV-E provides states with significant latitude to determine how and under what

conditions the state will license or approve prospective foster or adoptive parents. The Act does

not prohibit states from establishing additional criteria otherwise allowed by law for licensing

foster family homes or approving adoptive families. As such, states have substantial flexibility in

establishing licensing criteria for foster families and approval requirements for adoptive families.

---

[2] The Federal Defendants previously set forth the background of this case in their Brief in
Opposition to Plaintiffs' Motion for Preliminary Injunction (Fed Defs.' PI Opp.), ECF No. 33,
PageID.780–87. The Federal Defendants incorporate by reference that discussion and also
provide a shortened statement of the background here.

It is within the authority of each state to determine which entities to contract with and which services or activities the contractor will perform.

A Michigan statute passed in 2015 protects the religious rights of child placing agencies by specifying that such agencies "shall not be required to provide any services if those services conflict with, or provide any services under circumstances that conflict with, the child placing agency's sincerely held religious beliefs." Mich. Comp. Laws Ann. § 722.124e(2); *see also id.* § 722.124e(3). According to Plaintiffs, after the 2015 law was passed, the Michigan Department of Health and Human Services (MDHHS) interpreted the law to mean that MDHHS could not penalize or terminate contracts with religious child placing agencies that decline to work with prospective same-sex or unmarried foster parents. Compl. ¶ 61, ECF No. 1, PageID.24. Plaintiffs further state that, although MDHHS determined the 2015 statute might not apply to certain "child-specific adoption contracts," MDHHS granted "case-by-case exemptions" that allowed agencies "to continue operating according to their religious beliefs." *Id.* ¶ 62, PageID.24.

To become a foster or adoptive parent in Michigan, an individual must be recommended for approval and receive a license from the State. *See id.* ¶ 43, PageID.18. MDHHS contracts with child placing agencies like St. Vincent to recruit and evaluate prospective foster and adoptive parents. *See id.* ¶ 22–23, PageID.10–11. As part of the evaluation process, the child placing agency conducts a "home study" in which the agency "analyzes the relationships in the home and provides a recommendation [to MDHSS] regarding placing children in that home." *Id.* ¶¶ 43–44, PageID.18. MDHHS then makes a final decision regarding approval and licensure.

## II.    The *Dumont* Litigation and Settlement Agreement

On September 20, 2017, the ACLU filed a lawsuit against MDHHS alleging that MDHHS was violating the Establishment and Equal Protection Clauses of the U.S. Constitution by contracting with child placing agencies that decline on religious grounds to recommend same-

sex couples as potential adoptive or foster parents. Compl. ¶ 80, PageID.29. The suit was

captioned *Dumont v. Lyon*, No. 17-cv-13080 (E.D. Mich.) (later re-captioned *Dumont v.

Gordon*). *See* Compl. ¶ 80, PageID.29. Although MDHHS initially defended the suit, following

the election of a new Michigan Attorney General (Defendant Nessel) in November 2018,

MDHHS settled with the ACLU on March 22, 2019. *Id.* ¶ 89, PageID.32.

In the Settlement Agreement, MDHHS agreed to continue including a "Non-

Discrimination Provision" in contracts with child placing agencies. Fed. Defs.' PI Opp. Ex. 1 at

2, PageID.810 (copy of *Dumont* Settlement Agreement).[3] This provision, which MDHHS was

already including in contracts prior to the settlement, requires child placing agencies that contract

with MDHHS to "comply with [MDHHS's] non-discrimination statement prohibiting

discrimination 'against any individual or group because of race, sex, religion, age, national

origin, color, height, weight, marital status, gender identity or expression, sexual orientation,

political beliefs, or disability' in the provision of services under contract with the Department."

*Id.* Ex. 1 at 1, PageID.809; *see also id.* Ex. 4 ¶ 2.9.c, ECF No. 33-4, PageID.834 (St. Vincent

adoption contract with MDHSS, signed by St. Vincent September 12, 2016); *id.* Ex. 5 ¶ 2.9.c,

ECF No. 33-5, PageID.888 (St. Vincent foster care contract with MDHHS amendment 3, signed

by St. Vincent June 15, 2016).[4]

---

[3] The Court may consider the *Dumont* Settlement Agreement in ruling on the Federal
Defendants' Motion to Dismiss because Plaintiffs incorporate the Agreement into their
Complaint by reference. *See* Compl. ¶¶ 100–01 & n.26, PageID.35–36  (quoting from and citing
the Agreement); *id.* ¶ 102 & n.27, PageID.36 (same); *see also Solo v. United Parcel Serv. Co.*,
819 F.3d 788, 794 (6th Cir. 2016) (stating that the court may consider "documents incorporated
into the complaint by reference" in ruling on a motion to dismiss (quoting *Tellabs, Inc. v. Makor
Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007))). The Federal Defendants previously attached a
copy of the *Dumont* Settlement Agreement as an exhibit to their PI Opp. *See* Fed. Defs.' PI Opp.
Ex. 1, PageID.808–818.

[4] The Court may consider St. Vincent's adoption contract with MDHHS and amendment 3 to St.

The Settlement Agreement specifies that the Non-Discrimination Provision prohibits, among other things, "turning away or referring to another [child placing agency] an otherwise potentially qualified LGBTQ individual or same-sex couple" and "refusing to perform a home study or process a foster care licensing application or an adoption application for an otherwise potentially qualified LGBTQ individual or same-sex couple." Fed. Defs.' PI Opp., Ex. 1 at 2, PageID.810. MDHHS further agreed "to enforce the Non-Discrimination Provision . . . against a [child placing agency] that the . . . Department determines is in violation of" the Provision, "up to and including termination of the [c]ontracts" with the agency. *Id.* Ex. 1 at 3, PageID.811. The Settlement Agreement does not contain a religious exemption.

