# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION
_____

MELISSA BUCK,
*et al.*

Plaintiffs,

v.

ROBERT GORDON,
*et al.*

Defendants.

CASE NO. 1:19-CV-00286

HON. ROBERT J. JONKER
United States District Judge

## FEDERAL DEFENDANTS' ANSWER

Federal Defendants Alex Azar, in his official capacity as the Secretary of the United States Department of Health and Human Services (HHS), and HHS, hereby submit their Answer to Plaintiffs' Complaint, ECF No. 1 (PageID.1). Federal Defendants respond to each numbered paragraph of Plaintiffs' complaint as follows:

## INTRODUCTION

1. St. Vincent Catholic Charities (St. Vincent) is one of the oldest and most effective foster care and adoption agencies in Michigan. St. Vincent exists to serve those in need, and it wants to continue serving foster and adoptive children in Michigan through its public adoption and foster care programs. But despite a clear need for more foster and adoptive homes, the State of Michigan has decided to force St. Vincent and numerous other faith-based agencies like it—serving hundreds of children across the State—to choose between following their faith and closing down a vital ministry.

ANSWER: The first and second sentences of Paragraph 1 contain characterizations of Plaintiff St. Vincent, to which no response is required. To the extent a response is required,

Federal Defendants admit that St. Vincent is a foster care and adoption agency in Michigan and that St. Vincent wants to continue serving foster and adoptive children in Michigan. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of Paragraph 1. Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of Paragraph 1.

2. St. Vincent provides training, supervision, and on-going support to each foster care and adoptive family with which it partners. For adoptive parents like Chad and Melissa Buck, who have worked with St. Vincent to foster and then adopt five children with challenging medical needs and trauma from past abuse, St. Vincent has been a Godsend. To this day, St. Vincent continues to be a crucial source of support for the Bucks. St. Vincent is also the only agency with institutional knowledge of the Buck's family situation, the challenges faced by their special-needs children, and the difficult dynamics with their birth parents. The Bucks give back to St. Vincent by helping to recruit, serve, and support other foster and adoptive parents. Without St. Vincent, the Bucks are likely to miss out on the opportunity to foster and adopt a sibling of their five adopted children were he or she to enter the State's care.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2.

3. St. Vincent helped Shamber Flore find a home and a loving family after escaping a past filled with trauma and abuse. St. Vincent has continued to help and support Shamber and her adoptive parents, and now Shamber serves St. Vincent and its families by providing mentoring and support for children and families recovering from past trauma.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 3.

4. Despite St. Vincent's demonstrated record of excellent service to the community, the Michigan Department of Health and Human Services (MDHHS) and the Michigan Attorney General have threatened to take action against St. Vincent solely because the agency abides by its Catholic beliefs regarding marriage. The State has made clear that it will no longer permit adoption and foster agencies to operate in accord with their religious beliefs (as they have done successfully for decades), and will penalize them if they refuse to provide written evaluations that conflict with their religious beliefs. If the State ends these relationships, St. Vincent and any other religious child welfare agencies will be unable to continue providing foster care and adoption services in Michigan. This means that adoptive parents will have fewer choices and foster children will face longer waits to find permanent homes.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4.

5. The State's actions violate the First and the Fourteenth Amendments to the United States Constitution. Enforcement of federal regulations supporting the State's actions likewise violates the Constitution and federal law. For this reason, the Court should issue a judgment declaring these actions unlawful and enjoining the State and the federal government from violating Plaintiffs' First and Fourteenth Amendment rights.

ANSWER: Paragraph 5 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 5 is denied as to Federal Defendants.

### IDENTIFICATION OF PARTIES

6. Plaintiff St. Vincent Catholic Charities is a Michigan nonprofit corporation with

charitable and religious purposes; St. Vincent is party to foster and adoptive services contracts with MDHHS.

ANSWER: The first clause of Paragraph 6 contains characterizations of Plaintiff St. Vincent, to which no response is required. To the extent a response is required, the first clause of Paragraph 6 is admitted. The second clause of Paragraph 6 is admitted.

7. St. Vincent was originally incorporated by the Roman Catholic Bishop of Lansing and remains affiliated with the Catholic Diocese of Lansing and subject to the authority of the Bishop of Lansing, who maintains certain reserved powers over St. Vincent. Because of its affiliation to the Catholic Diocese of Lansing, St. Vincent is listed in the Official Catholic Directory under the Catholic Diocese of Lansing.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7.

8. St. Vincent Catholic Charities' vision is to have "faith in God and love for all," as it "aspire[s] to create a healthier community." St. Vincent is dedicated to serving others in a spirit of humility and shares a genuine concern for the well-being of its neighbors, affirming the God-given dignity and worth of every human person. The mission of St. Vincent Catholic Charities is the work of the Catholic Church, to share the love of Christ by performing the corporal and spiritual works of mercy. In this way, those served by the Church and her members (including her charitable agencies) encounter Christ, and the Church encounters Christ in those served:

> Then the King will say to those at his right hand, "Come, O blessed of my Father, inherit the kingdom prepared for you from the foundation of the world; for I was hungry and you gave me food, I was thirsty and you gave me drink, I was a stranger and you welcomed me, I was naked and you clothed me, I was sick and you visited me, I was in prison and you came to me. . . Truly, I say to you, as you did it to one of the least of these my brethren, you did it to me."

Matthew 25:40. St. Vincent exercises its faith and carries out this religious mission to "the least

of these" through its foster care and adoption ministries. Care for needy children and the

provision of these services is an integral, fundamental, and central part of St. Vincent's religious

exercise. Providing these services in a manner consistent with Catholic teaching is part of its

religious character and affiliation.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 8.

9. Many of the children in St. Vincent's care are minority children (African American,

Hispanic, or Native American), and St. Vincent excels in providing extra support for families

with special needs children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 9.

10. Chad and Melissa Buck are adoptive parents and former foster parents currently

living in Holt, Michigan. The Bucks adopted five special-needs children through St. Vincent.

The Bucks see foster care and adoption as a religious calling, and as a part of their sincere

religious exercise they serve and support other foster and adoptive parents.

ANSWER: Paragraph 10 solely concerns parties that were dismissed by the Court's

September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to those

allegations is required.

11. The Bucks would struggle to provide the extensive care that their children require

without the support they receive from St. Vincent. St. Vincent has provided the Bucks with

training, resources, support, and professional guidance as to how to best care for their children

with special needs. The Bucks have been able to call social workers at any hour and receive an

answer from someone they know and trust. These social workers have become like family and

have shown great love and care for their children. The Bucks continue to rely on St. Vincent for support, including through attending St. Vincent's support group and maintaining relationships with the agency workers who know their family and their children. The Bucks also have a religious mission to serve other foster families, and they do so by working with St. Vincent to support foster and adoptive parents, including through a foster parent support group that St. Vincent facilitates, which also enables them to help support and recruit more foster parents. This group is the only foster parent support group offered in the tri-county area and it is open to all foster families, including same-sex couples.

ANSWER: Paragraph 11 concerns parties that were dismissed by the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to those allegations is required. To the extent a response is required, Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12. Plaintiff Shamber Flore is a former foster child whose family fostered and adopted her through St. Vincent. Ms. Flore exercises her faith by encouraging and mentoring foster children and sharing her own story of overcoming hardship and abuse to find love and joy. She relies upon the relationships and trust she has built with St. Vincent to serve other families working with St. Vincent.

ANSWER: Paragraph 12 solely concerns a party that was dismissed by the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to those allegations is required.

13. Defendant Robert Gordon is the Director of MDHHS, the state agency responsible for foster care and adoption services for children in state custody. MDHHS contracts with private child placing agencies, including St. Vincent Catholic Charities, to provide public foster care and

adoption services. Defendant Gordon is sued in his official capacity only.

ANSWER: Federal Defendants admit that Robert Gordon is the Director of MDHHS. The remainder of the first sentence of Paragraph 13 contains legal arguments and conclusions of law, to which no response is required. The second sentence of Paragraph 13 is admitted, except that Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the referenced foster care and adoption services are "public." The third sentence of Paragraph 13 contains characterizations of this lawsuit, to which no response is required.

14. Defendant Dr. Herman McCall is Executive Director of the Children's Services Agency (CSA), a sub-agency of MDHHS that, in addition to having oversight over the work of all private child placing agencies, is mandated by law to "[r]eview, investigate, evaluate, and assess all programs within [MDHHS] related to services and programs for children," including by advising on policy related to "children's services and programs including, but not limited to, services for foster children, juvenile justice, and homeless youth." Mich. Comp. Laws § 400.227 (2015). Defendant McCall is sued in his official capacity only.

