UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELISSA BUCK; CHAD BUCK; and SHAMBER FLORE; ST. VINCENT CATHOLIC CHARITIES, | |
| Plaintiffs, | No. 1:19-cv-00286 |
| v. | HON. ROBERT J. JONKER |
| ROBERT GORDON, in his official capacity as the Director of the Michigan Department of Health and Human Services; HERMAN MCCALL, in his official capacity as the Executive Director of the Michigan Children's Services Agency; DANA NESSEL, in her official capacity as Michigan Attorney General; ALEX AZAR, in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | MAG. PHILLIP J. GREEN |
| Defendants. | |

## STATE DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants Michigan Department of Health and Human Services

("Department" or "MDHHS")  Director Robert Gordon, MDHHS Children's Services

Agency Executive Director JooYuen Chang,[1] and Michigan Attorney General Dana

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this motion reflects the substitution of Children's Services Agency Executive Director JooYuen Chang for former Children's Services Agency Executive Director Herman McCall, who was named in his official capacity.

Nessel (collectively, "State Defendants"), through counsel, hereby submit their Answer to Plaintiffs' Complaint, ECF No. 1 (PageID.1). In response to Plaintiffs' Complaint, State Defendants answer as follows:

**ANSWER**

1.   St. Vincent Catholic Charities (St. Vincent) is one of the oldest and most effective foster care and adoption agencies in Michigan. St. Vincent exists to serve those in need, and it wants to continue serving foster and adoptive children in Michigan through its public adoption and foster care programs. But despite a clear need for *more* foster and adoptive homes, the State of Michigan has decided to force St. Vincent and numerous other faith-based agencies like it—serving hundreds of children across the State—to choose between following their faith and closing down a vital ministry.

<u>ANSWER:</u>

Paragraph 1 contains characterizations of Plaintiff St. Vincent, to which no response is required. To the extent a response is required, State Defendants admit that St. Vincent is a foster care and adoption agency in Michigan. State Defendants deny the last sentence as untrue.  State Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.

2.   St. Vincent provides training, supervision, and on-going support to each foster care and adoptive family with which it partners. For adoptive parents like Chad and Melissa Buck, who have worked with St. Vincent to foster and then adopt five children with challenging medical needs and trauma from past abuse, St. Vincent has been a God- send. To this day, St. Vincent continues to be a crucial source of support for the Bucks. St. Vincent is also the only agency with

institutional knowledge of the Buck's family situation, the challenges faced by their special-needs children, and the difficult dynamics with their birth parents. The Bucks give back to St. Vincent by helping to recruit, serve, and support other foster and adoptive parents. Without St. Vincent, the Bucks are likely to miss out on the opportunity to foster and adopt a sibling of their five adopted children were he or she to enter the State's care.

ANSWER:

State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2.

3.    St. Vincent helped Shamber Flore find a home and a loving family after escaping a past filled with trauma and abuse. St. Vincent has continued to help and support Shamber and her adoptive parents, and now Shamber serves St. Vincent andits families by providing mentoring and support for children and families recovering from past trauma.

ANSWER:

State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3.

4.    Despite St. Vincent's demonstrated record of excellent service to the community, the Michigan Department of Health and Human Services (MDHHS) and the Michigan Attorney General have threatened to take action against St. Vincent solely because the agency abides by its Catholic beliefs regarding marriage. The State has made clear that it will no longer permit adoption and foster agencies to operate in accord with their religious beliefs (as they have done

successfully for decades), and will penalize them if they refuse to provide written evaluations that conflict with their religious beliefs. If the State ends these relationships, St. Vincent and many other religious child welfare agencies will be unable to continue providing foster care and adoption services in Michigan. This means that adoptive parents will have fewer choices and foster children will face longer waits to find permanent homes.

ANSWER:

Denied as untrue.

5.    The State's actions violate the First and the Fourteenth Amendments to the United States Constitution. Enforcement of federal regulations supporting the State's actions likewise violates the Constitution and federal law. For this reason, the Court should issue a judgment declaring these actions unlawful and enjoining the State and the federal government from violating Plaintiffs' First and Fourteenth Amendment rights.

ANSWER:

Denied as untrue.

**IDENTIFICATION OF PARTIES**

6.    Plaintiff St. Vincent Catholic Charities is a Michigan nonprofit corporation with charitable and religious purposes; St. Vincent is party to foster and adoptive services contracts with MDHHS.

ANSWER:

Paragraph 6 contains characterizations of Plaintiff St. Vincent, to which no response    is required. To the extent a response is required, the allegations are admitted.

7.    St. Vincent was originally incorporated by the Roman Catholic Bishop of Lansing and remains affiliated with the Catholic Diocese of Lansing and subject to the authority of the Bishop of Lansing, who maintains certain reserved powers over St.  Vincent. Because of its  affiliation to the Catholic Diocese of Lansing, St. Vincent is listed in the Official Catholic Directory under the Catholic Diocese of Lansing.

ANSWER:

State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7.

8.    St. Vincent Catholic Charities' vision is to have "faith in God and love for all," as it "aspire[s] to create a healthier community." St. Vincent is dedicated to serving others in a spirit of humility and shares a genuine concern for the well-being of its neighbors, affirming the God-given dignity and worth of every human person. The mission of St. Vincent Catholic Charities is the work of the Catholic Church, to share the love of Christ by performing the corporal and spiritual works of mercy. In this way, those served by the Church and her members (including her charitable agencies) encounter Christ, and the Church encounters Christ in those served:

> Then the King will say to those at his right hand, "Come, O blessed of my Father, inherit the kingdom prepared for you from the foundation of the world; for I was hungry and you gave me food, I was thirsty and you gave me drink, I was a stranger and you welcomed me, I was naked and you clothed me, I was sick and you visited me, I was in prison and you came to me. . . Truly, I say to you, as you did it to one of the least of these my brethren, you did it to me."

*Matthew* 25:40.  St. Vincent exercises its faith and carries out this religious mission to "the least of these" through its foster care and adoption ministries. Care for needy children and the provision of these services is an integral, fundamental, and central part of St. Vincent's religious exercise. Providing these services in a manner consistent with Catholic teaching is part of its religious character and affiliation.

ANSWER:

State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8.

9.  Many of the children in St. Vincent's care are minority children (African American, Hispanic, or Native American), and St. Vincent excels in providing extra support for families with special needs children.

ANSWER:

State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9.

10.  Chad and Melissa Buck are adoptive parents and former foster parents currently living in Holt, Michigan. The Bucks adopted five special-needs children through St. Vincent. The Bucks see foster care and adoption as a religious calling, and as a part of their sincere religious exercise they serve and support other

6

foster and adoptive parents.

　ANSWER:

Paragraph 10 solely concerns parties that were dismissed by the Court's
September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no
response is required. To the extent a response is required, State Defendants lack
knowledge or information sufficient to form a belief about the truth of the
allegations in Paragraph 10.

　11.  The Bucks would struggle to provide the extensive care that their

children require without the support  they  receive  from  St. Vincent. St. Vincent

has provided the Bucks with training, resources, support, and professional

guidance as to how to best care for their children with special needs. The Bucks

have been able to call social workers at any hour and receive an answer from

someone they know and trust. These social workers have become like family and

have shown great love and care for their  children.  The  Bucks  continue  to  rely

on  St. Vincent  for  support including through attending St. Vincent's support

group and maintaining relationships with the agency workers who know their

family and their children. The Bucks also have a religious mission to serve other

foster families, and they do so by working with St. Vincent to support foster and

adoptive parents, including through a foster parent support group that St.

Vincent facilitates, which also enables them to help support and recruit more

foster parents. This group is the only foster parent support group offered in the

tri-county area and it is open to all foster families, including same-sex couples.