In a "Summary Statement" accompanying the Settlement Agreement, Defendant Nessel (the new Michigan Attorney General) explained that under the Agreement, "MDHHS must take action to enforce its existing contracts where an agency has accepted a referral [of a child from MDHHS] and later violates the non-discrimination provision[] by refusing to work with LGBTQ individuals interested in fostering or adopting any of the children it has accepted." *Id.* Ex. 2 at 3, ECF No. 33-2, PageID.822 (copy of statement).[5] Nessel further stated that MDHHS is required

---

Vincent's foster care contract with MDHHS in ruling on the Federal Defendants' Motion to Dismiss because they are court records from *Dumont*. *See Dumont*, Defs. Nick Lyons and Herman McCall's Mot. to Dismiss Ex. 1 (E.D. Mich. Dec. 15, 2017), ECF No. 16-2, PageID.92–143 (St. Vincent adoption contact with MDHHS); *id.* Ex. 8, ECF No.16-9, PageID.310–335 (St. Vincent foster care contract with MDHHS amendment 3); *see also Jackson v. City of Columbus*, 67 F. Supp. 2d 839, 853 (S.D. Ohio 1998) (stating that the court may consider "public records, including court records in related cases," in ruling on a motion to dismiss), *rev'd in part on other grounds*, 194 F.3d 737 (1999). The Federal Defendants previously attached copies of St. Vincent's adoption contract with MDHHS and amendment 3 to St. Vincent's foster care contract with MDHHS as exhibits to their PI Opp. *See* Fed. Defs.' PI Opp. Ex. 4, PageID.829–880; *id.* Ex. 5, PageID.881–906.

[5] The Court may consider Defendant Nessel's summary statement in ruling on the Federal Defendants' Motion to Dismiss because Plaintiffs incorporate the summary statement into their Complaint by reference. *See* Compl. ¶ 91 & n.22, PageID.33 (quoting from and citing the

to include the non-discrimination provision in its contracts with child placing agencies as a

condition of receiving Title IV-E funds from the federal government. *See id.* Ex. 2 at 1,

PageID.820 (citing 45 C.F.R. § 75.300(c)).

      Significantly, Nessel's statement did not indicate that religious agencies could continue to

receive case-by-case exemptions if recommending same-sex couples as potential adoptive or

foster parents conflicted with the agencies' religious beliefs. To the contrary, Nessel took the

position that, once an agency accepts a child for placement under a contract with MDHHS,

Michigan law "does not provide [the] agency with discretion to refuse to provide the accepted

child or individual with state-contracted foster care case management or adoption services that

conflict with its sincerely held religious beliefs." *Id.* Ex. 2 at 2, PageID.821.

## III.   Plaintiffs and their Threatened Injuries

      Plaintiff St. Vincent Catholic Charities is a religiously affiliated child placing agency that

has provided foster care and adoption services in Michigan for over 50 years. Compl. ¶ 69,

PageID.26. St. Vincent provides training, supervision, and support for each foster care and

adoptive family with which it partners. *Id.* ¶ 70, PageID.26. In accordance with its sincerely held

religious beliefs regarding marriage, St. Vincent declines to recommend same-sex or unmarried

couples for licensing with MDHHS as potential adoptive or foster parents. *See id.* ¶ 67,

PageID.25–26. According to St. Vincent, it does not do so because as part of the licensing

recommendation process, an agency must submit to MDHHS "a written approval of the

relationships in the home and confirmation that the agency has determined the home is suitable

for the placement of children." *Id.* ¶ 44, PageID.18. If a same-sex or unmarried couple seeks

assistance from St. Vincent in becoming foster or adoptive parents, St. Vincent refers the couple

---

summary statement); *id.* ¶ 99 & n.25, PageID.35 (same); *see also Solo*, 819 F.3d at 794. The
Federal Defendants previously attached a copy of Defendant Nessel's summary statement as an
exhibit to their PI Opp. *See* Fed. Defs.' PI Opp. Ex. 2, PageID.819–823.

to another agency that can help them. Compl. ¶ 67, PageID.25–26. A same-sex or unmarried couple that has been certified for approval by the State through another agency can adopt children in St. Vincent's care. *See id.* ¶¶ 31–32, PageID.14–15. St. Vincent merely declines to provide the recommendation for approval itself, based on its religious beliefs and its understanding that recommending a same-sex or unmarried couple for approval constitutes an endorsement of the couple's relationship.

Plaintiffs Melissa and Chad Buck have adopted five special-needs children through St. Vincent and continue to rely on St. Vincent's services for training and support as they raise their children. *Id.* ¶¶ 10–11, PageID.6–7. Plaintiff Shamber Flore is a former foster child who was adopted through St. Vincent and who now volunteers with St. Vincent as a mentor for foster children. *Id.* ¶ 12, PageID.7.

According to Plaintiffs, St. Vincent's contract with MDHHS is up for renewal in October 2019. *Id.* ¶ 105, PageID.37. Plaintiffs say that they worry MDHHS will refuse to renew its contract with St. Vincent based on St. Vincent's religiously based policy of declining to recommend same-sex couples as potential adoptive or foster parents and instead referring such couples to another agency. *See id.*, PageID.37. According to Plaintiffs, if St. Vincent loses its contract with MDHHS, St. Vincent will no longer be able to provide foster care or adoption services because the State of Michigan is the only source of public foster care and adoption referrals, and without such referrals, St. Vincent would have to shut down its programs. *Id.* ¶ 27, PageID.13–14. Plaintiffs Melissa and Chad Buck and Shamber Flore in turn assert that they would lose the ability to continue receiving support from, and volunteering with, St. Vincent. *Id.* ¶ 118–119, PageID.41.

IV.    **Plaintiffs' Claims Against the Federal Defendants and Relief Sought**

Plaintiffs allege that Michigan's threatened termination of St. Vincent's adoption and foster care contracts violates their free exercise and free speech rights and also raises Establishment Clause and equal protection problems. *Id.* ¶¶ 122–168, PageID.42–50 (Counts I– VII). Accordingly, they seek injunctive and declaratory relief against the State Defendants. *See id.* at 51–52, PageID.51–52.

But Plaintiffs also seek relief against the Federal Defendants. Notably, Plaintiffs do not allege that the Federal Defendants themselves have violated Plaintiffs' rights. Rather, they say that "[t]he State Defendants have claimed that enforcement of federal law will require them to take adverse action against St. Vincent," *id.* ¶ 171, PageID.50—such as contract termination— that Plaintiffs claim would substantially burden their religious exercise in violation of RFRA, *id.* ¶¶ 169–173, PageID.50–51 (Count VIII[6]); *see also id.* ¶ 57, PageID.22–23 (alleging that MDHHS and Defendant Nessel have interpreted federal regulations "to require the State to force St. Vincent to violate its sincere religious beliefs by providing home studies for same-sex relationships").