ANSWER: Federal Defendants deny that Dr. Herman McCall is Executive Director of CSA. The remainder of Paragraph 14 contains legal arguments, conclusions of law, and characterizations of this lawsuit, to which no response is required.

15. Defendant Dana Nessel, the Attorney General of the State of Michigan, is charged with representing state agencies and enforcing state law. Defendant Nessel has been instrumental in framing MDHHS's current policy regarding the enforcement of MDHHS contracts and state law governing religious child welfare providers. Attorney General Nessel is sued in her official capacity only.

ANSWER: Federal Defendants admit that Dana Nessel is the Attorney General of the State of Michigan. The remainder of the first sentence of Paragraph 15 contains legal arguments and conclusions of law, to which no response is required. Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 15. The third sentence of Paragraph 15 contains characterizations of this lawsuit, to which no response is required.

16. Defendant Alex M. Azar is the Secretary of the United States Department of Health and Human Services (HHS). In this capacity, he has responsibility for the operation and management of HHS and is the appointed official responsible for issuing and enforcing the challenged federal regulations. Secretary Azar is sued in his official capacity only.

ANSWER: The first and second sentences of Paragraph 16 are admitted. The third sentence of Paragraph 16 contains characterizations of this lawsuit, to which no response is required.

17. Defendant United States Department of Health and Human Services is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the challenged federal regulations.

ANSWER: Admitted.

**JURISDICTION AND VENUE**

18. This action arises under the Constitution and laws of the United States. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1361. This action arises under the Constitution and laws of the United States.

ANSWER: Paragraph 18 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 18 is denied as to Federal

Defendants.

19. This Court has personal jurisdiction over Defendants because all Defendants are located, domiciled, or otherwise are present and conducting a continuous and systematic part of their general business within the State.

ANSWER: Paragraph 19 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 19 is denied as to Federal Defendants.

20. The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

ANSWER: Paragraph 20 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 20 is denied as to Federal Defendants.

21. Venue lies in this district pursuant to 28 U.S.C. § 1391(e). All Plaintiffs reside in this district, as do Defendants Gordon, McCall, and Nessel ("State Defendants"). Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district. Plaintiff St. Vincent Catholic Charities is headquartered and operates in this district, and Plaintiffs Shamber Flore, Chad Buck, and Melissa Buck live in this district and all would be harmed both by the State's actions and by application of the HHS regulations to its religious ministry. The State Defendants reside in the state capital, also in this District.

ANSWER: The first, second, third, and fifth sentences of Paragraph 21 contain legal arguments and conclusions of law, to which no response is required. As to the fourth sentence, Federal Defendants admit that Plaintiff St. Vincent is headquartered and operates in the Western District of Michigan; Plaintiffs Shamber Flore, Chad Buck, and Melissa Buck were dismissed by

the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to the allegations about them is required; and Federal Defendants deny the remaining allegations in the fourth sentence.

## FACTUAL ALLEGATIONS

**Michigan's Foster Care System**

*The State contracts with private child placing agencies*

22. Over 12,000 children are currently in Michigan's foster care system, and the need for new foster parents far outstrips the number of families seeking to care for these children. Indeed, approximately 3,000 Michigan foster children are available for adoption at any given time. Of those children, nearly 300 do not have an identified adoptive family.[1] Because there are not enough families, more than 600 of these children "age out" of foster care every year.[2] They exit the foster system at age 18 without any permanent family, and many lack the resources and skills to successfully transition into adulthood.[3] These children are much less likely to graduate high school, let alone college, and far more likely to end up in poverty.[4] Furthermore, Michigan therefore relies upon state-licensed foster care and adoption agencies ("child placing agencies") to recruit, train, certify, and supervise foster families that will care for children in the State's custody.

---

[1] Michigan Department of Health and Human Services, Adoption (2019) https://www.michigan.gov/mdhhs/0,5885,7-339-73971_7116---,00.html.

[2] Child Trends, *Transition-Age Youth in Foster Care in Michigan*, https://www.childtrends.org/wp-content/uploads/2017/09/Transition-Age-Youth Michigan.pdf; Kristi Tanner, *More than 900 Michigan foster care youth age out*, Detroit Free Press (Jan. 31, 2015) https://www.freep.com/story/opinion/contributors/rawdata/2015/01/31/michigan-foster-care-youth/22621127/.

[3] Children's Rights, *Aging Out*, http://www.childrensrights.org/newsroom/factsheets/aging-out/.

[4] Mark E. Courtney, Amy Dworsky, Adam Brown, Colleen Cary, Kara Love & Vanessa Vorhies, *Midwest evaluation of the adult functioning of former foster youth: Outcomes at age 26* (2011); Erick Eckholm, *Offering Help for Former Foster Care Youths*, The New York Times (Jan. 27, 2007) http://www.nytimes.com/2007/01/27/us/27foster.html.

<u>ANSWER</u>: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22.

23. The State therefore has contracts with over 90 different private child placing agencies that operate throughout the State. By contracting with the State, these agencies agree to provide foster and adoptive services to children in need.

<u>ANSWER</u>: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23.

24. The State encourages potential foster and adoptive parents to reach out to multiple agencies and to find an agency that will be a good fit for them, telling prospective parents that it is "important that you feel comfortable sharing personal and private information" with the agency you choose.[5] The State has also created numerous support services by which prospective foster or adoptive parents can meet with experienced "Navigators" who will help guide them through the process of finding an agency that is a good fit.[6]

<u>ANSWER</u>: Regarding the alleged statement by the State of Michigan quoted in Paragraph 24, Federal Defendants respectfully refer the Court to the document cited in footnote 5 for the content of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24, except to admit that the language quoted in Paragraph 24 appears in the document cited in footnote 5.

25. The State benefits from, and permits, private child placing agencies to develop specializations and to focus on serving certain populations—like children with disabilities or

---

[5] Compl. Ex. A at 4, ECF No. 1-1 (PageID.57).
[6] Michigan Adoption Resource Exchange, *Adoption Navigators*, https://mare.org/For-Families/Adoption-Navigators.

children with a specific ethnic background. And agencies will often seek to specifically recruit foster parents that can serve those unique needs.[7] When a child placing agency is unable to work with a prospective foster or adoptive family, that agency will refer the prospective family to another agency that might better suit their needs. This happens routinely for numerous reasons. For example, agencies can refer applicants elsewhere if a family lives too far away from the agency, making home visits impractical, if the agency has a wait list, if the family has not been satisfied with the agency's services, or if the family is looking for a specific type of child not currently in the agency's care, just to name a few.

ANSWER: Regarding the alleged statement by the Wayne Center quoted in footnote 7, Federal Defendants respectfully refer the Court to the website cited in footnote 7 for the content of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25, except to admit that the language quoted in footnote 7 appears on the website cited in footnote 7.

26. As Steve Yager, Executive Direct of the Children's Services Agency within MDHHS, previously stated: "[W]e work with agencies based on a contract, not on their belief system, stated or otherwise. We do not compel agencies to accept referrals—never have; rather, we create through contracts a vast array of providers to meet the very diverse needs of the children and families we serve."[8]

ANSWER: Regarding the alleged statement by Steve Yager quoted in Paragraph 26, Federal Defendants respectfully refer the Court to the document cited in footnote 8 for the

---

[7] The Wayne Center, a state contracted child placing agency, advertises that it is specifically seeking "foster parents with previous experience with persons who have a developmental disability and/or expertise in related areas, e.g., medical, educational, social work, psychological, etc." Wayne Center, *Written Needs Statement*, http://www.waynecenter.org/services/foster-care.
[8] Compl. Ex. B at 1, ECF No. 1-2 (PageID.75).

content of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge

or information sufficient to form a belief about the truth of the allegations in Paragraph 26,

except to admit that the language quoted in Paragraph 26 appears in the document cited in

footnote 8.

27. In Michigan, foster care placements and public adoptions can only be performed by

agencies that contract with MDHHS to perform these services. St. Vincent would not be able to

provide its foster care or adoption ministry without a license and contract from the State, as the

State is the sole source of public foster care and adoption referrals. Without new referrals, St.

Vincent would quickly lose the ability to continue providing foster care and adoptive services

and would have to shut down both programs.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 27.

*The Home Studies and Certification Process*

28. There is no shortage of opportunities for same-sex couples to foster or adopt in

Michigan.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 28.

29. DHHS welcomes and encourages same-sex couples to foster and adopt, and no same-

sex couple has been prevented from fostering or adopting a child by St. Vincent.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 29.

30. If St. Vincent is unable to work with a couple due to its religious beliefs, it provides

the couple with a list of other area agencies who do not share St. Vincent's religious beliefs and

could assist them in becoming foster or adoptive parents.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30.