　ANSWER:

Paragraph 11 solely concerns parties that were dismissed by the Court's

September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response is required. To the extent a response is required, State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 11.

12.   Plaintiff Shamber Flore is a former foster child whose family fostered

and adopted her through St. Vincent. Ms. Flore exercises her faith by

encouraging and mentoring foster children and sharing her own story of

overcoming hardship and abuse to find love and joy. She relies upon the

relationships and trust she has built with St. Vincent to serve other families

working with St. Vincent.

ANSWER:

Paragraph 12 solely concerns parties that were dismissed by the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response is required. To the extent a response is required, State Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12.

13.   Defendant Robert Gordon is the Director of MDHHS, the state agency

responsible for foster care and adoption services for children in state  custody.

MDHHS  contracts  with  private  child  placing  agencies,  including St. Vincent

Catholic Charities, to provide public foster care and adoption services. Defendant

Gordon is sued in his official capacity only.

ANSWER:

State Defendants admit that Robert Gordon is the Director of the Michigan Department of Health and Human Services.  The remainder of Paragraph 13 contains legal arguments, conclusions of law, and characterizations of this lawsuit, to which no response is required.

14.   Defendant Dr. Herman McCall is Executive Director of the Children's

Services Agency (CSA), a sub-agency of MDHHS that, in addition to having

oversight over the work of all private child placing agencies, is mandated by law

to "[r]eview, investigate, evaluate, and assess all programs within [MDHHS]

related to services and programs for children," including by advising on policy

related to "children's services and programs including, but not limited to,

services for foster children,  juvenile  justice,  and  homeless  youth."  Mich.

Comp.  Laws § 400.227 (2015). Defendant McCall is sued in his official capacity

only.

ANSWER:

State Defendants deny that Dr. Herman McCall is the Executive Director of the
Children's Services Agency.  The remainder of Paragraph 14 contains legal
arguments, conclusions of law, and characterizations of this lawsuit, to which no
response is required.

15.   Defendant Dana Nessel, the Attorney General of the State of Michigan,

is charged with representing state agencies and enforcing state law. Defendant

Nessel has been instrumental in framing MDHHS's current policy regarding the

enforcement of MDHHS contracts and state law governing religious child welfare

providers. Attorney General Nessel is sued in her official capacity only.

ANSWER:

State Defendants admit that Dana Nessel is the Attorney General of the
State of Michigan. State Defendants deny the second sentence as untrue.  The
remainder of allegations of Paragraph 15 contain legal arguments and conclusions
of law, to which no response is required.

16.   Defendant Alex M. Azar is the Secretary of the United States

Department of Health and Human Services (HHS). In this capacity, he  has

responsibility for the operation and management of HHS and is the appointed

official responsible for issuing and enforcing the challenged federal regulations.

Secretary Azar is sued in his official capacity only.

ANSWER:

State Defendants admit that Alex M. Azar is the Secretary of the United States
Department of Health and Human Services (HHS). State Defendants lack
knowledge or information sufficient to form a belief about the truth of the
allegations in the second sentence. The remainder of Paragraph 16 contains legal
arguments, conclusions of law, and characterizations of this lawsuit, to which no
response is required. To the extent a response is required, State Defendants lack
knowledge or information sufficient to form a belief about the truth of the
allegations in the second sentence.


17.    Defendant United States Department of Health and Human Services is

an executive agency of the United States government and is responsible for the

promulgation, administration, and enforcement of the challenged federal

regulations.

ANSWER:

State Defendants admit that Defendant United States Department of Health and
Human Services is an executive agency of the United States government. The
remainder of Paragraph 17 contains legal arguments, conclusions of law, and
characterizations of this lawsuit, to which no response is required. To the extent
a response is required, State Defendants lack knowledge or information sufficient
to form a belief about the truth of the allegations in the second sentence.

## JURISDICTION AND VENUE

18.   This action arises under the Constitution and laws of the United States.

The Court has subject matter jurisdiction under 28 U.S.C.

§§ 1331, 1343, and 1361. This action arises under the Constitution and laws of

the United States.

<u>ANSWER:</u>

Paragraph 18 contains legal arguments and conclusions of law, to which no response is required. To the extent a response is required, State Defendants deny the allegations as untrue.

19.   This Court has personal jurisdiction over Defendants because all Defendants are located, domiciled, or otherwise are present and conducting a continuous and systematic part of their general business within the State.

<u>ANSWER:</u>

Paragraph 19 contains legal arguments and conclusions of law, to which no response is required.

20.   The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

<u>ANSWER:</u>

Paragraph 20 contains legal arguments and conclusions of law, to which no response is required.

21.   Venue lies in this district pursuant to 28 U.S.C. § 1391(e). All Plaintiffs reside in this district, as do Defendants Gordon, McCall, and Nessel ("State Defendants"). Additionally, a substantial part of the events or omissions giving rise to the claims occurred in this district. Plaintiff St. Vincent Catholic Charities is headquartered and operates in this district, and Plaintiffs Shamber Flore, Chad Buck, and Melissa Buck live in this district and all would be harmed both by the State's actions and by application of the HHS regulations to its religious ministry. The State Defendants reside in the state capital, also in this District.

ANSWER:

The first, second, third, and fifth sentences of Paragraph 21 contain legal arguments and conclusions of law, to which no response is required. State Defendants admit that Plaintiff St. Vincent is headquartered and operates in the Western District of Michigan; Plaintiffs Shamber Flore, Chad Buck, and Melissa Buck were dismissed by the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and accordingly, no response to the allegations about them is required; and State Defendants deny as untrue the remaining allegations.

## FACTUAL ALLEGATIONS

### Michigan's Foster Care System

*The State contracts with private child placing agencies*

22.   Over 12,000 children are currently in Michigan's foster care system, and the need for new foster parents far outstrips the number of families seeking to care for these children. Indeed, approximately 3,000 Michigan foster children are available for adoption at any given time. Of those children, nearly 300 do not have an identified adoptive family.  Because there are not enough families, more than 600 of these children "age out" of foster care every year. They exit the foster system at age 18 without any permanent family, and many lack the resources and skills to successfully transition into adulthood. These children are much less likely to graduate high school, let alone college, and far more likely to end up in poverty. Furthermore, Michigan therefore relies upon state- licensed foster care and adoption agencies ("child placing agencies") to recruit, train, certify, and supervise foster families that will care for children in the State's custody.

<u>ANSWER:</u>

Admitted in part and denied in part.  In Michigan, there are roughly 13,000 children in foster care with approximately 3,000 children in foster care at one time.
In further answer, MDHHS performs foster care services and contracts with CPAs to provide foster care case management services in accordance with the terms of the contract.  State Defendants lacks sufficient information to form a belief about the truth of the allegations.  Documents referenced in this allegation speak for themselves.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

23.   The State therefore has contracts with over 90 different private child placing agencies that operate throughout the State. By contracting with the State, these agencies agree to provide foster and adoptive services to children in need.

<u>ANSWER:</u>

Admitted in part and denied in part.  As of June 2019, MDHHS holds 137 contracts with 57 private CPAs to provide foster care or adoption services throughout Michigan.  MDHHS does not provide adoption services and contracts with private CPAs to perform those services.in accordance with the terms of the contract.  State Defendants deny the remaining allegations as untrue. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

24.   The State encourages potential foster and adoptive parents to reach out to multiple agencies and to find an agency that will be a good fit for them, telling prospective parents that it is "important that you feel comfortable sharing personal and private information" with the agency you choose.  The State has also created numerous support services by which prospective foster or adoptive parents can meet with experienced "Navigators" who will help guide them

13

through the process of finding an agency that is a good fit.