As noted above, in her statement accompanying the *Dumont* Settlement Agreement, Defendant Nessel asserted that an HHS regulation, 45 C.F.R. § 75.300(c), mandates inclusion of a non-discrimination provision in MDHHS contracts. *See* Fed. Defs.' PI Opp., Ex. 2 at 1, PageID.820. This statement appears to be the basis for Plaintiffs' requested relief against the Federal Defendants. *See* Compl. ¶¶ 94, 97, 99, PageID.34–35. Plaintiffs thus ask this Court for a declaration and injunction prohibiting the Defendants (State and Federal) "from using federal regulations or the enforcement of federal law to substantially burden Plaintiffs' religious

---

[6] Plaintiffs identify two counts in their Complaint as "Count VII." To avoid confusion, the Federal Defendants will refer to the second "Count VII" as "Count VIII."

exercise" or to "otherwise penaliz[e] Plaintiffs for their religious beliefs, speech, and practices regarding marriage." *Id.* at 51–52, Page.ID 51–52.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), the Court may dismiss a complaint for "lack of subject-matter jurisdiction." Plaintiffs bear the burden to establish subject-matter jurisdiction, and the Court must determine whether it has jurisdiction before addressing the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 104 (1998).

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts and allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

The Federal Defendants do not belong in this suit. As noted at the outset, this is a dispute between Plaintiffs and the State of Michigan. To the extent Plaintiffs raise claims against the Federal Defendants, the Court lacks subject-matter jurisdiction over those claims because the claims are not ripe and because Plaintiffs lack standing to sue the Federal Defendants.

Plaintiffs also have not actually stated any claims against the Federal Defendants. Plaintiffs do not actually allege that the Federal Defendants have violated Plaintiffs' rights or otherwise acted unlawfully. Rather, they seek relief against the Federal Defendants to prevent the State Defendants from relying on the federal non-discrimination regulation and the possibility of

11

federal enforcement as justification for the State Defendants' alleged violations of Plaintiffs'

rights. But that is not a cognizable basis for shoehorning the Federal Defendants into this suit.

The Court should dismiss Plaintiffs' Complaint as to the Federal Defendants.

**I.      Plaintiffs' Claims Against the Federal Defendants Are Not Ripe.**

To invoke the Court's jurisdiction, Plaintiffs must establish that their claims are "ripe for

judicial review." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002). "If a claim is unripe,

federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Bigelow v.*

*Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992). The ripeness doctrine rests both on

"Article III limitations on judicial power" and on "prudential reasons for refusing to exercise

jurisdiction." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Reno v. Catholic Soc.*

*Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).

The Sixth Circuit has laid out a three-part test for determining ripeness. Under this test,

the court examines: "(1) the likelihood that the harm alleged will ever come to pass; (2) whether

the factual record is sufficiently developed to allow for adjudication; and (3) hardship to the

parties if judicial review is denied." *Norton*, 298 F.3d at 554. The first factor—the likelihood that

the harm alleged will actually come to pass—is the most important. *See United Steelworkers of*

*Am., Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194 (6th Cir. 1988) ("We pay particular

attention to the likelihood that the harm alleged by plaintiffs will ever come to pass.").

Accordingly, "a claim is not ripe for adjudication if it rests upon contingent future events that

may not occur as anticipated, or indeed may not occur at all." *Cooley v. Granholm*, 291 F.3d

880, 883–84 (6th Cir. 2002) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal

quotation marks omitted)). Plaintiffs' claims against the Federal Defendants are not ripe under

the Sixth Circuit's test.

As noted above, Plaintiffs seek injunctive and declaratory relief barring enforcement of a federal non-discrimination regulation, 45 C.F.R. § 75.300(c), based on St. Vincent's religiously motivated practice of declining to recommend same-sex couples as prospective adoptive or foster parents. Of course, section 75.300(c) does not operate directly against St. Vincent. It directly regulates *Michigan*, which is the Federal Defendants' grantee. The harm that Plaintiffs allege, therefore, is the negative consequences that would result to St. Vincent—loss of funding, loss of contracts, etc.—if HHS enforced section 75.300(c) against Michigan based on St. Vincent's religiously motivated practice.

Plaintiffs have not shown any likelihood that this alleged harm will come to pass, however, because they have adduced no facts showing that HHS has any intention of enforcing section 75.300(c) against Michigan based on St. Vincent's religiously motivated practice of declining to recommend same-sex couples as potential adoptive or foster parents.

To begin with, section 75.300(c) had been on the books for over two years before Michigan changed its policy regarding St. Vincent, *see* Health and Human Services Grant Regulation, 81 Fed. Reg. 89,393, 89,395 (Dec. 12, 2016) (promulgating section 75.300(c)); Compl. ¶ 91, PageID.33 (stating that Defendant Nessel "directed MDHHS to change its internal policy" in her March 2019 statement accompanying the *Dumont* Settlement Agreement), and there is no indication that the Federal Defendants took any steps during those two-plus years to enforce the regulation based on St. Vincent's religiously motivated conduct. There is also no indication that the Federal Defendants would do so now if Michigan reverted to its former policy.

Moreover, the most relevant evidence of recent agency practice with respect to faith-based entities operating in the Title IV-E space undermines any argument that HHS is likely to

enforce section 75.300(c) in a manner harmful to Plaintiffs based on St. Vincent's religiously motivated practices in this case. HHS recently granted an exception from section 75.300(c) to South Carolina for a faith-based foster care agency, Miracle Hill Ministries, and any similarly situated entity that uses religious criteria in selecting among prospective foster parents. *See* Fed. Defs.' PI Opp. Ex. 3, ECF No. 33-3, PageID.824–828 (letter from HHS to South Carolina granting exception).[7] Miracle Hill limits recruitment of foster parents to individuals of a particular religion because it "believe[s] those who hold certain positions of spiritual influence and leadership—including foster parents—should share [Miracle Hill's] religious mission and beliefs." *Id.* Ex. 3 at 2, PageID.826 (alterations in original).