31. In fact, through the Michigan Adoption Resource Exchange (M.A.R.E) (the State's central adoption portal), any foster family, including a same-sex or unmarried couple, can be connected to a private child placing agency, become a certified pre-adoptive home, and then adopt a child that is currently placed in a foster home serviced by a different agency, including St. Vincent.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 31.

32. In other words, parents interested in adopting a child in St. Vincent's care need not work directly with St. Vincent to adopt that child, but may work with another agency.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 32.

33. In this way, LGBTQ individuals have been able to adopt a child in St. Vincent's care.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33.

34. As part of the certification process, a prospective foster or adoptive parent must work with either MDHHS or a private agency to complete a "home study" before they can be approved by the State to adopt or foster a child.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34.

35. As part of the home study, a social worker will visit the applicant's home in person

and meet with all of the individuals living in that home.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35.

36. This in-person meeting is a necessary component of the home study because it allows the social worker to asses both the home and the individuals living in it.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36.

37. During this in person meeting, the social worker will ask the applicant very specific, personal, and difficult questions to gauge whether it would be appropriate to place a foster child in need in their home.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37.

38. These questions are necessary to allow the agency to assess whether the applicant's home is appropriate and suitable for the placement of foster or adoptive children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38.

39. Often, these children have been subject to past abuse or other traumatic events, so careful evaluation of the family's living situation is necessary to avoid unnecessary and potentially harmful conflicts.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39.

40. In addition, MDHHS's foster/adoption home evaluation form specifically requires agencies to assess the "[s]trengths and weaknesses" of the parents and the "[s]trengths of the

relationship" between the couple, including "level of satisfaction" and "stability" of the relationship.

    <u>ANSWER</u>: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40.

    41. Regarding home studies for LGBTQ individuals, the Human Rights Campaign (HRC) has recognized that a social worker may ask "all kinds of questions about [the applicant's] childhood and upbringing, including questions about puberty, sex and sexuality."[9] HRC stated that the "homestudy serves as an evaluation tool that allows you to determine if a prospective resource parent has that capability to provide a child with a safe and nurturing home" and should be based on a "thorough evaluation."[10] A home study also requires an agency to ask very personal questions regarding an LGBT individual's past and sensitive questions about their relationships, family, and love life.[11] In short, a home study is not a mere box to be checked.

    <u>ANSWER</u>: Regarding the alleged statements by the Human Rights Campaign (HRC) quoted in paragraph 41, Federal Defendants respectfully refer the Court to the document cited in footnotes 9 and 10 for the content of those statements, which speak for themselves. Regarding the alleged sample questions by HRC quoted in footnote 11, Federal Defendants respectfully

---

[9] Perry, J.R., *Promising Practices for Serving Transgender & Non-Binary Foster and Adoptive Parents*, Human Rights Campaign Foundation 41-42 (2017), https://assets2.hrc.org/files/assets/ resources/HRC_ACAF_Promising_Practices_Serving_Transgender_Non-Binary_Parents.pdf.
[10] *Id.* at 44.
[11] HRC created a list of sample questions for social workers to ask during an LGBT home study. This sample list includes numerous questions that are deeply personal and even intimate: "In the past, have you ever been "outed" by someone? How did you handle it?"; "What has been the attitude of your extended family to your partner?"; "How have homo/bi/transphobia and/or heterosexism or cissexism affected your life and how have you dealt with this?"; and "Where are you in the process of grieving any feelings of loss you may have around not having biological children?" *Sample LGBTQ Affirming Homestudy Questions & Rationale*, Human Rights Campaign Foundation, https://assets2.hrc.org/files/assets/resources/HRC_ACAF_LGBTQ_ Affirming_Homestudy_Questions_And_Rationale.pdf.

refer the Court to the document cited in footnote 11 for the content of those questions, which speak for themselves. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41, except to admit that the language quoted in Paragraph 26 and in footnote 11 appears in the documents cited in footnotes 9, 10, and 11.

42. Home studies are very invasive, thorough, and in-depth investigations that take into account every aspect of an applicant's family life and are part of the process by which an agency and the applicant determine if they are the right fit for each other. As Michigan recognizes, it is crucial that applicants "trust [their] instincts" and "[c]hoose an agency [they] are compatible with."[12]

ANSWER: Regarding the alleged statements by the State of Michigan quoted in Paragraph 42, Federal Defendants respectfully refer the Court to the document cited in footnote 12 for the content of those statements, which speak for themselves. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42, except to admit that the language quoted in Paragraph 42 appears in the documents cited in footnote 12.

43. Only after a home study and assessment by a social worker is complete will the agency refer the application to the State with a recommendation that the State provide final approval and licensing.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43.

44. As part of this licensing recommendation, an agency must prepare a report and

---

[12] *Foster Care Agency Checklist*, Department of Human Services, https://www.michigan.gov/documents/dhs/FosterCareAgencyChecklist_Comm4-12_381389_7.pdf.

licensing recommendation for MDHHS. That report analyzes the relationships in the home and provides a recommendation regarding placing children in that home. That report is—and St. Vincent understands that report to be—a written approval of the relationships in the home and confirmation that the agency has determined the home is suitable for the placement of children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44.

45. HRC and other LGBTQ-advocacy organizations believe that agencies should not place children with families that would not be affirming of LGBTQ children, including for religious reasons.[13] HRC provides a "Seal of Recognition" to agencies that are leaders in serving LGBTQ foster families and children.[14] In Michigan, the following agencies have received the Seal of Recognition: Fostering Futures, Hands Across the Water, and Judson Center - Foster Care & Adoption.

ANSWER: Regarding the alleged statements quoted in footnote 13, Federal Defendants

---

[13] HRC, *All Children All Families and Non-Affirming Potential Foster Families* (Oct. 3, 2018), https://register.gotowebinar.com/register/4180979117481006082 (free registration required to view) (describing a foster family's reaction to a child's identification as a member of the LGBTQ community as the "all-important discussion" that if not handled correctly can "harm" the child). HRC also describes New York City's approach as a "best practice." New York City policies state, "If the parent displays negative attitudes about LGBTQ people, even when deeply rooted in religious beliefs and cultural values, and the alleged abused and/or maltreatment are related to the youth's perceived or actual sexual orientation, gender identity, or gender expression, the staff must determine whether those attitudes are impacting the youth's immediate safety as well as whether those attitudes may put the youth at risk for future physical or emotional harm." New York City Government, *Respectfully Asking Sexual Orientation and Gender Identity (SOGI) Questions*, https://www1.nyc.gov/assets/acs/pdf/lgbtq/Respectfully_Asking_SOGI_Questions.pdf; *see also* Child Welfare League of America & Lambda Legal, *Getting Down to Basics: Tools to Support LGBTQ Youth in Care*, 25-26 (2012), http://www.lambdalegal.org/sites/default/files/gdtb_2013_complete.pdf ("If these personal religious beliefs might prevent offering nonjudgmental care to an LGBTQ young person, the practitioner or foster parent should seek outside support and make alternative care arrangements. They must put the needs of young people above their own personal beliefs.").
[14] *All Children - All Families: Tiers of Recognition*, HRC, https://www.hrc.org/resources/all-children-all-families-tiers-of-recognition.

respectfully refer the Court to the documents cited in footnote 13 for the content of those statements, which speak for themselves. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45, except to admit that the language quoted in the second and third documents cited in footnote 13 appears in those documents. Federal Defendants were unable to access the first document cited in footnote 13.

46. Upon information and belief, the State does not take the position that it would be a violation of state law or policy for an agency to refuse to place a child with a religious foster family if the agency determined that the family would not be affirming of LGBTQ children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46.

47. Upon information and belief, the State does not take the position that it would be a violation of state law or policy for an agency to refuse to recommend for certification a foster family if the agency determined that the family would not be affirming of LGBTQ children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47.

48. Upon information and belief, the State has never investigated or penalized an agency for refusing to recommend for certification a foster family if the agency determined that the family would not be affirming of LGBTQ children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48.

49. Upon information and belief, the State has never investigated or penalized the Sault Tribe Binogii Placement Agency, a State-licensed child placing agency, for only placing children

with Native American foster or adoptive parents.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49.

50. Upon information and belief, the State has never investigated or penalized the Wayne Center, a State-licensed child placing agency, for seeking only parents with prior experience caring for developmentally disabled children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50.

51. Upon information and belief, the State has never investigated or penalized Homes for Black Children, a former State-licensed child placing agency, for specializing in providing care for Black children.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51.