ANSWER:

Denied as untrue in the form stated. The document referenced by Plaintiffs speaks for itself. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

25. The State benefits from, and permits, private child placing agencies to develop specializations and to focus on serving certain populations—like children with disabilities or children with a specific ethnic background. And agencies will often seek to specifically recruit foster parents that can serve those unique needs. When a child placing agency is unable to work with a prospective foster or adoptive family, that agency will refer the prospective family to another agency that might better suit their needs. This happens routinely for numerous reasons. For example, agencies can refer applicants elsewhere if a family lives too far away from the agency, making home visits impractical, if the agency has a wait list, if the family has not been satisfied with the agency's services, or if the family is looking for a specific type of child not currently in the agency's care, just to name a few.

ANSWER:

Denied as untrue in the form stated. The information referenced by Plaintiffs speaks for itself. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction. The document referenced in the allegation speaks for itself.

26. As Steve Yager, Executive Direct of the Children's Services Agency within MDHHS, previously stated: "[W]e work with agencies based on a contract,

not on their belief system, stated or otherwise. We do not compel agencies to accept referrals—never have; rather, we create through contracts a vast array of providers to meet the very diverse needs of the children and families we serve."

ANSWER:

Denied as untrue in the form stated.  The document referenced in this allegation speaks for itself.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

27.   In Michigan, foster care placements and public adoptions can only be performed by agencies that contract with MDHHS to perform these services. St. Vincent would not be able to provide its foster care or adoption ministry without a license and contract from the State, as the State is the sole source of public foster care and adoption referrals. Without new referrals, St. Vincent would quickly lose the ability  to continue providing foster care and adoptive services and would have to shut down both programs.

*The Home Studies and Certification Process*

ANSWER:

State Defendants admit the first sentence and deny the second sentence as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.  As to the last sentence, State Defendants lack sufficient information to form a belief about the truth of the allegations.

28.   There is no shortage of opportunities for same-sex couples to foster or adopt in Michigan.

ANSWER:

Denied as untrue.

29.   DHHS welcomes and encourages same-sex couples to foster and adopt,

and no same-sex couple has been prevented from fostering or adopting a child by

St. Vincent.

ANSWER:

Admitted that DHHS welcomes and encourages same-sex couples to foster and
adopt.  The remainder of the allegations are denied as untrue.  State Defendants
incorporate by reference affidavits and other evidence submitted in briefs
pertaining to their motion to dismiss and opposition to Plaintiffs' motion for
preliminary injunction.

30.   If St. Vincent is unable to work with a couple due to its religious beliefs,

it provides the couple with a list of other area agencies who do not share St.

Vincent's religious beliefs and could assist them in becoming foster or adoptive

parents.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.

31.   In fact, through the Michigan Adoption Resource Exchange (M.A.R.E)

(the State's central adoption portal), any foster family, including a same-sex or

unmarried couple, can be connected to a private child placing agency, become a

certified pre-adoptive home, and then adopt a child that is currently placed in a

foster home serviced by a different agency, including St. Vincent.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

32.   In other words, parents interested in adopting a child in St. Vincent's care need not work directly with St. Vincent to adopt that child, but may work with another agency.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

33.   In this way, LGBTQ individuals have been able to adopt a child in St. Vincent's care.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

34.   As part of the certification process, a prospective foster or adoptive parent must work with either MDHHS or a private agency to complete a "home study" before they can be approved by the State to adopt or foster a child.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

35.   As part of the home study, a social worker will visit the applicant's home in person and meet with all of the individuals living in that home.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

36.   This in-person meeting is a necessary component of the home study

because it allows the social worker to assess both the home and the individuals

living in it.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

37.   During this in person meeting, the social worker will ask the applicant

very specific, personal, and difficult questions to gauge whether it would be

appropriate to place a foster child in need in their home.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

38.   These questions are necessary to allow the agency to assess whether the

applicant's home is appropriate and suitable for the placement of foster or

adoptive children.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

39.   Often, these children have been subject to past abuse or other traumatic

events, so careful evaluation of the family's living situation is necessary to avoid

unnecessary and potentially harmful conflicts.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

40.   In addition, MDHHS's foster/adoption home evaluation form specifically

requires agencies to assess the "[s]trengths and weaknesses" of the parents and

the "[s]trengths of the relationship" between the couple, including "level of

satisfaction" and "stability" of the relationship.

ANSWER:

Denied as untrue in the form stated.  The home evaluation form speaks for
itself.  State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

41.   Regarding home studies for LGBTQ individuals, the Human Rights

Campaign (HRC) has recognized that a social worker may ask "all kinds of

questions about [the applicant's] childhood and upbringing, including questions

about puberty, sex and sexuality." HRC stated that the "homestudy serves as an

evaluation tool that allows you to determine if a prospective resource parent has

that capability to provide a child with a safe and nurturing home" and should be

based on a "thorough evaluation." A home study also requires an agency to ask

very personal questions regarding an LGBT individual's past and sensitive

questions about their relationships, family, and love life. In short, a home study

is not a mere box to be checked.

ANSWER:

Denied as untrue in the form stated.  The document referred to in this allegation
speaks for itself.  State Defendants incorporate by reference affidavits and other
evidence submitted in briefs pertaining to their motion to dismiss and opposition
to Plaintiffs' motion for preliminary injunction.

42.   Home studies are very invasive, thorough, and in-depth investigations

that take into account every aspect of an applicant's family life and are part of the

process by which an agency and the applicant determine if they are the right fit

for each other. As Michigan recognizes, it is crucial that applicants "trust [their]

instincts" and "[c]hoose an agency [they] are compatible with."

ANSWER:

Denied as untrue in the form stated.  The document referred to in this allegation
speaks for itself.  State Defendants incorporate by reference affidavits and other
evidence submitted in briefs pertaining to their motion to dismiss and opposition
to Plaintiffs' motion for preliminary injunction.

43.   Only after a home study and assessment by a social worker is complete

will the agency refer the application to the State with a recommendation that the

State provide final approval and licensing.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

44.   As part of this licensing recommendation, an agency must prepare a

report and licensing recommendation for MDHHS. That report analyzes the

relationships in the home and provides a recommendation regarding placing children in that home. That report is—and St. Vincent understands that report to be—a written approval of the relationships in the home and confirmation that the agency has determined the home is suitable for the placement of children.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

45.   HRC and other LGBTQ-advocacy organizations believe that agencies should not place children with families that would not be affirming of LGBTQ children, including for religious reasons.  HRC provides a "Seal of Recognition" to agencies that are leaders in serving LGBTQ foster families and children. In Michigan, the following agencies have received the Seal of Recognition: Fostering Futures, Hands Across the Water, and Judson Center - Foster Care & Adoption.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the allegations.

46.   Upon information and belief, the State does not take the position that it would be a violation of state law or policy for an agency to refuse to place a child with a religious foster family if the agency determined that the family would not be affirming of LGBTQ children.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

47.   Upon information and belief, the State does not take the position that it would be a violation of state law or policy for an agency to refuse to recommend for certification a foster family if the agency determined that the family would not be affirming of LGBTQ children.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

48.   Upon information and belief, the State has never investigated or penalized an agency for refusing to recommend for certification a foster family if the agency determined that the family would not be affirming of LGBTQ children.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

49.   Upon information and belief, the State has never investigated or penalized the Sault Tribe Binogii Placement Agency, a State-licensed child placing agency, for only placing children with Native American foster or adoptive parents.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

50.   Upon information and belief, the State has never investigated or penalized the Wayne Center, a State-licensed child placing agency, for seeking only parents with prior experience caring for developmentally disabled children.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

51.   Upon information and belief, the State has never investigated or penalized Homes for Black Children, a former State-licensed child placing agency, for specializing in providing care for Black children.