Another provision in the HHS UAR, 45 C.F.R. § 75.102(b), authorizes HHS to grant exceptions from program requirements—including section 75.300(c)—on a "case-by-case basis" where not otherwise required by law. Pursuant to this authority, in January of this year, HHS granted South Carolina an exception from section 75.300(c)'s religious non-discrimination requirement[8] for Miracle Hill because it concluded that requiring Miracle Hill to comply would violate RFRA and because of the significant programmatic burden that would attend enforcement of the regulation under the circumstances. *See* Fed. Defs.' PI Opp. Ex. 3 at 3, PageID.827. According to HHS, "Miracle Hill's sincere religious exercise would be substantially burdened by application of the religious nondiscrimination requirement of § 75.300(c)," and

---

[7] The Court may consider HHS's letter to South Carolina in ruling on the Federal Defendants' Motion to Dismiss because it is a letter decision of a government agency. *See Kostopoulos v. Onewest Bank, FSB*, 60 F. Supp. 3d 804, 807 (E.D. Mich. 2014) ("In ruling on a motion to dismiss, the Court may consider . . . letter decisions of government agencies."). The Federal Defendants previously attached a copy of the letter as an exhibit to their PI Opp. *See* Fed. Defs.' PI Opp. Ex. 3, PageID.824–828.

[8] Section 75.300(c) prohibits discrimination on a variety of grounds in addition to sexual orientation, including "religion."

"subjecting Miracle Hill to that requirement . . . is not the least restrictive means of advancing a compelling government interest on the part of HHS." *Id.*, PageID.827. Thus, for the alleged harm Plaintiffs posit to come to pass, HHS would have to take action—enforce section 75.300(c) against Michigan on the ground that St. Vincent is purportedly failing to comply with that section's sexual orientation non-discrimination requirement due to its religious beliefs—that is inconsistent with the agency's recent practices in this area.

*Adult Video Association v. U.S. Department of Justice*, 71 F.3d 563 (6th Cir. 1995), is instructive here. In that case, an association of adult video stores sought a declaratory judgment that a sexually explicit film the stores wished to sell was not obscene. *See id.* at 565. The stores claimed they needed the declaratory judgment in order to protect them from prosecution under federal obscenity laws. *See id.* The Sixth Circuit found that the plaintiffs had failed to establish that the alleged harm—federal prosecution—would come to pass because they could "point to no action or statement by the federal government indicating that it intend[ed] to take action with respect to [the film]." *Id.* at 568. Similarly, in this case, Plaintiffs have identified no action or statement by the Federal Defendants indicating that they intend to enforce 45 C.F.R. § 75.300(c) against Michigan because of St. Vincent's religiously motivated conduct in this case. And indeed, the Federal Defendants' practice before Michigan changed its policy suggests that any risk of enforcement is entirely speculative. *See also Renne v. Geary*, 501 U.S. 312, 321–22 (1991) (case not ripe for review where there was "no factual record of an actual or imminent application of" the challenged law); *Ky. Press Ass'n, Inc. v. Ky.*, 454 F.3d 505, 509 (6th Cir. 2006) (plaintiff failed to establish that alleged harm would come to pass where government could "reasonably interpret" applicable laws in way that would avoid alleged harm).

Sixth Circuit case law on First Amendment pre-enforcement challenges buttresses this conclusion. Although the basis for Plaintiffs' claims against the Federal Defendants is not entirely clear, Plaintiffs assert First Amendment claims against the State Defendants and thus case law in that area is at least instructive.

In the First Amendment context, the Sixth Circuit has said that a pre-enforcement challenge to a law or regulation is ripe "when the threat of enforcement of that law is 'sufficiently imminent.'" *Miller v. City of Wickliffe*, 852 F.3d 497, 506 (6th Cir. 2017) (quoting *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 769 F.3d 447, 451 (6th Cir. 2014)). The threat of enforcement is sufficiently imminent, in turn, when "(1) the plaintiff alleges 'an intention to engage in a course of conduct' implicating the Constitution and (2) the threat of enforcement of the challenged law against the plaintiff is 'credible.'" *Id.* (quoting *Platt*, 769 F.3d at 451–52).

Here, although St. Vincent's conduct in declining to recommend same-sex couples as potential adoptive or foster parents undoubtedly implicates the Constitution, St. Vincent does not face a credible threat of enforcement—at least not from the Federal Defendants. "A threat of future enforcement may be 'credible' when the same conduct has drawn enforcement actions or threats of enforcement in the past." *Kiser*, 765 F.3d at 609. Thus, the Sixth Circuit has found a credible threat of enforcement where the plaintiff received a letter from a state agency notifying the plaintiff that the agency had investigated his conduct and determined he had violated state law. *See id.*; *see also Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2016) (letter notifying plaintiff that a complaint had been filed against her and requesting a response in writing constituted credible threat of enforcement); *Berry v. Schmitt*, 688 F.3d 290, 297 (6th Cir. 2012) (letter informing plaintiff that he had violated challenged regulation and cautioning him against

16

future violations constituted credible threat of enforcement). By contrast, the Sixth Circuit has said there is no credible threat of enforcement when there is "no indication" that the plaintiff will be punished. *See Berry*, 688 F.3d at 296–97.

In this case, there is no indication that the Federal Defendants have taken any steps to withhold any portion of Michigan's federal foster care and adoption grants based on St. Vincent's religiously motivated conduct. To the contrary, as discussed above, the Federal Defendants did not take any enforcement action based on St. Vincent's conduct during the two-plus years section 75.300(c) was in effect prior to Michigan's policy change. And they granted an exception from section 75.300(c) to South Carolina so that South Carolina could continue to accommodate the religious practices of a faith-based child placing agency in that state. Under these circumstances, there is no credible threat of enforcement by the Federal Defendants and, thus, no "sufficiently imminent" threat. *See Miller*, 852 F.3d at 506 (to be sufficiently imminent, threat must be "credible"); *id.* at 507 (no credible threat of enforcement where city "never indicated that it would . . . enforce the [challenged] Ordinance against plaintiffs"); *McKay v. Federspiel* 823 F.3d 862, 870 (6th Cir. 2016) (no credible threat of enforcement in suit challenging court order banning electronic recording devices in county building where there was "simply no evidence in the current record that anyone ha[d] ever been held in contempt—or even subject to contempt proceedings—for violating the challenged order"). Thus, Plaintiffs' pre-enforcement challenge to section 75.300(c) is not ripe. *See Miller*, 852 F.3d at 506.