*Placing a child in a certified foster or adoptive home*

52. When a child must be removed from their home and placed in a foster home, DHHS's goal is to place that child in a home within 24 hours. In order to do this, the State will reach out to one or more of the child placing agencies with which it has contracted to see if that agency has a family ready and willing to take in that child. The child placing agency will then be given one hour by MDHHS to contact one or more families and see if it can find a placement for that child. If the first agency MDHHS contacts cannot find an available family, MDHHS contacts additional agencies. Sometimes, MDHHS will contact multiple agencies at the same time when the situation is urgent.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 52.

53. Once a certified family is "matched" with the child in need, MDHHS will transfer that child into the foster family and the private child placing agency with whom that family was certified will oversee the placement, providing ongoing support and training to the foster family.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53.

54. As discussed above, families certified through one foster agencies may still adopt children under the supervision of a different agency through M.A.R.E.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54.

55. Michigan relies upon state and federal funds, including federal Temporary Assistance to Needy Families (TANF) block grants, to administer its foster care and adoption programs. As a condition of receiving these funds, the Department of Health and Human Services is required by 45 CFR § 75.300(a) to "communicate to the non-Federal entity [here, MDHHS] all relevant public policy requirements . . . and incorporate them either directly or by reference in the terms and conditions of the Federal award." *Id.* One such public policy requirement imposed by these same regulation is that "no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation." 45 CFR § 75.300(c). Through contracts with private child placing agencies, Michigan provides foster parents and the agencies that supervise them per diem payments from a combination of federal and state funds. That funding is provided to child placing agencies only after an agency has accepted the referral of a child and is

supervising that placement with a certified foster family.

ANSWER: The first sentence of Paragraph 55 is admitted. The second and third sentences contain legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants admit that the regulations contain the quoted text, but deny any characterization of the cited regulations, which speak for themselves, and respectfully refer the Court to those regulations for a complete and accurate statement of their contents.  Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the fourth and fifth sentences of Paragraph 55.

56. Through contracts with private child placing agencies, Michigan also provides specified funding to adoptive parents and the agencies that supervise them from a combination of federal and state funds.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 56.

57. Upon information and belief, MDHHS and Attorney General Nessel have interpreted 45 CFR § 75.300(a) to apply to St. Vincent Catholic Charities and operate to require the State to force St. Vincent to violate its sincere religious beliefs by providing home studies for same-sex relationships.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57.

58. Were St. Vincent to fail to comply with this regulation, MDHHS will cut St. Vincent's funding and refuse to continue contracting with the agency.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 58.

*State law protects the religious exercise of child placing agencies*

59. State law expressly protects the ability of child placing agencies to decline to perform a home study or make a licensing recommendation. *See* Mich. Comp. Laws 722.124e(h) (2015). This law, passed in 2015, prohibits the State from declining to contract, declining to renew a contract, or taking any other adverse action against a child placing agency based on its decision to refer same-sex or unmarried couples to other agencies for religious reasons. *Id.*

ANSWER: Paragraph 59 contains legal arguments and conclusions of law, to which no response is required.

60. When this law was passed, Michigan explained that "[h]aving as many possible qualified adoption and foster parent agencies in this state is a substantial benefit to the children of this state who are in need of these placement services." Mich. Comp. Laws 722.124e(c) (2015). Michigan also found that it crucial to "ensur[e] that faith-based child placing agencies can continue to provide adoption and foster care services" because their work "benefit[s] the children and families who receive publicly funded services." Mich. Comp. Laws 722.124e(g) (2015). Accordingly, Michigan chose to protect faith-based agencies by permitting them to refer prospective applicants to another agency if serving that applicant would conflict with the agency's sincerely held religious beliefs. Michigan concluded that this was in the public interest and in the interest of serving the most families and children in need. *Id.*

ANSWER: Paragraph 60 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants admit that the state statutes contain the quoted text, but deny any characterization of the cited statutory provisions, which speak for themselves, and respectfully refer the Court to those provisions for a complete and accurate statement of their contents.

61. Soon after the law was passed, MDHHS interpreted the statute to mean that it could not penalize or terminate contracts with religious child welfare agencies if those agencies declined to perform home studies for same-sex or unmarried couples.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61.

62. MDHHS determined that the state law might not apply in some cases involving child-specific adoption contracts, but even in those cases, MDHHS granted case-by-case exemptions which permitted child welfare agencies to continue operating according to their religious beliefs.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62.

63. In response to this new law, MDHHS also updated its individual child adoption forms and contracts.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63.

**St. Vincent's Adoption and Foster Care Program**

64. St. Vincent shares Michigan's goal of working to fill the shortage of safe foster homes for these vulnerable kids. St. Vincent is able to recruit prospective families who would not otherwise feel able to foster or adopt children based on its religious character and mission.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64.

65. St. Vincent provides public foster care and adoption services. It performs home studies and makes licensing recommendations to the state, oversees foster and adoptive placements, and also provides ongoing training and support for the foster or adoptive family and

works with case workers to coordinate services to the foster family, birth family and child in order to achieve a positive outcome.

ANSWER: Federal Defendants admit that St. Vincent provides foster care and adoption services. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65.

66. St. Vincent serves and places children regardless of their race, color, sex, sexual orientation, gender identity, religion, national origin, ancestry, age, disability, source of income, familial status, genetic information, or sexual violence victim status.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66.

67. St. Vincent shares the religious beliefs and teachings of the Catholic Church regarding same-sex marriage. But St. Vincent would never stop a family who wants to foster or adopt from having the opportunity to complete the application and home study process. If St. Vincent were ever unable to perform in-depth home assessments and make reports and written certifications to the State for any reason, including based on St. Vincent's own religious beliefs, then it would refer the applicants to another agency that could better serve their needs.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67.

68. According to M.A.R.E., there are 16 other agencies that also serve Ingham County, which is where St. Vincent is located.[15]

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68. Federal Defendants attempted to create the

---

[15] Michigan Adoption Resource Exchange, Agency Map, https://mare.org/Agency-Map (under "Filter by County" select "Ingham" for map and list of all 17 agencies).

filtered list described in footnote 15 and were unable to do so.

69. For over 50 years, St. Vincent has provided foster care and adoption services in Michigan pursuant to regularly renewed contracts. In reliance upon these contracts, St. Vincent currently employs 18 staff members who work exclusively on these contracts, has budgeted and raised funds designed to supplement state funding on that contract, and has taken other concrete steps in expectation that it will continue to receive referrals and be able to perform its duties under these contracts.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69.

70. St. Vincent provides training, supervision, and on-going support to each foster care and adoptive family with which it partners. For adoptive parents like Chad and Melissa Buck, who have worked with St. Vincent to foster and then adopt five children with challenging medical needs and trauma from past abuse, St. Vincent has been a Godsend. To this day, St. Vincent continues to be a crucial source of support for the Bucks, and they in turn provide support and assistance to other families fostering and adopting through St. Vincent. For the Bucks, serving as adoptive parents and serving other adoptive parents is a religious calling. St. Vincent facilitates ongoing services to families that have adopted, like a monthly support group—the only such group open to any foster or adoptive parents in the region.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70.

71. St. Vincent helped Shamber Flore to find a home and a loving family after past filled with trauma and abuse. St. Vincent has continued to help and support Shamber and her adoptive parents, and now Shamber serves St. Vincent and its families by providing mentoring and

support for children and families recovering from past trauma.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 71.

72. In the foster care context, the home study assessment process allows St. Vincent to prepare families to accept a child into their home; only after a child is placed in the certified family's home do St. Vincent and the family begin to receive funding from the State.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 72.

73. In some exceptional cases, the State might use a different payment structure pursuant to a separate, child-specific contract to directly pay for home study services for foster children being placed with relatives. St. Vincent has never been a party to such a contract for the provision of home study services for an LGBTQ couple.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73.

74. Unless the State specifically contracts for a home study assessment in this exceptional circumstance, home studies are not paid for with state funds under St. Vincent's ordinary foster care or adoption contracts with the State.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74.

75. Outside of this exceptional circumstance for placement with relatives, foster care and adoption home studies are not specifically listed as a "service" under St. Vincent's contracts with the State.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 75.

76. Outside of this exceptional circumstance, St. Vincent pays for home studies, assessments, and its general recruitment with private funds in a cost center that is kept separate from the funding provided by the State for other child welfare activities.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76.

77. St. Vincent offers a significant subsidy to Michigan by recruiting new foster parents using its own private funds and supplementing State funds with private donations and volunteer hours to cover costs that state funding cannot.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77.

78. For example, last fiscal year both St. Vincent's foster program and adoption programs operated at a significant loss based on the state funding alone, and these programs would not have been able to operate without St. Vincent's private subsidies.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78.