**_Placing a child in a certified foster or adoptive home_**

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

52.   When a child must be removed from their home and placed in a foster home, DHHS's goal is to place that child in a home within 24 hours. In order to do this, the State will reach out to one or more of the child placing agencies with which it has contracted to see if that agency has a family ready and willing to take in that child. The child placing agency  will then be given one hour by MDHHS to contact one or more families and see if it can find a placement for that child. If the first agency MDHHS contacts cannot find an available family, MDHHS contacts additional agencies. Sometimes, MDHHS will contact multiple agencies at the same time when the situation is urgent.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

53.   Once a certified family is "matched" with the child in need, MDHHS will

23

transfer that child into the foster family and the private child placing agency

with whom that family was certified will oversee the placement, providing ongoing

support and training to the foster family.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.  State Defendants incorporate by reference affidavits and other
evidence submitted in briefs pertaining to their motion to dismiss and opposition
to Plaintiffs' motion for preliminary injunction.

54.  As discussed above, families certified through one foster agencies may

still adopt children under the supervision of a different agency through M.A.R.E.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.  State Defendants incorporate by reference affidavits and other
evidence submitted in briefs pertaining to their motion to dismiss and opposition
to Plaintiffs' motion for preliminary injunction.

55.  Michigan relies upon state and federal funds, including federal

Temporary Assistance to Needy Families (TANF) block grants, to administer its

foster care and adoption programs. As a condition of receiving these funds, the

Department of Health and Human Services is required by 45 CFR § 75.300(a) to

"communicate to the non-Federal entity [here, MDHHS] all relevant public policy

requirements . . . and incorporate them either directly or by reference in the

terms and conditions of the Federal award." *Id.* One such public policy

requirement imposed by these same regulation is that "no person otherwise

eligible will be excluded from participation in, denied the benefits of, or subjected

to discrimination in the administration of HHS programs and services based on

non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation." 45 CFR § 75.300(c). Through contracts with private child placing agencies, Michigan provides foster parents and the agencies that supervise them per diem payments from a combination of federal and state funds. That funding is provided to child placing agencies only after an agency has accepted the referral of a child and is supervising that placement with a certified foster family.

ANSWER:

Denied as untrue in the form stated.  In further answer, the regulation cited speaks for itself.

56.    Through contracts with private child placing agencies, Michigan also provides specified funding to adoptive parents and the agencies that supervise them from a combination of federal and state funds.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

57.    Upon information and belief, MDHHS and Attorney General Nessel have interpreted 45 CFR § 75.300(a) to apply to St. Vincent Catholic Charities and operate to require the State to force St. Vincent to violate its sincere religious beliefs by providing home studies for same- sex relationships.

ANSWER:

Denied as untrue.  State Defendants incorporate by reference affidavits and

other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

58.   Were St. Vincent to fail to comply with this regulation, MDHHS will cut St. Vincent's funding and refuse to continue contracting with the agency.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

*State law protects the religious exercise of child placing agencies*

59.   State law expressly protects the ability of child placing agencies to decline to perform a home study or make a licensing recommendation. *See* Mich. Comp. Laws 722.124e(h) (2015). This law, passed in 2015, prohibits the State from declining to contract, declining to renew a contract, or taking any other adverse action against a child placing agency based on its decision to refer same-sex or unmarried couples to other agencies for religious reasons. *Id.*

ANSWER:

Denied as untrue.

60.   When this law was passed, Michigan explained that "[h]aving as many possible qualified adoption and foster parent agencies in this state is a substantial benefit to the children of this state who are in need of these placement services." Mich. Comp. Laws 722.124e(c) (2015). Michigan also found that it crucial to "ensur[e] that faith-based child placing agencies can continue to provide adoption and foster care services" because their work "benefit[s] the children and families who receive publicly funded services." Mich. Comp. Laws

722.124e(g) (2015). Accordingly, Michigan chose to protect faith-based agencies by permitting them to refer prospective applicants to another agency if serving that applicant would conflict with the agency's sincerely held religious beliefs. Michigan concluded that this was in the public interest and in the interest of serving the most families and children in need. *Id.*

ANSWER:

Denied as untrue in the form stated.  Michigan law speaks for itself.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

61.    Soon after the law was passed, MDHHS interpreted the statute to mean that it could not penalize or terminate contracts with religious child welfare agencies if those agencies declined to perform home studies for same-sex or unmarried couples.

ANSWER:

Denied as untrue.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

62.    MDHHS determined that the state law might not apply in some cases involving child-specific adoption contracts, but even in those cases, MDHHS granted case-by-case exemptions which permitted child welfare agencies to continue operating according to their religious beliefs.

ANSWER:

Denied as untrue.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

63.   In response to this new law, MDHHS also updated its individual child

adoption forms and contracts.

ANSWER:

Denied as untrue in the form stated.  State Defendants lack sufficient
information to form a belief about the truth of the allegations.  State Defendants
incorporate by reference affidavits and other evidence submitted in briefs
pertaining to their motion to dismiss and opposition to Plaintiffs' motion for
preliminary injunction.

**St. Vincent's Adoption and Foster Care Program**

64.   St. Vincent shares Michigan's goal of working to fill the shortage of safe

foster homes for these vulnerable kids. St. Vincent is able to recruit prospective

families who would not otherwise feel able to foster or adopt children based on its

religious character and mission.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.

65.   St. Vincent provides public foster care and adoption services. It performs

home studies and makes licensing recommendations to the state, oversees foster

and adoptive placements, and also provides ongoing training and support for the

foster or adoptive family and works with case workers to coordinate services to

the foster family, birth family and child in order to achieve a positive outcome.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.

66.   St. Vincent serves and places children regardless of their race, color, sex,

sexual orientation, gender identity, religion, national origin, ancestry, age,

disability, source of income, familial status, genetic information, or sexual

violence victim status.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.

67. St. Vincent shares the religious beliefs and teachings of the Catholic

Church regarding same-sex marriage. But St. Vincent would never stop a family

who wants to foster or adopt from having the opportunity to complete the

application and home study process. If St. Vincent were ever unable to perform

in-depth home assessments and make reports and written certifications to the

State for any reason, including based on St. Vincent's own religious beliefs, then

it would refer the applicants to another agency that could better serve their

needs.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.

68. According to M.A.R.E., there are 16 other agencies that also serve

Ingham County, which is where St. Vincent is located.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the vague and ambiguous allegations. The document referenced in the
allegation speaks for itself.

69. For over 50 years, St. Vincent has provided foster care and adoption

services in Michigan pursuant to regularly renewed contracts. In reliance upon these contracts, St. Vincent currently employs 18 staff members who work exclusively on these contracts, has budgeted and raised funds designed to supplement state funding on that contract, and has taken other concrete steps in expectation that it will continue to receive referrals and be able to perform its duties under these contracts.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the allegations.

70.   St. Vincent provides training, supervision, and on-going support to each foster care and adoptive family with which it partners. For adoptive parents like Chad and Melissa Buck, who have worked with St. Vincent to foster and then adopt five children with challenging medical needs and trauma from past abuse, St. Vincent has been a God- send. To this day, St. Vincent continues to be a crucial source of support for the Bucks, and they in turn provide support and assistance to other families fostering and adopting through St. Vincent. For the Bucks, serving as adoptive parents and serving other adoptive parents is a religious calling. St. Vincent facilitates ongoing services to families that have adopted, like a monthly support group—the only such group open to any foster or adoptive parents in the region.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the allegations.

71.  St. Vincent helped Shamber Flore to find a home and a loving family after past filled with trauma and abuse. St. Vincent has continued to help and support Shamber and her adoptive parents, and now Shamber serves St. Vincent and its families by providing mentoring and support for children and families recovering from past trauma.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the allegations.