In their Reply in Support of Motion for Preliminary Injunction, Plaintiffs contend that their claims against the Federal Defendants are ripe because "the State is already attempting to enforce [the] law against St. Vincent." Pls.' Reply in Supp. of Mot. for Prelim. Inj. (PI Reply) at 16, ECF No. 42, PageID.1546. But the fact that the *State* Defendants may be taking action

harmful to Plaintiffs does not make Plaintiffs' claims against the *Federal* Defendants ripe. To establish ripeness on their claims against the *Federal* Defendants, Plaintiffs must show that there is at least some likelihood that the *Federal* Defendants will take action harmful to Plaintiffs. As explained above, however, Plaintiffs have failed to make that showing.

Plaintiffs also attempt to distinguish *Adult Video* and other cases discussed above as "inapplicable" because in those cases, it was "far from clear that any harm [would] occur," whereas here, "the harm is clear and already occurring." PI Reply at 17, PageID.1547 (quoting *Adult Video*, 71 F.3d at 568 (alteration in original)). Again, however, this argument conflates the actions of the *State* Defendants with those of the *Federal* Defendants. Any harm that St. Vincent may suffer as a result of termination of its contracts with MDHHS would be due to the actions of the *State* Defendants—the Federal Defendants lack the power to terminate (or to fail to renew) St. Vincent's contracts with MDHHS. What the Federal Defendants *do* have power to do is enforce section 75.300(c) against Michigan based on St. Vincent's conduct in this case, which in turn would likely produce negative downstream consequences for St. Vincent. But as explained above, Plaintiffs have not alleged any basis to conclude that the Federal Defendants have any intention of doing that.

The second and third factors of the Sixth Circuit's ripeness test do not alter this conclusion. As an initial matter, it is doubtful that a case could be ever be ripe for adjudication absent at least some likelihood that the harm alleged will come to pass. *See Cooley*, 291 F.3d at 883–84 ("[A] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Texas*, 523 U.S. at 300)); *see also Texas*, 523 U.S. at 300 (treating the likelihood that future events will come to pass as a threshold question before addressing other ripeness factors).

18

In any event, it is difficult at this point to know what the factual record would look like were the Federal Defendants to bring an enforcement action against Michigan based on the State's failure to force St. Vincent to violate its religious beliefs, given that there is no indication that the Federal Defendants would bring such an action. *See Norton*, 298 F.3d at 554 (second ripeness factor is "whether the factual record is sufficiently developed to allow for adjudication"). Similarly, it is difficult to conceive what hardship Plaintiffs would suffer from denying judicial review given that they cannot show there is any imminent risk of an enforcement action by the Federal Defendants. *See id.* (third ripeness factor is "hardship to the parties if judicial review is denied"). Because Plaintiffs have not demonstrated any likelihood that the harm alleged—loss of contracts and funding for St. Vincent based on federal enforcement of 45 C.F.R. § 75.300(c) against Michigan for St. Vincent's religiously motivated conduct—will come to pass, Plaintiffs' claims against the Federal Defendants are not ripe.

## II.     Plaintiffs Lack Standing to Sue the Federal Defendants.

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing the three elements that constitute the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Namely, Plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). Without standing, Plaintiffs cannot establish the existence of an Article III case or controversy and thus cannot invoke the jurisdiction of the federal courts. *See, e.g.*, *Steel Co.*, 523 U.S. at 103–04.

Notably, Plaintiffs do not allege that the Federal Defendants have injured them directly, nor could they. The Federal Defendants do not fund St. Vincent's services through direct grants

to, or contracts with, St. Vincent. Rather, they provide grants to Michigan, which in turn uses those grants to fund various social services within the State. *See* Compl. ¶¶ 55–56, PageID.21–22. Nor do the Federal Defendants directly regulate Plaintiffs. Rather, the Federal Defendants directly regulate the State Defendants, who in turn regulate Plaintiffs.

Plaintiffs' claim against the Federal Defendants, at base, is that the State Defendants are relying on the federal non-discrimination regulation and the threat of possible federal enforcement *against Michigan* to engage in unconstitutional behavior *against Plaintiffs*. *See id.* ¶ 171, PageID.50; *see also id.* ¶ 57, PageID.22–23. Where, as here, "a plaintiff's asserted injury arises from the [federal] government's allegedly unlawful regulation . . . of someone else," causation and redressability "ordinarily hinge on the response of the regulated (or regulable) third party to the government action." *Lujan*, 504 U.S. at 562 (emphasis omitted). Thus, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* For this reason, "when the plaintiff is not himself the object of the government action or inaction he challenges," standing "is ordinarily 'substantially more difficult' to establish." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

Here, Plaintiffs cannot show either traceability or redressability.

**A.    Plaintiffs' Asserted Injuries Are Not Traceable to the Federal Defendants.**

Traceability requires an injury "that fairly can be traced to the challenged action of the defendant." *Simon v. E. Ky. Welfare Rights Org.* [*EKWRO*], 426 U.S. 26, 41–42 (1976). Put differently, the plaintiff must show that "the asserted injury was the consequence of the

defendants' actions." *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 498 (6th Cir. 2001) (quoting *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).