79. Michigan has been aware of St. Vincent' religious beliefs for years.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 79.

**MDHHS Targets St. Vincent**

*The ACLU's Lawsuit*

80. On September 20, 2017, the ACLU filed a lawsuit against MDHHS on behalf of two LGBT couples. The lawsuit alleged that these couples had approached Bethany Christian

28

Services and St. Vincent Catholic Charities seeking to adopt a child, but were referred to another agency based on their sexual orientation. The ACLU claimed that the state's decision to continue contracting with these private agencies violated the Establishment and Equal Protection Clauses. Complaint at ¶¶ 75-81, Dumont v. Lyon, No. 17-cv-13080 (E.D. Mich. Sept. 20, 2017), ECF No. 1.

    <u>ANSWER</u>: Admitted.

81. Plaintiffs St. Vincent Catholic Charities, Melissa Buck, Chad Buck, and Shamber Flore moved to intervene in the lawsuit filed by the ACLU, arguing that the State's decision to contract with St. Vincent and other faith-based agencies did not violate the Constitution and was protected under state and federal law. Motion to Intervene at 19-21, Dumont v. Lyon, No. 17-cv-13080 (E.D. Mich. Dec. 18, 2017), ECF No. 18.

    <u>ANSWER</u>: Admitted.

82. On October 1, 2017, and in light of the ACLU's lawsuit filed against the State of Michigan, Stacie Bladen, the Deputy Director of the Children's Services Agency within MDHHS, submitted three official "contract compliance complaints" with MDHHS licensing staff against St. Vincent Catholic Charities, Bethany of East Lansing, and Bethany of Madison Heights for allegedly referring a same-sex couple to another child placing agency.[16] Ms. Bladen claimed that the actions of these agencies violated their contracts by referring same-sex couples to other adoption agencies based on their sincerely held religious beliefs.

    <u>ANSWER</u>: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82.

83. Soon after Ms. Bladen lodged her complaint, MDHHS opened investigations into all

---

[16] Compl. Ex. C at 1, ECF No. 1-3 (PageID.82)

three of these agencies solely because they exercised their rights under state law and the First

Amendment.[17]

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 83.

84. These investigations were inconsistent with MDHHS's prior statements and policies

regarding compliance with state law.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 84.

85. As Stacie Bladen, speaking on behalf of MDHHS, stated earlier on September 23,

2016, "[i]f the child placing agency declines to accept a referral, whether for foster care case

management or adoption services, based on sincerely held religious beliefs, the Department

cannot take 'adverse action' (as defined in the act) against the agency."[18]

ANSWER: Regarding the alleged statement by Stacie Bladen quoted in Paragraph 85,

Federal Defendants respectfully refer the Court to the document cited in footnote 18 for the

content of that statement, which speaks for itself. To the extent Paragraph 85 contains legal

arguments and conclusions of law, no response is required. To the extent a response is required,

Federal Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 85, except to admit that the language quoted in Paragraph 85 appears

in the document cited in footnote 18.

86. Bladen's earlier position was also consistent with MDHHS guidance outlined in a

---

[17] Compl. Ex. D at 6–7, ECF No. 1-4 (PageID.89–90) [State Defendant's Response to Intervenor
Defendant's Amended First Set of Interrogatories at 6–7, *Dumont v. Lyon*, No. 17-cv-13080
(E.D. Mich. Dec. 28, 2018)].
[18] Compl. Ex. E at 2, ECF No. 1-5 (PageID.105).

policy document regarding "foster and adoptive parent recruitment, licensing, and retention."[19]

ANSWER: Regarding the alleged statement by MDHHS quoted in Paragraph 86, Federal Defendants respectfully refer the Court to the document cited in footnote 19 for the content of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 86, except to admit that the language quoted in Paragraph 86 appears in the document cited in footnote 19.

87. In this document, the agency made clear that faith-based agencies could continue contracting with the State and making referrals in accord with their religious beliefs: "[b]efore accepting a referral, the child-placing agency has the sole discretion to decide whether to engage in activities and perform services related to *that* referral."[20]

ANSWER: Regarding the alleged statement by MDHHS quoted in Paragraph 87, Federal Defendants respectfully refer the Court to the document cited in footnote 20 for the content of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 87, except to admit that the language quoted in Paragraph 87 appears in the document cited in footnote 20.

88. The document further notes that "[i]f MDHHS makes a referral to a child-placing agency for foster care case management or adoption services *pursuant to a contract*, the child-placing agency must accept or decline the referral."[21]

ANSWER: Regarding the alleged statement by MDHHS quoted in Paragraph 88, Federal Defendants respectfully refer the Court to the document cited in footnote 21 for the content of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge or

---

[19] Compl. Ex. F at 1, ECF No. 1-6 (PageID.107).
[20] *Id.* at 8 (PageID.114)
[21] *Id.* at 9 (PageID.115).

information sufficient to form a belief about the truth of the allegations in Paragraph 88, except

to admit that the language quoted in Paragraph 88 appears in the document cited in footnote 21.

89. Then, after months of discovery—and just days before depositions were set to

begin—the State of Michigan and the ACLU announced on January 23, 2019 that they had

entered into settlement talks, giving intervening defendants one hour's notice to determine

whether they would agree to or oppose a stay and refusing to share any details of the settlement

discussions. On March 22, 2019, the State and the ACLU then announced that they had entered

into a settlement and agreed to the dismissal of the ACLU's claims.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in the first sentence of Paragraph 89. The second sentence of

Paragraph 89 is admitted.

90. The intervenors did not join that settlement. The settlement was not shown to them

prior to filing. In its motion to dismiss the case, the ACLU and State Defendants jointly moved

for a stipulated dismissal of the case, noting that "Intervenor Defendants, who have asserted no

claims and against whom no claims have been asserted, are not party to the Settlement

Agreement." Stipulation of Voluntary Dismissal with Prejudice at 3–4, *Dumont v. Lyon*, No. 17-

cv-13080 (E.D. Mich. Mar. 22, 2019), ECF No. 82. The District Court granted the motion to

dismiss the case, but declining to address or incorporate the terms of the settlement in its order.

ANSWER: The first sentence of Paragraph 90 is admitted. Federal Defendants lack

knowledge or information sufficient to form a belief about the truth of the allegations in the

second sentence of Paragraph 90. The third and fourth sentences of Paragraph 90 are admitted.

91. In a statement accompanying the settlement, Defendant Nessel announced that after

reviewing the ACLU's claims, she "determined that MDHHS may be subject to liability on

Plaintiffs' claims," and thus directed MDHHS to change its internal policy regarding permitting private child placing agencies to refer couples to other agencies.[22] Nessel claimed that this new policy was actually "consistent with the law and existing agency contracts," and would now be enforced against agencies like St. Vincent.

ANSWER: Regarding the alleged statements by Defendant Dana Nessel quoted in Paragraph 91, Federal Defendants respectfully refer the Court to the second document cited in footnote 22 for the content of those statements, which speak for themselves. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 91, except to admit that the language quoted in Paragraph 91 appears in the second document cited in footnote 22.

92. In prior public statements, Defendant Nessel has explained to the press that she believes "there's 'no viable defense' to the 2015 law," and that the law's "only purpose is discriminatory animus."[23]

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92. Federal Defendants attempted to access the link for the document cited in footnote 23 and were unable to do so.

93. Defendant Nessel had previously made similar disparaging statements regarding those who share St. Vincent's religious beliefs, and had publicly stated that she would not enforce the state law protecting religious child welfare agencies.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

---

[22] State Settles Same-Sex Adoption Case, Department of Attorney General, https://www.michigan.gov/ag/0,4534,7-359-82927-492743--,00.html; Summary of Settlement, https://www.michigan.gov/documents/ag/03.22.19_FINAL_Dumont_settlement_summary_650097_7.pdf.
[23] Ed White, *Dem AG candidate: Adoption law discriminates against gays*, Associated Press News (Sept. 27, 2018) https://apnews.com/a1fc021e8e2e4b3b829586ba56ads9c07.

about the truth of the allegations in Paragraph 93.

94. In justifying this decision, Nessel relied on both State policies and federal regulations which she interpreted to require the State to deny agencies like St. Vincent religious exemptions from allegedly applicable anti-discrimination laws.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 94.

95. As Nessel explained, Michigan receives "a significant portion" of its funding under Title IV-E of the Social Security Act, a child welfare grant program administered through the HHS.

ANSWER: Federal Defendants admit that Michigan receives funding under Title IV-E of the Social Security Act and that Title IV-E is a child welfare program administered through HHS. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 95.