72.  In the foster care context, the home study assessment process allows St. Vincent to prepare families to accept a child into their home; only after a child is placed in the certified family's home do St. Vincent and the family begin to receive funding from the State.

ANSWER:

Denied as untrue. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

73.  In some exceptional cases, the State might use a different payment structure pursuant to a separate, child-specific contract to directly pay for home study services for foster children being placed with relatives. St. Vincent has never been a party to such a contract for the provision of home study services for an LGBTQ couple.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations. State Defendants incorporate by reference

affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

74. Unless the State specifically contracts for a home study assessment in this exceptional circumstance, home studies are not paid for with state funds under St. Vincent's ordinary foster care or adoption contracts with the State.

ANSWER:

Denied as untrue. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

75. Outside of this exceptional circumstance for placement with relatives, foster care and adoption home studies are not specifically listed as a "service" under St. Vincent's contracts with the State.

ANSWER:

Denied as untrue. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

76. Outside of this exceptional circumstance, St. Vincent pays for home studies, assessments, and its general recruitment with private funds in a cost center that is kept separate from the funding provided by the State for other child welfare activities.

ANSWER:

Denied as untrue. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

77. St. Vincent offers a significant subsidy to Michigan by recruiting new

foster parents using its own private funds and supplementing State funds with

private donations and volunteer hours to cover costs that state funding cannot.

ANSWER:

Denied as untrue.  State Defendants incorporate by reference affidavits and other
evidence submitted in briefs pertaining to their motion to dismiss and opposition
to Plaintiffs' motion for preliminary injunction.

78.   For example, last fiscal year both St. Vincent's foster program and

adoption programs operated at a significant loss based on the state funding

alone, and these programs would not have been able to operate without St.

Vincent's private subsidies.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the allegations.  State Defendants incorporate by reference affidavits and other
evidence submitted in briefs pertaining to their motion to dismiss and opposition
to Plaintiffs' motion for preliminary injunction.

79.   Michigan has been aware of St. Vincent' religious beliefs for years.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference
affidavits and other evidence submitted in briefs pertaining to their motion to
dismiss and opposition to Plaintiffs' motion for preliminary injunction.

**MDHHS Targets St. Vincent**

*The ACLU's Lawsuit*

80.   On September 20, 2017, the ACLU filed a lawsuit against MDHHS on

behalf of two LGBT couples. The lawsuit alleged that these couples had

approached Bethany Christian Services and St. Vincent Catholic Charities

seeking to adopt a child, but were referred to another agency based on their

33

sexual orientation. The ACLU claimed that the state's decision to continue

contracting with these private agencies violated the Establishment and Equal

Protection Clauses. Complaint at

¶¶ 75-81, *Dumont v. Lyon*, No. 17-cv-13080 (E.D. Mich. Sept. 20, 2017), ECF No.

1.

 <u>ANSWER:</u>

Denied as untrue in the form stated. The pleadings in *Dumont* speak for

themselves.

 81. Plaintiffs St. Vincent Catholic Charities, Melissa Buck, Chad Buck, and

Shamber Flore moved to intervene in the lawsuit filed by the ACLU, arguing

that the State's decision to contract with St. Vincent and other faith-based

agencies did not violate the Constitution and was protected under state and

federal law. Motion to Intervene at 19-21, *Dumont v. Lyon*, No. 17-cv-13080 (E.D.

Mich. Dec. 18, 2017), ECF No. 18.

 <u>ANSWER:</u>

Denied as untrue in the form stated. The pleadings in *Dumont* speak for

themselves.

 82. On October 1, 2017, and in light of the ACLU's lawsuit filed against the

State of Michigan, Stacie Bladen, the Deputy Director of the Children's Services

Agency within MDHHS, submitted three official "contract compliance

complaints" with MDHHS licensing staff against St. Vincent Catholic Charities,

Bethany of East Lansing, and Bethany of Madison Heights for allegedly referring

a same-sex couple to another child placing agency. Ms. Bladen claimed that the actions of these agencies violated their contracts by referring same-sex couples to other adoption agencies based on their sincerely held religious beliefs.

ANSWER:

Denied as untrue in the form stated. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

83. Soon after Ms. Bladen lodged her complaint, MDHHS opened investigations into all three of these agencies solely because they exercised their rights under state law and the First Amendment.

ANSWER:

Denied as untrue in the form stated. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

84. These investigations were inconsistent with MDHHS's prior statements and policies regarding compliance with state law.

ANSWER:

Denied as untrue in the form stated. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

85. As Stacie Bladen, speaking on behalf of MDHHS, stated earlier on September 23, 2016, "[i]f the child placing agency declines to accept a referral, whether for foster care case management or adoption services, based on sincerely held religious beliefs, the Department cannot take 'adverse action' (as defined in the act) against the agency."

35

ANSWER:

Denied as untrue in the form stated.  The document referenced in this allegation speaks for itself.
State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

86.   Bladen's earlier position was also consistent with MDHHS guidance outlined in a policy document regarding "foster and adoptive parent recruitment, licensing, and retention."

ANSWER:

Denied as untrue in the form stated.
The documents referenced in this allegation speaks for themselves.
State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

87.   In this document, the agency made clear that faith-based agencies could continue contracting with the State and making referrals in accord with their religious beliefs: "[b]efore accepting a referral, the child- placing agency has the sole discretion to decide whether to engage in activities and perform services related to *that* referral."

ANSWER:

Denied as untrue in the form stated.  The document referenced in this allegation speaks for itself.
State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

88.   The document further notes that "[i]f MDHHS makes a referral to a child-placing agency for foster care case management or adoption services *pursuant to*

*a contract*, the child-placing agency must accept or decline the referral."

ANSWER:

Denied as untrue in the form stated. The document referenced in this allegation speaks for itself.

State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

89. Then, after months of discovery—and just days before depositions were set to begin—the State of Michigan and the ACLU announced on January 23, 2019 that they had entered into settlement talks, giving intervening defendants one hour's notice to determine whether they would agree to or oppose a stay and refusing to share any details of the settlement discussions. On March 22, 2019, the State and the ACLU then announced that they had entered into a settlement and agreed to the dismissal of the ACLU's claims.

ANSWER:

Denied as untrue in the form stated. The *Dumont* plaintiffs and MDHHS Defendants settled the *Dumont* case. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

90. The intervenors did not join that settlement. The settlement was not shown to them prior to filing. In its motion to dismiss the case, the ACLU and State Defendants jointly moved for a stipulated dismissal of the case, noting that "Intervenor Defendants, who have asserted no claims and against whom no claims have been asserted, are not party to the Settlement Agreement." Stipulation of Voluntary Dismissal with Prejudice at 3–4, *Dumont v. Lyon*, No. 17-cv-13080 (E.D. Mich. Mar. 22, 2019), ECF No. 82. The District Court granted

the motion to dismiss the case, but declining to address or incorporate the terms of the settlement in its order.

ANSWER:

Denied as untrue in the form stated.  Admit the intervenors did not join the settlement.  The documents referenced in this allegation speak for themselves.

91.   In a statement accompanying the settlement, Defendant Nessel announced that after reviewing the ACLU's claims, she "determined that MDHHS may be subject to liability on Plaintiffs' claims," and thus directed MDHHS to change its internal policy regarding permitting private child placing agencies to refer couples to other agencies. Nessel claimed that this new policy was actually "consistent with the law and existing agency contracts," and would now be enforced against agencies like St. Vincent.

ANSWER:

Denied as untrue. The document referenced in this allegation speaks for itself.