In *EKWRO*, the plaintiffs, a group of indigent individuals who had been denied hospital services because of inability to pay, alleged that by granting tax-exempt status to hospitals that refused to serve indigent patients, the IRS had "encouraged" such hospitals to deny services to indigent individuals such as themselves. 426 U.S. at 42. The Supreme Court determined that the plaintiffs had not shown that their injuries were traceable to the IRS's actions because they had failed to demonstrate that the denials of service were due to the hospitals' favorable tax treatment rather than to "decisions made by the hospitals without regard to the tax implications." *Id.* at 42–43. Similarly, in *Warth*, the Supreme Court held that the plaintiffs, low-income individuals who claimed that local zoning ordinances prevented them from being able to afford housing inside town limits, had not established traceability because the record indicated that the absence of low-income housing was the "consequence of the economics of the area housing market," not zoning laws. 422 U.S. at 506–07. The key in both cases was that the plaintiffs had failed to establish that it was the defendants' actions, rather than some other reason, that had caused the hospitals in *EKWRO* and the homebuilders in *Warth* to take action harmful to the plaintiffs (or to fail to take action beneficial to the plaintiffs). *See also Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 459 (6th Cir. 2019), *cert. denied*, 138 S. Ct. 1441 (2018) (no traceability where plaintiffs' injuries were due to third party's "own independent actions" rather than to requirements of challenged law); *Ammex, Inc. v. United States*, 367 F.3d 530, 534 (6th Cir. 2004) (no traceability against government where fuel purchaser alleged that excise tax resulted in higher fuel prices because it was fuel suppliers' decision to pass tax on to purchasers that caused injury).

Here, Plaintiffs' threatened injuries flow from four actions by the State of Michigan: (1) Michigan's inclusion of non-discrimination provisions in its contracts with adoption and foster care services; (2) Michigan's decision to enter the *Dumont* Settlement Agreement, which obligates the State to enforce those non-discrimination provisions; (3) Michigan's decision to stop granting religious accommodations to agencies like St. Vincent that decline to recommend same-sex couples as potential adoptive or foster parents; and (4) Michigan's failure to seek an exception from 45 C.F.R. § 75.300(c) from HHS to the extent the State believes section 75.300(c) prevents it from accommodating St. Vincent's religious exercise. All four of these actions by Michigan were necessary for St. Vincent now to be under the threat of contract termination. None is traceable to the Federal Defendants.

*First*, Michigan's inclusion of provisions prohibiting discrimination on the basis of sexual orientation in its contracts with St. Vincent is not the consequence of the Federal Defendants' actions. To the contrary, MDHHS was already including such a provision in its contracts with St. Vincent *before* 45 C.F.R. § 75.300(c) was promulgated. *Compare* Fed. Defs.' PI Opp. Ex. 4 ¶ 2.9.c, PageID.834 (St. Vincent adoption contract with MDHSS, signed by St. Vincent September 12, 2016), *and id.* Ex. 5 ¶ 2.9.c, PageID.888 (St. Vincent foster care contract with MDHHS amendment 3, signed by St. Vincent June 15, 2016), *with* 81 Fed. Reg. at 89,395 (promulgating 45 C.F.R. § 75.300(c)).[9] Thus, even assuming that inclusion of the non-discrimination provision in St. Vincent's contracts with MDHHS is *consistent* with 45 C.F.R. § 75.300(c), that regulation is not the reason Michigan began including the provision in its

---

[9] The notice of proposed rulemaking for the regulation was issued on July 13, 2016. *See* Health and Human Services Grants Regulation, 81 Fed. Reg. 45,270 (July 13, 2016). This was after the date St. Vincent signed amendment 3 to its foster care contract, which included a non-discrimination provision. *See* Fed. Defs.' PI Opp. Ex. 5 ¶ 2.9.c, PageID.888. Thus, Michigan cannot claim it began including the provision in its contracts in the expectation that HHS would finalize the proposed rule.

contracts. *See DeBolt v. Espy*, 47 F.3d 777, 782 (6th Cir. 1995) (no traceability where plaintiff would have suffered complained-of injury regardless of challenged government action). Relatedly, even if the Court enjoined enforcement of 45 C.F.R. § 75.300(c), there is no guarantee that MDHHS would remove this preexisting provision from its contracts.

*Second*, Michigan's decision to settle the *Dumont* litigation on terms that obligate Michigan to *enforce* the non-discrimination provisions in its contracts with St. Vincent and other child placing agencies, *see* Fed. Defs.' PI Opp. Ex. 1 at 2–3, PageID.810–811, also is not attributable to the Federal Defendants. The Federal Defendants were not parties to the *Dumont* litigation, nor did they compel Michigan to settle the case in the manner it did. Indeed, Plaintiffs themselves assert that Michigan's decision to settle the *Dumont* litigation on the terms it did was the result of the election of a new Attorney General with different views on religious freedom and non-discrimination laws as opposed to any specific action by the Federal Defendants. *See* Compl. ¶ 15, PageID.8 ("Defendant Nessel has been instrumental in framing MDHHS's current policy regarding the enforcement of MDHHS contracts and state law governing religious child welfare providers."); *id.* ¶ 92, PageID.33 ("In prior public statements, Defendant Nessel ha[d] explained to the press that she believes 'there's no viable defense to the 2015 law' and that the law's 'only purpose is discriminatory animus.'").

*Third*, Michigan's decision to stop granting religious exemptions to agencies like St. Vincent is not traceable to the Federal Defendants. According to Plaintiffs, MDHHS used to grant "case-by-case exemptions" to religious child placing agencies so that such agencies could "continue operating according to their religious beliefs." Compl. ¶ 62, PageID.24. But as just noted, Plaintiffs acknowledge that Michigan's reversal in policy on this issue was the result of Defendant Nessel's reinterpretation of Michigan law, not any specific action by the Federal

23

Defendants. *See also* Fed. Defs.' PI Opp. Ex. 2 at 2, PageID.821 (statement by Defendant Nessel that Michigan law "does not provide an agency [that has accepted a referral from MDHHS] with discretion to refuse to provide the accepted child or individual with state-contracted foster care case management or adoption services that conflict with its sincerely held religious beliefs").

*Fourth*, Michigan's decision not to seek an exception from 45 C.F.R. § 75.300(c) was not caused by the Federal Defendants. As an initial matter, as noted above, the Federal Defendants did not take any enforcement action based on St. Vincent's religiously motivated practice during the two-plus years section 75.300(c) was on the books before Michigan changed its policy. There is thus reason to doubt that section 75.300(c) was the reason for Michigan's reversal.