96. In fact, MDHHS alone receives over 3.8 billion dollars annually from the federal government through Title IV-E, TANF, and other similar programs.[24]

ANSWER: Denied.

97. According to Nessel, "[a]s a condition of receiving these federal funds, the United States Department of Health and Human Services requires that states' Title IV-E-funded programs prohibit discrimination on the basis of sexual orientation or gender identity."

ANSWER: Paragraph 97 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 97 is denied, except that Federal Defendants admit that the language quoted in Paragraph 97 appears in the second

---

[24] Budget Briefing: HHS Human Services, House Fiscal Agency, https://www.house.mi.gov/hfa/PDF/Briefings/HHS_HS_BudgetBriefing_fy18-19.pdf (last visited Oct. 1, 2019).

document cited in footnote 22, *supra*.

98. The State is also bound by other federal regulations, which require it to respect the religious character of social service providers who receive federal funds. *See, e.g.*, 45 C.F.R. § 87.3(a) ("Neither the HHS awarding agency, nor any State or local government and other pass-through entity receiving funds under any HHS awarding agency program shall, in the selection of service providers, discriminate for or against an organization on the basis of the organization's religious character or affiliation.").

<u>ANSWER</u>: Paragraph 98 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants admit that the cited regulation contains the quoted text, but deny any characterization of the cited regulation, which speaks for itself, and respectfully refer the Court to the regulation for a complete and accurate statement of its contents.

99. Nessel therefore directed MDHHS to, "[i]n compliance with this federal requirement," prevent faith-based agencies from, among other things:

   a. "[R]eferring to another contracted agency an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the agency for contracted services," and

   b. "[R]efusing to perform a home study or process a foster care licensing application or an adoption application for an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for contracted services."[25]

<u>ANSWER</u>: Regarding the alleged statements by Defendant Dana Nessel quoted in Paragraph 99, Federal Defendants respectfully refer the Court to the document cited in footnote 25 for the content of those statements, which speak for themselves. Federal Defendants

---

[25] Summary of Settlement, https://www.michigan.gov/documents/ag/03.22.19_FINAL_Dumont_settlement_summary_650097_7.pdf (last visited Oct. 1, 2019).

otherwise lack knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 99, except to admit that the language quoted in Paragraph 99 appears in

the document cited in footnote 25, except that the document says "agency" rather than "CPA" in

the last-quoted paragraph. To the extent Paragraph 99 alleges that HHS regulations require

MDHHS to prevent faith-based agencies from taking the actions described in Paragraph 99,

those are legal arguments and conclusions of law, to which no response is required; to the extent

a response is required, those allegations are denied.

100. Per the Attorney General's statement and the terms of the settlement, any private

agency which refuses to comply with these requirements "within a reasonable time after

notification by the Department of a Contract Violation" will have its contracts "terminate[d]."[26]

ANSWER: Regarding the alleged language of the *Dumont* settlement agreement quoted

in Paragraph 100, Federal Defendants respectfully refer the Court to the document cited in

footnote 26 for the content of that language, which speaks for itself. Federal Defendants

otherwise lack knowledge or information sufficient to form a belief about the truth of the

allegations in Paragraph 100, except to admit that the language quoted in Paragraph 100 appears

in the document cited in footnote 26.

101. MDHHS also stated it will "initiate an investigation when made of aware of an

alleged Contract Violation," and will terminate the agency's contracts if it "fails to demonstrate

compliance after a reasonable opportunity to implement the approved corrective action plan."[27]

ANSWER:  Regarding the alleged language of the *Dumont* settlement agreement quoted

in Paragraph 101, Federal Defendants respectfully refer the Court to the document cited in

---

[26] Settlement Agreement, *Dumont et al. v. Gordon et al.*, USDC EDMI Case No. 2:17-cv-13080-
PDB-EAS, https://www.michigan.gov/documents/ag/Settlement_Agreement_with_Sig_
Pages_-_FINAL_650100_7.pdf.
[27] *Id.*

footnote 27 for the content of that language, which speaks for itself. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 101, except to admit that the language quoted in Paragraph 101 appears in the document cited in footnote 27.

102. The State has already begun taking steps to enforce this policy, including requiring that child welfare agencies complete training on this new policy.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 102.

103. Upon information and belief, the State has also communicated to state employees that they must desist a prior practice of sending referrals of same-sex couples to other agencies instead of agencies like St. Vincent.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 103.

104. St. Vincent continues to provide services to foster and adoptive families under its state contracts.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 105.

105. St. Vincent's adoption contract is up for renewal in October 2019, and St. Vincent reasonably fears that the State will refuse to renew the contract on the basis of St. Vincent's religious beliefs and practices. Based upon the newly announced policy that would prohibit St. Vincent from providing adoption services consistent with its religious beliefs, St. Vincent believes that adverse action from the State Defendants is certainly impending.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations in Paragraph 105.

*Referrals to accommodate sincere religious belief denied*

106. Michigan has also treated St. Vincent's request for referrals based on its sincere religious beliefs differently from referrals for other reason. The State has admitted that "child placing agencies may refer a prospective foster or adoptive family to another child placing agency" under certain circumstances, but they have decided to deny St. Vincent the ability to make referrals for religious reasons.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 106.

107. The State has admitted that child placing agencies in Michigan are allowed to refer families to other agencies for geographic reasons, if they have a long wait list, or if they are unable to accommodate the families' preferences.[28] State law also permits, and indeed requires, agencies to decline to work with parents for various reasons, including Native American ancestry.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 107.

108. And agencies can still seek to specifically recruit foster parents that can serve specific needs of children, including children with disabilities or mental health issues.[29]

ANSWER: Regarding the alleged statement by the Wayne Center quoted in footnote 29, Federal Defendants respectfully refer the Court to the website cited in footnote 29 for the content

---

[28] Compl. Ex. G at 7, ECF No. 1-7 (PageID.123).

[29] The Wayne Center, a state contracted child placing agency, advertises that it is specifically seeking "foster parents with previous experience with persons who have a developmental disability and/or expertise in related areas, e.g., medical, educational, social work, psychological, etc." Wayne Center, Written Needs Statement, http://www.waynecenter.org/services/foster-care (last visited Oct. 1, 2019).

of that statement, which speaks for itself. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 108, except to admit that the language quoted in footnote 29 appears on the website cited in footnote 29.

109. Under the State's new policy, however, the *only* justification for a referral that is now impermissible is a religious objection to same-sex marriage.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 109.

110. On information and belief, MDHHS also treated St. Vincent differently from other religious foster care agencies in 2017 and 2018.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 110.

111. Following two prior incidents in which a private child placing agency had to transfer a case for religious reasons, MDHHS told another faith-based foster care agency that child placing agencies are permitted to decline to accept a referral for foster care case management or adoption services based on sincerely held religious beliefs, and that MDHHS cannot take adverse action against the agency based on this decision.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 111.

112. On information and belief, MDHHS has taken positions contrary to its current position that once an agency accepts a child for case from MDHHS it is no longer protected by state law. This is inconsistent with prior interpretations by the State in which it explained that the law permitted faith-based child placing agencies to accept or decline a DHHS referral at any time based on their sincerely held religious beliefs.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 112.

113. MDHHS has changed its position on this issue solely to target agencies like St. Vincent Catholic Charities for their religious beliefs that do not allow them to endorse same-sex relationships.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 113.

**Michigan's Unlawful Actions Harm St. Vincent and the Children of Michigan**

114. Michigan's unlawful actions harm St. Vincent and the children and families it serves. If St. Vincent is unable to receive referrals from or contract with the State, it will be forced to close its foster care and adoption programs, ending a decades-old religious ministry and reducing the number of agencies available to serve families and children in need.

ANSWER: The first sentence of Paragraph 114 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of Paragraph 114. Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of Paragraph 114.

115. Across Michigan, the State's actions affect untold thousands of families and children in need, and would force numerous agencies—and all of the Catholic Charities agencies across the State—to close their foster and adoption programs. This would impact hundreds of children statewide, as these agencies are some of the most successful in the State at finding loving homes for children in need.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 115.

116. If the State refuses to work with St. Vincent, then the families currently licensed by St. Vincent would face the difficult choice of either trying to find a new agency that will work with and endorse them as foster parents—and having to start back at square one with a new agency that doesn't know anything about the specific needs of their families or the kids they are serving—or choosing to stop providing foster care services. Upon information and belief, many of St. Vincent's licensed foster parents would stop providing foster care if forced into that choice.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 116.