State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

92.   In prior public statements, Defendant Nessel has explained to the press that she believes "there's 'no viable defense' to the 2015 law," and that the law's "only purpose is discriminatory animus."

ANSWER:

Denied as untrue in the form stated.

State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

93.   Defendant Nessel had previously made similar disparaging statements

regarding those who share St. Vincent's religious beliefs, and had publicly stated

that she would not enforce the state law protecting religious child welfare

agencies.

ANSWER:

Denied as untrue.

State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

94.   In justifying this decision, Nessel relied on both State policies and federal

regulations which she interpreted to require the State to deny agencies like St.

Vincent religious exemptions from allegedly applicable anti-discrimination laws.

ANSWER:

Denied as untrue.

State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

95.   As Nessel explained, Michigan receives "a significant portion" of its

funding under Title IV-E of the Social Security Act, a child welfare grant

program administered through the HHS.

ANSWER:

Denied as untrue in the form stated.  The document referenced in this allegation
speaks for itself.

State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

96. In fact, MDHHS alone receives over 3.8 billion dollars annually from the federal government through Title IV-E, TANF, and other similar programs.

ANSWER:

Denied as untrue in the form stated. The document referenced in this allegation speaks for itself.
State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

97. According to Nessel, "[a]s a condition of receiving these federal funds, the United States Department of Health and Human Services requires that states' Title IV-E-funded programs prohibit discrimination on the basis of sexual orientation or gender identity."

ANSWER:

Denied as untrue in the form stated. The document referenced in this allegation speaks for itself.
State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

98. The State is also bound by other federal regulations, which require it to respect the religious character of social service providers who receive federal funds.

awarding agency, nor any State or local government and other pass- through entity receiving funds under any HHS awarding agency program shall, in the selection of service providers, discriminate for or against an organization on the basis of the organization's religious character or affiliation.").

40

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no response is required.

99. Nessel therefore directed MDHHS to, "[i]n compliance with this federal requirement," prevent faith-based agencies from, among other things:

      a. "[R]eferring to another contracted agency an otherwise potentially qualified LGBTQ individual or same-sex couple that may be a suitable foster or adoptive family for any child accepted by the agency for contracted services," and

      b. "[R]efusing to perform a home study or process a foster care licensing application or an adoption application for an otherwise potentially qualified LGBTQ individual or same- sex couple that may be a suitable foster or adoptive family for any child accepted by the CPA for contracted services."[25]

ANSWER:

Denied as untrue. The document referenced in this allegation speaks for itself. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

100. Per the Attorney General's statement and the terms of the settlement, any private agency which refuses to comply with these requirements "within a reasonable time after notification by the Department of a Contract Violation" will have its contracts "terminate[d]."

ANSWER:

Denied as untrue. The document referenced in this allegation speaks for itself. State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

101. MDHHS also stated it will "initiate an investigation when made of

aware of an alleged Contract Violation," and will terminate the agency's

contracts if it "fails to demonstrate compliance after a reasonable opportunity to

implement the approved corrective action plan."

ANSWER:

Denied as untrue in the form stated. The document referenced in this allegation
speaks for itself.
State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

102.    The State has already begun taking steps to enforce this policy,

including requiring that child welfare agencies complete training on this new

policy.

ANSWER:

Denied as untrue in the form stated.
 State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

103.    Upon information and belief, the State has also communicated to

state employees that they must desist a prior practice of sending referrals of

same-sex couples to other agencies instead of agencies like St. Vincent.

ANSWER:

Denied as untrue.
State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

104.    St. Vincent continues to provide services to foster and adoptive

families under its state contracts.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the allegations.

105.    St. Vincent's adoption contract is up for renewal in October 2019, and St. Vincent reasonably fears that the State will refuse to renew the contract on the basis of St. Vincent's religious beliefs and practices. Based upon the newly announced policy that would prohibit St. Vincent from providing adoption services consistent with its religious beliefs, St. Vincent believes that adverse action from the State Defendants is certainly impending.  *Referrals to accommodate sincere religious beliefs denied.*

ANSWER:

Admitted that St. Vincent's adoption contract was up for renewal in October 2019.
The remaining allegations are denied as untrue.

106.    Michigan has also treated St. Vincent's request for referrals based on its sincere religious beliefs differently from referrals for other reason. The State has admitted that "child placing agencies may refer a prospective foster or adoptive family to another child placing agency" under certain circumstances, but they have decided to deny St. Vincent the ability to make referrals for religious reasons.

ANSWER:

Denied as untrue.

107.    The State has admitted that child placing agencies in Michigan are

43

allowed to refer families to other agencies for geographic reasons, if they have a

long wait list, or if they are unable to accommodate the families' preferences. State

law also permits, and indeed requires, agencies to decline to work with parents

for various reasons, including Native American ancestry.

  ANSWER:

Deny the first sentence as untrue in the form stated.

State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.  The last sentence contains legal
arguments and conclusions of law, to which no response is required.

108.     And agencies can still seek to specifically recruit foster parents that

can serve specific needs of children, including children with disabilities or mental

health issues.

  ANSWER:

Denied as untrue in the form stated.

State Defendants incorporate by reference affidavits and other evidence submitted
in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion
for preliminary injunction.  To the extent this allegation contains legal arguments
and conclusions of law, no response is required.

109.     Under the State's new policy, however, the *only* justification for a

referral that is now impermissible is a religious objection to same- sex marriage.

  ANSWER:

Denied as untrue.

110.     On information and belief, MDHHS also treated St. Vincent

differently from other religious foster care agencies in 2017 and 2018.

ANSWER:

Denied as untrue.

111.    Following two prior incidents in which a private child placing agency

had to transfer a case for religious reasons, MDHHS told another faith-based

foster care agency that child placing agencies are permitted to decline to accept a

referral for foster care case management or adoption services based on sincerely

held religious beliefs,  and that MDHHS cannot take adverse action against the

agency based on this decision.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of
the vague and ambiguous allegations.

112.    On information and belief, MDHHS has taken positions contrary to

its current position that once an agency accepts a child for case from MDHHS it

is no longer protected by state law. This is inconsistent with prior interpretations

by the State in which it explained that the law permitted faith-based child

placing agencies to accept or decline a DHHS referral at any time based on their

sincerely held religious beliefs.

ANSWER:

Denied as untrue.

113.    MDHHS has changed its position on this issue solely to target

agencies like St. Vincent Catholic Charities for their religious beliefs that do not

allow them to endorse same-sex relationships.

ANSWER:

Denied as untrue.

**Michigan's Unlawful Actions Harm St. Vincent and the Children of Michigan**

114.    Michigan's unlawful actions harm St. Vincent and the children and families it serves. If St. Vincent is unable to receive referrals from or contract with the State, it will be forced to close its foster care and adoption programs, ending a decades-old religious ministry and reducing the number of agencies available to serve families and children in need.

ANSWER:

Denied as untrue.

115.    Across Michigan, the State's actions affect untold thousands of families and children in need, and would force numerous  agencies—  and all of the Catholic Charities agencies across the State—to close their foster and adoption programs. This would impact hundreds of children statewide, as these agencies are some of the most successful in the State at finding loving homes for children in need.

ANSWER:

Denied as untrue.

116.    If the State refuses to work with St. Vincent, then the families currently licensed by St. Vincent would face the difficult choice of either trying to

find a new agency that will work with and endorse them as foster parents—and

having to start back at square one with a new agency that doesn't know anything

about the specific needs of their families or the kids they are serving—or

choosing to stop providing foster care services. Upon information and belief,

many of St. Vincent's licensed foster parents would stop providing foster care if

forced into that choice.

ANSWER:

Denied as untrue.
State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for preliminary injunction.