And even if Michigan did have concerns about section 75.300(c)'s application to St. Vincent's practices, as discussed previously, another provision in the HHS UAR, 45 C.F.R. § 75.102(b), authorizes HHS to grant exceptions from program requirements on a "case-by-case basis" where not otherwise required by law. Pursuant to this authority, in January of this year HHS granted South Carolina an exception from 45 C.F.R. § 75.300(c) for a faith-based child placing agency in that state, Miracle Hill Ministries, that uses religious criteria in selecting among prospective foster care parents. *See* Fed. Defs.' PI Opp Ex. 3, PageID.824–828. Michigan's decision not to seek a similar exception here—to the extent it believes 45 C.F.R. § 75.300(c) prevents it from accommodating St. Vincent's religious exercise—is not traceable to the Federal Defendants, because the Federal Defendants have not taken any action to suggest that institutions like St. Vincent cannot be so accommodated, but have instead recognized the right of faith-based foster care providers to operate consistent with their beliefs, as previously discussed.

Plaintiffs assert in their PI Reply that *EKWRO* and the other cases cited above are "inapplicable" because Michigan's child welfare program is "dependent" on federal funds and

Michigan has "identifie[d] federal law as a reason for its policy." PI Reply at 17, PageID.1547. That Michigan relies on federal funds and points to federal law as a reason for its actions in this case, however, does not establish traceability if federal law *was not in fact the reason for Michigan's policy change*. As explained above, Plaintiffs' threatened injuries in this case are due to four actions by the State of Michigan, none of which was caused by the Federal Defendants or by 45 C.F.R. § 75.300(c). That Defendant Nessel may have tried to *justify* the State's policy change by pointing to her interpretation of the scope of a federal regulation (while not mentioning how RFRA may apply) does not make the Federal Defendants responsible for her interpretation. This is particularly true given that the history of this case and HHS's prior application of RFRA to limit section 75.300(c) with respect to certain religious adoption and foster care agencies in another state provides "reason to doubt," *supra* at 24, that any action of the Federal Defendants was in fact the reason for Michigan's reversal.

In sum, the Federal Defendants did not cause Michigan to take any of the steps that have led to the point where St. Vincent now faces contract termination. To the contrary, the Federal Defendants' most recent relevant regulatory action was to *grant* an exception to another state, South Carolina, that wished to provide religious exemptions to foster care agencies. Plaintiffs offer no reason to think the Federal Defendants would not consider a similar exception for Michigan if the State requested one based on an alleged concern that 45 C.F.R. § 75.300(c) might not allow accommodation of St. Vincent's religious exercise.[10] That Michigan has chosen

---

[10] Although, as discussed below, *see infra* Part III, Plaintiffs have not actually stated any claims against the Federal Defendants given that Plaintiffs have not actually alleged that the Federal Defendants have violated Plaintiffs' rights or otherwise acted unlawfully, and in any event have failed to satisfy ripeness and standing requirements, the Federal Defendants acknowledge that requiring a child placing agency to recommend same-sex couples as potential adoptive or foster parents in violation of the agency's sincerely held religious beliefs could present a potential issue under RFRA if doing so would substantially burden the agency's exercise of religion and would

not to seek an exception from section 75.300(c) and has, instead, threatened to terminate St. Vincent's contracts is not traceable to the Federal Defendants. *See Warth*, 422 U.S. at 505 (no traceability where plaintiffs' alleged injuries "depended on the efforts and willingness of third parties" to take actions beneficial to plaintiffs).

 2.     **Granting Relief Against the Federal Defendants Would Not Redress Plaintiffs' Alleged Injuries.**

Redressability requires the plaintiff to show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted). "[T]here must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury." *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir.1999). "An injury is redressable if a judicial decree can provide prospective relief that will remove the harm." *Doe v. DeWine*, 910 F.3d 842, 850 (6th Cir. 2018) (citation and internal quotation marks omitted).

*EKWRO* is instructive here. In that case, the Supreme Court found that the plaintiffs had failed to show redressability because it was "purely speculative" that "the desired exercise of the court's remedial powers"—denying tax-exempt status to hospitals that refused to serve indigent patients—would give the indigent plaintiffs what they wanted—access to hospital services. 426 U.S. at 42–43. "[I]t is just as plausible," the Court explained, "that the hospitals to which respondents may apply for service would elect to forgo favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services." *Id.* Similarly, in *Warth*, the Court found no redressability where the record was "devoid of any indication that . . . were the court to remove the [challenged zoning restrictions], such relief would benefit petitioners." 422 U.S. at 506. In both cases, the plaintiffs' failure to establish that

---

not be the least restrictive means of furthering a compelling government interest.

granting relief would in fact produce the desired outcome doomed the plaintiffs' standing. *See also Allen*, 468 U.S. at 758 (no standing in suit by African American parents and children challenging tax exemptions for racially discriminatory private schools where it was "entirely speculative" that withdrawal of tax-exempt status "would lead [a] school to change its policies"); *Rasins Landscape & Assocs., Inc. v. Mich. Dep't of Transp.*, 528 F. App'x 441, 445 (6th Cir. 2013) (no standing in suit by subcontractor challenging government's failure to impose sanctions on contractors who had declined to pay subcontractor where it was "unclear that a prime contractor would pay its debts even if sanctioned").

Here, there is no indication that issuing an injunction against the Federal Defendants would cause Michigan to reverse its decision to stop contracting with agencies like St. Vincent that decline to recommend same-sex couples as potential adoptive or foster parents because of sincerely held religious beliefs. Although Defendant Nessel has said the non-discrimination provisions in Michigan's contracts with foster care and adoption providers are "federally required," Fed. Defs.' PI Opp. Ex. 2 at 3, PageID.822, the State has not indicated that it has any intention of changing its policy and allowing St. Vincent to continue serving as a provider in the absence of 45 C.F.R. § 75.300(c). To the contrary, as described above, Michigan was already including non-discrimination provisions in its contracts with St. Vincent *before* section 75.300(c) was even promulgated, indicating that its inclusion of such provisions is not tied to the existence of section 75.300(c). And Michigan did not stop granting case-by-case exemptions until several years *after* section 75.300(c) became effective, suggesting that the State's decision to stop granting such exemptions was not related to the requirements of section 75.300(c). Enjoining enforcement of section 75.300(c) also would not wipe away the *Dumont* Settlement Agreement,

27

which purports to impose on Michigan a contractual duty to enforce non-discrimination provisions in contracts with agencies like St. Vincent.