117. If the State refuses to work with St. Vincent, then the families currently in the home study process, or awaiting adoption placements, would be forced to either begin the process anew with a different agency or go through the process of transferring their licenses to a new agency, losing the relationships they have built in the process. This change would lead to delays in the adoption process for both the parents and for children might be matched with them and are currently awaiting loving homes.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 117.

118. If the State refuses to work with St. Vincent, the Bucks will lose the relationships and support they have depended upon to serve their children and their ongoing needs. The Bucks would also be restricted and burdened in their religious exercise of providing support to other foster and adoptive parents. Should another biological sibling of their adopted children enter the

41

child welfare system, the Bucks would likely miss the opportunity to foster and adopt that child and keep the siblings together.

ANSWER: Paragraph 118 solely concerns parties that were dismissed by the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to those allegations is required.

119. If the State refuses to work with St. Vincent, Ms. Flore would be unable to volunteer at the agency to support and mentor foster and adoptive children, and would be restricted and burdened in her religious exercise of serving children who share the same struggles she experienced.

ANSWER: Paragraph 119 solely concerns a party that was dismissed by the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to those allegations is required.

120. The State's actions substantially burden, denigrate, and discriminate against St. Vincent, the Bucks, Shamber Flore, and others who share their religious beliefs.

ANSWER: Paragraph 120 contains legal arguments and conclusions of law, to which no response is required.

121. St. Vincent remains willing and able to continue its ministry serving children in Michigan. It wants to help alleviate the foster care crisis in Michigan, and it has not and will not prevent any qualified family from becoming a foster parent, be it through St. Vincent or a referral to another agency. But because of Michigan's actions, St. Vincent's over 70-year-old ministry to at-risk children is in jeopardy.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 121.

# CLAIMS*

## Count I
## 42 U.S.C. § 1983
## Violation of the First Amendment to the U.S. Constitution
## Free Exercise Clause
## Not Neutral

122. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 122 incorporates all preceding paragraphs. Federal Defendants

thus incorporate by reference here their answers to those paragraphs.

123. "[A] law targeting religious beliefs as such is never permissible." *Trinity Lutheran*

*Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024 n.4 (2017) (quoting *Church of the*

*Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

ANSWER: Paragraph 123 contains a quotation from a Supreme Court decision, to which

no response is required. To the extent a response is required, Federal Defendants respectfully

refer the Court to the decision cited in Paragraph 123 for a full and accurate statement of its

contents.

124. By adopting a policy requiring the State to discriminate against child placing

agencies with religious objections to same-sex marriage, Defendants have targeted St. Vincent's

religious beliefs and practices.

ANSWER: Paragraph 124 contains legal arguments and conclusions of law, to which no

---

* Federal Defendants are uncertain whether Plaintiffs assert the first seven counts of the
Complaint against both State and Federal Defendants, or against State Defendants only, given
that, as Federal Defendants explained in their Brief in Support of their Motion to Dismiss, ECF
No. 45 (PageID.1680), all of the allegedly unlawful actions Plaintiffs identify in those counts
were taken by State Defendants, not Federal Defendants, *see id.* at 29–30 (PageID.1714–1715).
In addition, although the Court held in its September 26, 2019, Opinion, ECF No. 69
(PageID.2498), that Plaintiffs had stated a Religious Freedom Restoration Act (RFRA) claim
against Federal Defendants, the Court did not address whether Plaintiffs had stated any other
claims against Federal Defendants, *see id.* at 28 n.14 (PageID.2525). Out of an abundance of
caution, Federal Defendants have provided answers to the first seven counts of the Complaint.

response is required. To the extent a response is required, Paragraph 124 is denied as to Federal Defendants.

125. The statements of Defendants and their officials demonstrate that hostility toward Plaintiffs and their religious beliefs was a motivation for Defendants' actions.

ANSWER: Paragraph 125 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 125 is denied as to Federal Defendants.

126. Defendants' laws and policies have not been evenly enforced, demonstrating that the current attempt at enforcement is designed to target particular religious beliefs and practices.

ANSWER: Paragraph 126 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 126 is denied as to Federal Defendants.

127. Defendants do not have a compelling reason for their actions, and Defendants have not selected the means least restrictive of religious exercise in order to further their interests.

ANSWER: Paragraph 127 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 127 is denied as to Federal Defendants.

128. Absent injunctive and declaratory relief against Defendants, Plaintiffs will suffer imminent and irreparable harm.

ANSWER: Paragraph 128 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 128 is denied as to Federal Defendants.

**Count II**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise Clause**
**Not Generally Applicable**

129. Plaintiffs incorporate by reference all preceding paragraphs.

<u>ANSWER</u>: Paragraph 129 incorporates all preceding paragraphs. Federal Defendants

thus incorporate by reference here their answers to those paragraphs.

130. "[L]aws burdening religious practice must be of general applicability." *Lukumi*, 508

U.S. at 542.

<u>ANSWER</u>: Paragraph 130 contains a quotation from a Supreme Court decision, to which

no response is required. To the extent a response is required, Federal Defendants respectfully

refer the Court to the decision cited in Paragraph 130 for a full and accurate statement of its

contents.

131. Defendants' laws and policies have not been evenly enforced, demonstrating that the

current attempt at enforcement is designed to target particular religious beliefs and practices.

<u>ANSWER</u>: Paragraph 131 contains legal arguments and conclusions of law, to which no

response is required. To the extent a response is required, Paragraph 131 is denied as to Federal

Defendants.

132. Defendants have never enforced their laws, policies, and contract provisions in the

manner they are currently being enforced against Plaintiffs.

<u>ANSWER</u>: Denied as to Federal Defendants. To the extent Paragraph 132 refers to State

Defendants, Federal Defendants lack knowledge or information sufficient to form a belief about

the truth of the allegations in Paragraph 132.

133. The public statements of Defendants and their officials demonstrate that hostility

45

toward Plaintiffs and their religious beliefs was a motivation for Defendants' actions.

ANSWER: Paragraph 133 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 133 is denied as to Federal Defendants.

134. Defendants have made exceptions to their policies in some instances.

ANSWER:  Paragraph 134 contains legal arguments and conclusions of law, to which no response is required.

135. Defendants do not have a compelling reason for their actions, and Defendants have not selected the means least restrictive of religious exercise in order to further their interests.

ANSWER: Paragraph 135 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 135 is denied as to Federal Defendants.

136. Absent injunctive and declaratory relief against Defendants, Plaintiffs will be irreparably harmed.

ANSWER: Paragraph 136 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 136 is denied as to Federal Defendants.

## Count III
## 42 U.S.C. § 1983
## Violation of the First Amendment to the U.S. Constitution
## Free Exercise Clause
## System of Individualized Exemptions

137. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 137 incorporates all preceding paragraphs. Federal Defendants thus incorporate by reference here their answers to those paragraphs.

138. An "exception-ridden policy," or one that permits discretionary "individualized exemptions" is "the antithesis of a neutral and generally applicable policy" and therefore "must run the gauntlet of strict scrutiny." *Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012).

ANSWER: Paragraph 138 contains quotations from a Sixth Circuit decision, to which no response is required. To the extent a response is required, Federal Defendants respectfully refer the Court to the decision cited in Paragraph 138 for a full and accurate statement of its contents.

139. Michigan engages in the individualized assessment of alleged contract violations by agencies and exercised a great deal of discretion in creating corrective action plans and permitting exceptions. Defendants are therefore engaging in individualized, discretionary assessments of St. Vincent's conduct.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence Paragraph 139. The second sentence of Paragraph 139 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, the second sentence of Paragraph 139 is denied as to Federal Defendants.

140. State law and MDHHS contracts permits individualized exemptions from child placing agency requirements.

ANSWER: Paragraph 140 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 140.

141. Pursuant to the referral provisions of the foster care and adoption contracts entered into between St. Vincent Catholic Charities and MDHHS, MDHHS is permitted to grant individualized exemptions from its policy of prohibiting contractors from transferring cases back

to MDHHS.

ANSWER: Paragraph 141 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 141.

142. The Defendants' actions against Plaintiffs are the product of a system of individualized exemptions and burden Plaintiffs' religious exercise.

ANSWER: Paragraph 142 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 142 is denied as to Federal Defendants.

143. Defendants do not have a compelling reason for their actions, and Defendants have not selected the means least restrictive of religious exercise in order to further their interests.

ANSWER: Paragraph 143 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 143 is denied as to Federal Defendants.

144. Absent injunctive and declaratory relief against Defendants, Plaintiffs are and will continue to be irreparably harmed.

ANSWER: Paragraph 144 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 144 is denied as to Federal Defendants.

**Count IV**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Speech Clause**
**Compelled Speech**

145. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 145 incorporates all preceding paragraphs. Federal Defendants thus incorporate by reference here their answers to those paragraphs.