117.   If the State refuses to work with St. Vincent, then the families

currently in the home study process, or awaiting adoption placements, would be

forced to either begin the process anew with a different agency or go through the

process of transferring their licenses to a new agency, losing the relationships

they have built in the process.  This change would lead to delays in the adoption

process for both the parents and for children might be matched with them and

are currently awaiting loving homes.

ANSWER:

Denied as untrue.
State Defendants incorporate by reference affidavits and other evidence
submitted in briefs pertaining to their motion to dismiss and opposition to
Plaintiffs' motion for  preliminary injunction.

118.   If the State refuses to work with St. Vincent, the Bucks will lose the

relationships and support they have depended upon to serve their children and

their ongoing needs. The Bucks would also be restricted and burdened in their

religious exercise of providing support to other foster and adoptive parents.

Should another biological sibling of their adopted children enter the child welfare

system, the Bucks would likely miss the opportunity to foster and adopt that

child and keep the siblings together.

ANSWER:

Plaintiffs Shamber Flore, Chad Buck, and Melissa Buck were dismissed by
the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and
accordingly, no response to the allegations about them is required.  To the extent
a response is required, the allegations are denied as untrue.

119.     If the State refuses to work with St. Vincent, Ms. Flore would be

unable to volunteer at the agency to support and mentor foster and adoptive

children, and would be restricted and burdened in her religious exercise of

serving children who share the same struggles  she experienced.

ANSWER:

Plaintiffs Shamber Flore, Chad Buck, and Melissa Buck were dismissed by
the Court's September 26, 2019 Order, ECF No. 70 (PageID.2530), and
accordingly, no response to the allegations about them is required.  To the extent
a response is required, the allegations are denied as untrue in the form stated.

120.     The State's actions substantially burden, denigrate, and

discriminate against St. Vincent, the Bucks, Shamber Flore, and others who

share their religious beliefs.

ANSWER:

Denied as untrue.

121.     St. Vincent remains willing and able to continue its ministry

serving children in Michigan. It wants to help alleviate the foster care crisis in

Michigan, and it has not and will not prevent any qualified family from becoming

a foster parent, be it through St. Vincent or a referral to  another agency.  But

because  of  Michigan's  actions,   St. Vincent's over 70-year-old ministry to at-

risk children is in jeopardy.

ANSWER:

Denied as untrue.

## CLAIMS

### Count I
### 42 U.S.C. § 1983
### Violation of the First Amendment to the U.S. Constitution Free Exercise Clause
### Not Neutral

122.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 122 incorporates all preceding paragraphs. State Defendants
incorporate by reference here their answers to those paragraphs.

123.     "[A] law targeting religious beliefs as such is never permissible."

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024 n.4

(2017) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S.

520, 533 (1993)).

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no
response is required.

124.     By adopting a policy requiring the State to discriminate against child placing agencies with religious objections to same-sex marriage, Defendants have targeted St. Vincent's religious beliefs and practices.

ANSWER:

Denied as untrue.

125.     The statements of Defendants and their officials demonstrate that hostility toward Plaintiffs and their religious beliefs was a motivation for Defendants' actions.

ANSWER:

Denied as untrue.

126.     Defendants' laws and policies have not been evenly enforced, demonstrating that the current attempt at enforcement is designed to target particular religious beliefs and practices.

ANSWER:

Denied as untrue.

127.     Defendants do not have a compelling reason for their actions, and Defendants have not selected the means least restrictive of religious exercise in order to further their interests.

ANSWER:

Denied as untrue.

128.     Absent injunctive and declaratory relief against Defendants, Plaintiffs will suffer imminent and irreparable harm.

ANSWER:

Denied as untrue.

## Count II
## 42 U.S.C. § 1983
## Violation of the First Amendment to the U.S. Constitution Free Exercise Clause Not Generally Applicable

129.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 129 incorporates all preceding paragraphs. State Defendants incorporate by reference here their answers to those paragraphs.

130.     "[L]aws burdening religious practice must be of general

applicability." *Lukumi*, 508 U.S. at 542.

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no response is required.

131.     Defendants' laws and policies have not been evenly enforced,

demonstrating that the current attempt at enforcement is designed to target

particular religious beliefs and practices.

ANSWER:

Denied as untrue.

132.     Defendants have never enforced their laws, policies, and contract

provisions in the manner they are currently being enforced against Plaintiffs.

ANSWER:

Denied as untrue.

133.     The public statements of Defendants and their officials demonstrate that hostility toward Plaintiffs and their religious beliefs was a motivation for Defendants' actions.

ANSWER:

Denied as untrue.

134.     Defendants have made exceptions to their policies in some instances.

ANSWER:

State Defendants lack sufficient information to form a belief about the truth of the vague and ambiguous allegations.

135.     Defendants do not have a compelling reason for their actions, and Defendants have not selected the means least restrictive of religious exercise in order to further their interests.

ANSWER:

136.     Absent injunctive and declaratory relief against Defendants, Plaintiffs will be irreparably harmed.

ANSWER:

Denied as untrue.

## Count III
## 42 U.S.C. § 1983
## Violation of the First Amendment to the U.S. Constitution Free Exercise Clause
## System of Individualized Exemptions

137.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 137 incorporates all preceding paragraphs. State Defendants incorporate by reference here their answers to those paragraphs.

138.    An "exception-ridden policy," or one that permits discretionary "individualized exemptions" is "the antithesis of a neutral and generally applicable policy" and therefore "must run the gauntlet of strict scrutiny." *Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012).

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no response is required.

139.    Michigan engagesin the individualized assessment of alleged contract violations by agencies and exercised a great deal of discretion in creating corrective action plans and permitting exceptions. Defendants are therefore engaging in individualized, discretionary assessments of St. Vincent's conduct.

ANSWER:

Denied as untrue.

140.    State law and MDHHS contracts permits individualized exemptions from child placing agency requirements.

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no response is required.  State Defendants lack sufficient information to form a belief about the truth of the remaining vague and ambiguous allegations.

141.    Pursuant to the referral provisions of the foster care and adoption contracts entered into between St. Vincent Catholic Charities and MDHHS,

MDHHS is permitted to grant individualized exemptions from its policy of

prohibiting contractors from transferring cases back to MDHHS.

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no
response is required.  The documents referenced in the allegation speak for
themselves.  State Defendants lack sufficient information to form a belief about the
truth of the remaining allegations.

142.     The Defendants' actions against Plaintiffs are the product of a

system of individualized exemptions and burden Plaintiffs' religious exercise.

ANSWER:

Denied as untrue.

143.     Defendants do not have a compelling reason for their actions, and

Defendants have not selected the means least restrictive of religious exercise in

order to further their interests.

ANSWER:

Denied as untrue.

144.     Absent injunctive and declaratory relief against Defendants,

Plaintiffs are and will continue to be irreparably harmed.

ANSWER:

Denied as untrue.

**Count IV**
**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution Free**
**Speech Clause**
**Compelled Speech**

145.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 145 incorporates all preceding paragraphs. State Defendants
incorporate by reference here their answers to those paragraphs.

146.    Defendants are seeking to compel St. Vincent to make affirmative

statements that contradict St. Vincent's religious beliefs.

ANSWER:

Denied as untrue.

147.    Michigan is conditioning St. Vincent's license, its contracts with

MDHHS, and the ongoing ability to engage in the religious exercise

of helping children in need, on Plaintiffs' willingness to make such statements.

ANSWER:

Denied as untrue.

148.    Such compulsion amounts to compelled speech in violation of the

Free Speech Clause of the First Amendment to the United States Constitution.

ANSWER:

Denied as untrue.

149.    Absent injunctive and declaratory relief against Defendants, St.

Vincent is and will continue to be irreparably harmed.

ANSWER:

Denied as untrue.