Defendant Nessel also has expressed significant opposition to past efforts to accommodate child placing agencies' religious beliefs. As Plaintiffs note, prior to assuming office as Michigan's Attorney General, Nessel argued, without any reference to the free exercise protections of to the U.S. Constitution, that "there's 'no viable defense'" for the 2015 Michigan religious freedom law for adoption and foster care agencies and that the law's "only purpose is discriminatory animus." *See* Compl. ¶ 92, PageID.33. Given her past statements on this issue, it is unlikely that Defendant Nessel would change course regarding St. Vincent even if the Federal Defendants were enjoined from enforcing section 75.300(c) against Michigan.

Absent some showing that Michigan would reverse its policy against contracting with agencies like St. Vincent if enforcement of section 75.300(c) were enjoined, Plaintiffs cannot show redressability and thus cannot establish standing to sue the Federal Defendants. *See EKWRO*, 426 U.S. at 43 (no redressability where it was "just as plausible" that third party would continue course of action harmful to plaintiff if court granted relief); *Warth*, 422 U.S. at 506 (no redressability where nothing in record suggested requested relief "would benefit petitioners"); *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345 (6th Cir. 2016) (no redressability in suit challenging alleged ABA requirement that law schools use LSAT in admissions decisions because even if court made LSAT optional, "law schools still could choose to require the LSAT in their admissions process"). And without standing, Plaintiffs cannot invoke this Court's subject-matter jurisdiction.

**III.     Plaintiffs Have Not Actually Stated Any Claims Against the Federal Defendants.**

Plaintiffs raise a variety of claims in their Complaint, including claims under the Free

Exercise Clause, Free Speech Clause, Establishment Clause, Equal Protection Clause, and

RFRA. Although Plaintiffs have made numerous factual allegations regarding the *State*

Defendants in support of those claims, Plaintiffs have not pointed to anything the *Federal*

Defendants have allegedly done—or not done—that has violated Plaintiffs' rights or contravened

any requirement of law. Indeed, a comparison of Counts I through VIII of the Complaint with the

factual allegations in the Complaint reveals that all of the allegedly unlawful actions Plaintiffs

identify in Counts I through VIII were taken by the State Defendants, not the Federal

Defendants. *Compare, e.g.*, Compl. ¶ 124, PageID.42 (Count I, Free Exercise Clause) ("By

adopting a policy requiring the State to discriminate against child placing agencies with religious

objections to same-sex marriage, Defendants have targeted St. Vincent's religious beliefs and

practices."), *with id.* ¶¶ 91–105, PageID.33–37 (describing actions by State Defendants

instituting referenced policy, with no mention of any action by Federal Defendants); *compare*

*also, e.g.*, *id.* ¶ 152, PageID.47 (Count V, Free Exercise and Free Speech Clauses) ("Defendants'

contract investigation and impending termination, and their threats of additional adverse action,

would be sufficient to deter a person of ordinary firmness from exercising his or her

constitutional rights."), *with id.* ¶¶ 83-84, PageID.30–31 (describing investigation of Plaintiffs by

State Defendants, with no mention of any action by Federal Defendants), *and id.* ¶¶ 100–01,

PageID.35–36 (describing statements by State Defendants regarding potential contract

termination, with no mention of any action (or statement) by Federal Defendants); *see also*

Compl. ¶¶ 169–73, PageID.50–51 (Count VIII, RFRA) (no mention of any action by Federal Defendants[11]).

Plaintiffs cannot bootstrap their claims against the State Defendants into claims against the Federal Defendants. As the Supreme Court has made clear, to survive a motion to dismiss, legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. In the absence of any factual allegations against the Federal Defendants, Plaintiffs' Complaint as to the Federal Defendants should be dismissed. *See McCormick v. Braverman*, 451 F.3d 382, 399 (6th Cir. 2006) (plaintiff failed to state § 1983 claim where plaintiff "d[id] not allege any action on the part of Defendants"; to make out claim, plaintiff "need[ed] to allege that the[] Defendants . . . engaged in conduct that was actionable"); *Jocham v. Tuscola Cnty.*, 239 F. Supp. 2d 714, 725 (E.D. Mich. 2003) (plaintiffs failed to state free exercise claim against county where plaintiffs "d[id] not allege that any action of [county] ha[d] made it more difficult to practice their own religion"); *Havens-Tobias v. Eagle*, 127 F. Supp. 2d 889, 897 (S.D. Ohio 2001) (granting motion to dismiss where court was "unable to determine exactly what actions taken by Defendant . . . were allegedly in violation of [law]").

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint as to the Federal Defendants under Rule 12(b)(1) for lack of subject-matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

---

[11] As discussed above, *see supra* pp. 13–15, the Federal Defendants' most recent relevant action with regard to the challenged regulation was to grant an exception to South Carolina for a faith-based foster care agency in that state and other similarly situated entities that use religious criteria in selecting among prospective foster parents. That the challenged regulation is subject to the granting of exceptions by HHS and that HHS has demonstrated that it is willing to grant such exceptions on RFRA grounds further demonstrates that Plaintiffs have not alleged a cognizable RFRA violation under the facts pleaded in the Complaint.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANDREW BYERLY BIRGE
United States Attorney

MICHELLE BENNETT
Assistant Branch Director

Dated: June 19, 2019                    /s/ *Christopher A. Bates*
                                        CHRISTOPHER A. BATES
                                        Senior Counsel to the Assistant Attorney General
                                        U.S. Department of Justice, Civil Division
                                        950 Pennsylvania Avenue, NW
                                        Washington, DC 20530
                                        (202) 514-3307
                                        christopher.a.bates@usdoj.gov

                                        *Counsel for the Federal Defendants*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief is in compliance with Local Civil Rule 7.2(b)(i). I have

used the word count function in Microsoft Word 2016 and obtained a count of 9,658 words,

excluding the parts of the brief exempted by the Rule.

/s/ *Christopher A. Bates*
CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-3307
christopher.a.bates@usdoj.gov

*Counsel for the Federal Defendants*