146. Defendants are seeking to compel St. Vincent to make affirmative statements that contradict St. Vincent's religious beliefs.

ANSWER: Denied as to Federal Defendants. To the extent Paragraph 146 refers to State Defendants, Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 146.

147. Michigan is conditioning St. Vincent's license, its contracts with MDHHS, and the ongoing ability to engage in the religious exercise of helping children in need, on Plaintiffs' willingness to make such statements.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence Paragraph 147.

148. Such compulsion amounts to compelled speech in violation of the Free Speech Clause of the First Amendment to the United States Constitution.

ANSWER: Paragraph 148 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 148 is denied as to Federal Defendants.

149. Absent injunctive and declaratory relief against Defendants, St. Vincent is and will continue to be irreparably harmed.

ANSWER: Paragraph 149 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 149 is denied as to Federal Defendants.

**Count V**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise and Free Speech Clauses**
**Retaliation for Protected Speech and Religious Exercise**

150. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 150 incorporates all preceding paragraphs. Federal Defendants thus incorporate by reference here their answers to those paragraphs.

151. Statements made by and on behalf of Plaintiffs about their religious beliefs and practices are both religious exercise and protected speech.

ANSWER: Paragraph 151 contains legal arguments and conclusions of law, to which no response is required.

152. Defendants' contract investigation and impending termination, and their threats of additional adverse action, would be sufficient to deter a person of ordinary firmness from exercising his or her constitutional rights.

ANSWER: Paragraph 152 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 152 is denied as to Federal Defendants.

153. A causal link exists between Plaintiffs' religious exercise and protected speech and Defendants' adverse actions against Plaintiffs.

ANSWER: Paragraph 153 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 153 is denied as to Federal Defendants.

154. Such actions are retaliation for religious exercise and protected speech in violation of the First Amendment to the United States Constitution.

ANSWER: Paragraph 154 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 154 is denied as to Federal Defendants.

155. Absent injunctive and declaratory relief against defendants, Plaintiffs are and will continue to be irreparably harmed.

ANSWER: Paragraph 155 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 155 is denied as to Federal Defendants.

**Count VI**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise and Establishment Clauses**
**Denominational Preference and Discrimination**

156. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 156 incorporates all preceding paragraphs. Federal Defendants thus incorporate by reference here their answers to those paragraphs.

157. The Free Exercise and Establishment Clauses prohibit government from officially preferring one denomination over another or discriminating against a religious group for its religious beliefs and practices. *See Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

ANSWER: Paragraph 157 contains legal arguments and conclusions of law, to which no response is required. Paragraph 157 also contains a quotation from a Supreme Court decision, to which no response is required. To the extent a response is required, Federal Defendants respectfully refer the Court to the decision cited in Paragraph 157 for a full and accurate

statement of its contents.

158. Defendants are applying their laws in a manner which penalizes St. Vincent for its religious beliefs. Defendants' actions also alienate, communicate disapproval to, and impose concrete harms on foster families such as the Bucks and volunteers such as Ms. Flore, who share St. Vincent's Christian religious beliefs.

ANSWER: Paragraph 158 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 158 is denied as to Federal Defendants.

159. Defendants have not penalized other religious groups for their religious beliefs.

ANSWER: Paragraph 159 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Federal Defendants deny that they have penalized religious groups for their religious beliefs and otherwise deny Paragraph 159.

160. Defendants' preference for some religious beliefs and practices and discrimination against Plaintiffs' beliefs and practices violates the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution.

ANSWER: Paragraph 160 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 160 is denied as to Federal Defendants.

161. Defendants do not have a compelling reason for their actions, and Defendants have not selected the means least restrictive of religious exercise in order to further their interests.

ANSWER: Paragraph 161 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 161 is denied as to Federal Defendants.

162. Absent injunctive and declaratory relief against Defendants, Plaintiffs have been and will continue to be irreparably harmed.

ANSWER: Paragraph 162 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 162 is denied as to Federal Defendants.

**Count VII**
**42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the U.S. Constitution**
**Equal Protection**

163. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 163 incorporates all preceding paragraphs. Federal Defendants thus incorporate by reference here their answers to those paragraphs.

164. The Equal Protection Clause prohibits discrimination on the basis of religion.

ANSWER: Paragraph 164 contains legal arguments and conclusions of law, to which no response is required.

165. Defendants' likely impending contract termination and other adverse actions penalizes Plaintiffs because of their religious beliefs.

ANSWER:  Paragraph 165 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 165 is denied as to Federal Defendants.

166. Contractors that espouse religious beliefs contrary to those espoused by Plaintiffs are allowed to maintain their contractual relationships with the State.

ANSWER: Federal Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 166.

167. Defendants' preference for one set of religious beliefs and against Plaintiffs'

religious beliefs violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

ANSWER: Paragraph 167 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 167 is denied as to Federal Defendants.

168. Absent injunctive and declaratory relief, Plaintiffs have been and will continue to be irreparably harmed.

ANSWER: Paragraph 168 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, Paragraph 168 is denied as to Federal Defendants.

**Count VII [*sic*]**
**42 U.S.C. § 2000bb**
**Religious Freedom Restoration Act (RFRA)**

169. Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER: Paragraph 169 incorporates all preceding paragraphs. Federal Defendants thus incorporate by reference here their answers to those paragraphs.

170. RFRA prohibits the enforcement of federal law when such enforcement substantially burdens religious exercise.

ANSWER: Paragraph 170 contains legal arguments and conclusions of law, to which no response is required.

171. The State Defendants have claimed that enforcement of federal law will require them to take adverse action against St. Vincent.

ANSWER: Paragraph 171 appears to refer to statements made by State Defendants described elsewhere in the Complaint. Federal Defendants respectfully refer the Court to those

statements for the content of those statements, which speak for themselves. Federal Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 171.

172. Terminating the States' contracts with St. Vincent or taking other adverse action against St. Vincent would impose a substantial burden on Plaintiffs' sincere religious exercise.

ANSWER: Paragraph 172 contains legal arguments and conclusions of law, to which no response is required.

173. That burden would not be justified by any compelling government interest, and contract termination or adverse action against St. Vincent would not be the least restrictive means of furthering such interests.

ANSWER: Paragraph 173 contains legal arguments and conclusions of law, to which no response is required.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court:

a. Declare that the First and Fourteenth Amendments to the United States Constitution require Defendants to cease discriminating against Plaintiffs and to cease their ongoing investigation and impending adverse actions on the basis of Plaintiffs' religious beliefs, speech, and practices;

b. Declare that the Religious Freedom Restoration Act prohibits Defendants from using federal regulations or the enforcement of federal law to substantially burden Plaintiffs' religious exercise;

c. Order Defendants to continue performance of the Contract;

d. Issue preliminary and permanent injunctions prohibiting Defendants from taking

retaliatory action against Plaintiffs, including cancellation or non-renewal of the foster

care and/or adoption contracts, or from otherwise penalizing Plaintiffs for their religious

belief, speech, and practices regarding marriage;

e.  Award Plaintiffs nominal damages for the loss of their rights as protected by law;

g.  Award Plaintiffs the costs of this action and reasonable attorney's fees; and

h.  Award such other and further relief as the Court deems equitable and just.

ANSWER: This unnumbered paragraph constitutes a prayer for relief, to which no

response is required. To the extent a response is required, Federal Defendants deny that Plaintiffs

are entitled to the relief requested against Federal Defendants, or to any other relief against

Federal Defendants.

Federal Defendants deny any and all allegations in the Complaint not expressly admitted

above and to which a response is deemed required.

## DEFENSES

1. The Court lacks subject-matter jurisdiction over Plaintiffs' claims against Federal

Defendants.

2. Plaintiffs have failed to state a claim upon which relief can be granted against Federal

Defendants.

3. Plaintiffs' claim for nominal damages against Federal Defendants is barred by

sovereign immunity.

## CONCLUSION

WHEREFORE, having answered, Federal Defendants assert that Plaintiffs are not

entitled to the relief requested against Federal Defendants, or to any relief whatsoever against

Federal Defendants, and request that this action be dismissed with prejudice as to Federal

Defendants and that Federal Defendants be given such other relief as the Court deems just and proper.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANDREW BYERLY BIRGE
United States Attorney

MICHELLE BENNETT
Assistant Branch Director

Dated: October 10, 2019            /s/ *Christopher A. Bates*
CHRISTOPHER A. BATES
Senior Counsel to the Assistant Attorney General
U.S. Department of Justice, Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-3307
christopher.a.bates@usdoj.gov

*Counsel for Federal Defendants*