## Count V
## 42 U.S.C. § 1983
## Violation of the First Amendment to the U.S. Constitution Free Exercise and Free Speech Clauses
## Retaliation for Protected Speech and Religious Exercise

150.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 150 incorporates all preceding paragraphs. State Defendants incorporate by reference here their answers to those paragraphs.

151.     Statements made by and on behalf of Plaintiffs about their religious

beliefs and practices are both religious exercise and protected speech.

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no response is required.  To the extent a response is required, State Defendants lack sufficient information to form a belief about the truth of the remaining allegations.

152.     Defendants' contract investigation and impending termination, and

their threats of additional adverse action, would be sufficient to deter a person of

ordinary firmness from exercising his or her constitutional rights.

ANSWER:

Denied as untrue.

153.     A causal link exists between Plaintiffs' religious exercise and

protected speech and Defendants' adverse actions against Plaintiffs.

ANSWER:

Denied as untrue.

154.     Such actions are retaliation for religious exercise and protected

speech in violation of the First Amendment to the United States Constitution.

ANSWER:

Denied as untrue.

155.     Absent injunctive and declaratory relief against defendants,

Plaintiffs are and will continue to be irreparably harmed.

ANSWER:

Denied as untrue.

## Count VI
## 42 U.S.C. § 1983
## Violation of the First Amendment to the U.S. Constitution Free Exercise and Establishment Clauses Denominational Preference and Discrimination

156.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 156 incorporates all preceding paragraphs. State Defendants incorporate by reference here their answers to those paragraphs.

157.     The Free Exercise and Establishment Clauses prohibit government

from officially preferring one denomination over another or discriminating

against a religious group for its religious beliefs and practices. *See Larson v.*

*Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment

Clause is that one religious denomination cannot be officially preferred over

another.").

ANSWER:

This allegation contains legal arguments and conclusions of law, to which no response is required.

158.     Defendants are applying their laws in a manner which penalizes St.

Vincent for its religious beliefs. Defendants' actions also alienate,

communicate disapproval to, and impose concrete harms on foster families such

as the Bucks and volunteers such as Ms. Flore, who share St. Vincent's Christian

religious beliefs.

ANSWER:

Denied as untrue.

159.     Defendants have not penalized other religious groups for their

religious beliefs.

ANSWER:

Denied as untrue in the form stated.  State Defendants have not penalized any
religious group for its religious beliefs.

160.     Defendants' preference for some religious beliefs and practices and

discrimination against Plaintiffs' beliefs and practices violates the Free Exercise

and Establishment Clauses of the First Amendment to the United States

Constitution.

ANSWER:

Denied as untrue.

161.     Defendants do not have a compelling reason for their actions, and

Defendants have not selected the means least restrictive of religious exercise in

order to further their interests.

ANSWER:

Denied as untrue.

162.     Absent injunctive and declaratory relief against Defendants,

Plaintiffs have been and will continue to be irreparably harmed.

ANSWER:

Denied as untrue.


## Count VII
## 42 U.S.C. § 1983
## Violation of the Fourteenth Amendment to the
## U.S. Constitution Equal Protection

163.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 163 incorporates all preceding paragraphs. State Defendants
incorporate by reference here their answers to those paragraphs.

164.     The Equal Protection Clause prohibits discrimination on the basis of

religion.

ANSWER:

Paragraph 164 contains legal arguments and conclusions of law, to which no
response is required.

165.     Defendants' likely impending contract termination and other

adverse actions penalizes Plaintiffs because of their religious beliefs.

ANSWER:

Denied as untrue.

166.      Contractors that espouse religious beliefs contrary to those

espoused by Plaintiffs are allowed to maintain their contractual relationships

with the State.

ANSWER:

Denied as untrue.

167.     Defendants' preference for one set of religious beliefs and against

Plaintiffs' religious beliefs violates the Equal Protection Clause of the Fourteenth

Amendment to the United States Constitution.

ANSWER:

Denied as untrue.

168.     Absent injunctive and declaratory relief, Plaintiffs have been and

will continue to be irreparably harmed.

ANSWER:

Denied as untrue.

## Count VII
## 42 U.S.C. § 2000bb
## Religious Freedom Restoration Act (RFRA)

169.     Plaintiffs incorporate by reference all preceding paragraphs.

ANSWER:

Paragraph 169 incorporates all preceding paragraphs. State Defendants
incorporate by reference here their answers to those paragraphs.

170.     RFRA prohibits the enforcement of federal law when such

enforcement substantially burdens religious exercise.

ANSWER:

Paragraph 170 contains legal arguments and conclusions of law, to which no
response is required.  In further answer, RFRA claims against State Defendants are
not permitted.

171.     The State Defendants have claimed that enforcement of federal law will require them to take adverse action against St. Vincent.  Terminating the States' contracts with St. Vincent or taking other adverse action against St. Vincent would impose a substantial burden on Plaintiffs' sincere religious exercise.

ANSWER:

Denied as untrue in the form stated.  State Defendants incorporate by reference affidavits and other evidence submitted in briefs pertaining to their motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.

172.     Terminating the States' contracts with St. Vincent or taking other adverse action against St. Vincent would impose a substantial burden on Plaintiffs' sincere religious exercise.

ANSWER:

Paragraph 172 contains legal arguments and conclusions of law, to which no response is required.  To the extent a response is required, State Defendants deny the allegations as untrue.

173.     That burden would not be justified by any compelling government interest, and contract termination or adverse action against St. Vincent would not be the least restrictive means of furthering such interests.

ANSWER:

Paragraph 173 contains legal arguments and conclusions of law, to which no response is required.  To the extent a response is required, State Defendants deny the allegations as untrue.

## CONCLUSION

State Defendants assert that Plaintiffs are not entitled to the relief requested against State Defendants, or to any relief whatsoever against State Defendants, and request that this action be dismissed with prejudice as to State Defendants and that State Defendants be given such other relief as the Court deems just and proper.

## DEFENDANTS' SPECIAL AND/OR AFFIRMATIVE DEFENSES

Defendants, Dana Nessel, Michigan Department of Health and Human Services (MDHHS), Robert Gordon, Michigan Children Services Agency (MCSA), and JooYuen Chang, by and through their attorneys, and for their Special and/or Affirmative Defenses state:

1.    Plaintiffs fail to state a claim upon which relief may be granted.

2.    Plaintiffs assert claims for which there is no private right of action.

3.    Some or all of Plaintiffs' claims are barred by immunity.

4.    This Court lacks jurisdiction to enter relief for some or all of Plaintiffs' claims.

5.    Plaintiffs lack standing to assert some or all of its claims.

6.    Plaintiffs' Complaint must be dismissed in its entirety because there are no genuine issues as to any material fact and the Defendants are entitled to judgment as a matter of law.

7.    The Constitutional rights which Plaintiffs allege were violated were not clearly established at the time the alleged violations took place.

8.     Plaintiff St. Vincent acquiesced or ratified MDHHS's requirement that a CPA not discriminate against same-sex or LGBTQ individuals by signing the CPA contracts that included the non-discrimination clauses.

9.     To the extent an assertion contained in any of the Defendants' above answers constitutes an affirmative defense, the same is incorporated by reference as if fully set forth herein.

10.     The Defendants reserve the right to amend these special and/or affirmative defenses as further facts become known during the course of discovery.

Respectfully submitted,

Dana Nessel
Attorney General

Fadwa A. Hammoud (P74185)
Solicitor General
Counsel of Record

/s/ Toni L. Harris
Toni L. Harris (P63111)
Attorneys for State Defendants
Assistant Attorney General
P.O. Box 30758
Lansing, MI 48909
(517) 335-760
Harrist19@michigan.gov

Date:  October 11, 2019