# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

MELISSA BUCK; CHAD BUCK;
SHAMBER FLORE; and
ST. VINCENT CATHOLIC
CHARITIES,

     *Plaintiffs*,

     v.

ROBERT GORDON, in his official
capacity as the Director of the
Michigan Department of Health
and Human Services; JOOYEUN
CHANG, in her official capacity as
the Executive Director of the
Michigan Children's Services
Agency; DANA NESSEL, in her
official capacity as Michigan
Attorney General; ALEX AZAR, in
his official capacity as Secretary of
Health and Human Services;
UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES,

     *Defendants.*

No. 1:19-cv-00286

HON. ROBERT J. JONKER

## PLAINTIFF'S RESPONSE TO STATE DEFENDANTS' MOTION TO STAY OR, IN THE ALTERNATIVE, TO AMEND THE PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................iv

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 3

I.    The Court should not stay the preliminary injunction .................. 3

    A.    The State Defendants are unlikely to succeed on the merits because their actions are unconstitutional ................ 4

        1.    *The State's new policy must survive strict scrutiny because it targets St. Vincent's religious beliefs* ............. 5

        2.    *The new policy's individualized exemptions and selective enforcement also call for strict scrutiny* ........... 8

        3.    *The State's actions infringe on free speech and independently demand strict scrutiny* ........................ 10

        4.    *The State's actions fail strict scrutiny* .......................... 11

    B.    State Defendants do not satisfy the remaining stay factors ............................................................................. 13

        1.    *State Defendants fail to even argue they would suffer irreparable harm without a stay* ........................ 13

        2.    *A stay would devastate St. Vincent and others* ............ 13

        3.    *The public interest favors keeping St. Vincent open* .................................................................. 14

        4.    *Interim events further demonstrate the need for the injunction* ............................................................. 15

II.    The Court should not amend or reconsider its preliminary injunction ...................................................................... 16

A.    The State fails to carry the heavy burden of showing
       that amendment is warranted ............................................... 16

B.    The existing injunction is consistent with state
       contracts, and the state's request is not ............................... 16

CONCLUSION ......................................................................... 19

CERTIFICATE OF COMPLIANCE ........................................... 21

CERTIFICATE OF SERVICE ................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. AOSI,*
  570 U.S. 205 (2013) ............................................................................ 11

*Axson-Flynn v. Johnson,*
  356 F.3d 1277 (10th Cir. 2004) ......................................................... 9

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ............................................................................ 12

*Elrod v. Burns,*
  427 U.S. 347 (1976) ......................................................................... 13-14

*Goldman v. Michigan,*
  No. 1:17-CV-774, 2017 WL 6805682
  (W.D. Mich. Nov. 7, 2017) ................................................................ 16

*Hadix v. Caruso,*
  No. 4:92-CV-110, 2007 WL 2701972
  (W.D. Mich. Sept. 10, 2007) ............................................................. 15

*Howard v. United States,*
  533 F.3d 472 (6th Cir. 2008) ............................................................. 16

*Jones v. Caruso,*
  569 F.3d 258 (6th Cir. 2009) ............................................................. 14

*Mich. Chamber of Commerce v. Land,*
  725 F. Supp. 2d 665 (W.D. Mich. 2010) ............................................ 3

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,*
  945 F.2d 150 (6th Cir. 1991) ........................................................... 3, 4

*Michigan Flyer LLC v. Wayne Cty. Airport Auth.,*
  860 F.3d 425 (6th Cir. 2017) ............................................................. 16

*National Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ........................................................................ 11

*Nken v. Holder*,
    556 U.S. 418 (2009) .............................................................................. 3

*Obergefell v. Hodges*,
    135 S. Ct. 2584 (2015) ........................................................................ 13

*Ohio State Conference of N.A.A.C.P. v. Husted*,
    769 F.3d 385 (6th Cir. 2014) ............................................................... 4

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ...................................................................... 6, 7

*Ward v. Polite*,
    667 F.3d 727 (6th Cir. 2012) ......................................................... 4, 8, 9

**Statutes**

8 U.S.C. § 1182 ........................................................................................ 7

Mich. Comp. Laws Ann. § 722.124e ................................................... 7, 14

**Other Authorities**

*Luke* 9:48 .............................................................................................. 13

*Matthew* 19:14 ...................................................................................... 13

Michigan Attorney General, *MI AG Files Emergency
    Motion in Buck, St. Vincent Catholic Charities Case*
    (Oct. 11, 2019) ............................................................................... 2, 15

Michigan Attorney General, *State Settles Same Sex
    Adoption Case* (March 22, 2019) ......................................................... 8

## INTRODUCTION

This Court's preliminary injunction decision was correct, and Michigan has provided no reason to revisit it. Michigan's motion merely resurrects its old arguments, except, this time, it distorts Attorney General Nessel's statements and actions while in office and claims that this Court harbors personal animosity towards Nessel.[1] The State's continued attempts to penalize faith-based providers and to skirt state and federal law only serve to illustrate why an injunction is necessary.

As this Court recognized, a preliminary injunction is needed to protect Michigan's children, St. Vincent's religious beliefs, and the status quo. Undeterred, Michigan seeks an "emergency" stay of the injunction—two weeks after this Court entered its order. ECF No. 72. State Defendants do not identify any emergency other than their desire to have this case decided elsewhere. *Id.* at PageID.2535 ("Expedited consideration is necessary to allow the State Defendants to immediately move for a stay in the Sixth Circuit."). Indeed, in their eagerness to appeal, State Defendants neglected to file a timely answer in this Court, belatedly filing it without seeking leave or even acknowledging the deadline had

---

[1] ECF No. 73 at PageID.2546 ("The Court's animosity toward Attorney General Dana Nessel's viewpoint . . . is only thinly veiled.").

expired. *See* ECF No. 77.[2] They did, however, find time before filing their answer to issue a press release decrying the injunction and accusing this Court of "unnecessarily inflam[ing]" the issue.[3]

This Court's considered judgment should not be disturbed without good reason, and the State does not present one. Indeed, all four factors that this Court considers disfavor a stay. First, State Defendants are unlikely to succeed on the merits. The State's policies must face strict scrutiny because they target religion, allow for individualized exceptions, are inconsistently applied, and compel private speech. State Defendants even *de facto* concede that they cannot survive strict scrutiny, relying heavily on rational basis review. ECF No. 73 at PageID.2547. Second, State Defendants fail to even assert that *they* will suffer an irreparable injury absent a stay. And finally, both the balance of equities and the public interest favor keeping St. Vincent open, as this Court has already found. State Defendants' actions and rhetoric during the course of this case only emphasize why judicial relief is necessary.

---

[2] State Defendants were aware of this issue, asking Plaintiff for an extension of time after the deadline had passed. Plaintiff informed State Defendants that, while it could not stipulate to extend an already-lapsed deadline, it would not oppose a motion for leave to file out of time. State Defendants have not filed such a motion.

[3] Michigan Attorney General, *MI AG Files Emergency Motion in Buck, St. Vincent Catholic Charities Case* (Oct. 11, 2019) ("*Press Release*"), https://perma.cc/86XV-6XKN.

If this Court does not stay its injunction, State Defendants claim "the Court *must* amend the preliminary injunction." ECF No. 73 at PageID.2544 (emphasis added). But they fail to explain what this modification would accomplish, nor do they even cite the governing standard for their motion. Indeed, State Defendants' muddled request is actually at odds with the adoption process mandated by their own contracts, and the requested relief misunderstands this Court's order.

State Defendants have satisfied neither the high standard necessary for a stay pending appeal, nor the even higher standard required to modify an injunction. Both motions should be denied.

## ARGUMENT

### I. The Court should not stay the preliminary injunction.

State Defendants ask this Court to stay the injunction it just entered. For such motions, the Court considers: (i) whether State Defendants are likely to succeed on the merits on appeal, (ii) whether State Defendants would suffer irreparable injury without a stay, (iii) whether a stay would harm others, and (iv) whether a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 698-99 (W.D. Mich. 2010). While the legal standard for a stay is similar to that for the underlying injunction, the relief State Defendants seek is more challenging to obtain. *See Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (explaining why "a movant seeking a stay pending review on

3

the merits of a district court's judgment will have greater difficulty in demonstrating a likelihood of success on the merits").

State Defendants also bear the burden of convincing the Court to stay its injunction. *See Ohio State Conference of N.A.A.C.P. v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014). "In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Griepentrog*, 945 F.2d at 153. Because this Court has already carefully considered State Defendants' arguments and rejected them, the Court should deny both motions, and in doing so, explain some of the many additional reasons why State Defendants cannot prevail on appeal.

In issuing its injunction, this Court's well-reasoned opinion properly relied on the State's religious targeting. And this alone is fatal. However, now that State Defendants have reopened the door, this Court should confirm that strict scrutiny applies for the below reasons as well. This would make clear that State Defendants cannot save their new policy through a clever parsing of Nessel's remarks. And it would be a logical additional ground on which to deny the motion to stay.

## A. State Defendants are unlikely to succeed on the merits because their actions are unconstitutional.

Because State Defendants' actions targeted St. Vincent's religious beliefs, they must satisfy strict scrutiny. *Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012); ECF No. 69 at PageID.2516-2517. But even apart from this, the Court should deny State Defendants' motion based on their

4

inconsistent application of the new policy, the policy's individualized exemptions, and the State's attempt to compel private speech. All three are distinct paths to strict scrutiny, and all three are present here.

> ### 1. *The State's new policy must survive strict scrutiny because it targets St. Vincent's religious beliefs.*

As the Court recognized, Defendant Nessel's actions demonstrated that the State impermissibly targeted St. Vincent's religious exercise. Both before and after taking office, Nessel made her disdain for St. Vincent's beliefs clear. ECF No. 69 at PageID.2526-2527. At one point, she stated that those who held a traditional belief about marriage were "hate mongers." *Id.* She also said that if someone supported the 2015 law designed to protect religious agencies, "you honestly have to concede that you just dislike gay people more than you care about the needs of foster kids." *Id.* at PageID.2510. She further explained that the 2015 law's "only purpose [was] discriminatory animus." *Id.*[4]

---

[4] State Defendants have not explained how Nessel's current, vanishingly narrow reading of the law is consistent with her public description of the law. Indeed, they now claim that the 2015 law only protects agencies performing "private and direct placement services." ECF No. 73 at PageID2547. This is contrary to the text of the law, which specifically references foster care—something that can only be done with a public contract. 2015 P.A. 53 ("Faith-based and non-faith-based child placing agencies have a long and distinguished history of providing adoption and foster care services in this state.").

State Defendants argue that *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), precludes this Court from considering Nessel's remarks because they occurred "long before she ran for and took public office." ECF No. 73 at PageID.2546, 2555. First, Attorney General Nessel reiterated her "hate mongers" comment *after* she was elected. On April 14, 2019, the Attorney General said the following:



These statements confirm that her actions as Attorney General targeted a disfavored set of religious beliefs.

Second, State Defendants badly misread *Trump v. Hawaii*. Far from finding President Trump's pre-elections statements irrelevant, the Supreme Court analyzed them at length. *Trump*, 138 S. Ct. at 2417-18. The Court's analysis was in the context of an Establishment Clause

challenge to an executive order involving immigration (a "fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control") and national security (a "core of executive responsibility"). *Id.* at 2418, 2419. Whereas here, the State's actions implicate nothing of the sort. In *Trump*, Congress authorized the executive order. Here, the Michigan Legislature ordered the State to do the opposite of what it did.[5] In *Trump*, the order went through multiple iterations and cabinet reviews. Here, the State's new policy quickly followed Nessel's election and has remained unchanged since. In *Trump*, the claims were brought only under the Establishment Clause. *See id.* at 2429 (Breyer, J., dissenting) (stating the Court should have analyzed the claim under Free Exercise cases such as *Masterpiece* and *Lukumi*). Here, they are under the Free Exercise Clause.

State Defendants' claim that "[Nessel] did not influence, much less dictate . . . the decision to settle the *Dumont* litigation"[6] is also contrary to her own prior statements. In March 2019, the Attorney General issued a press release stating that, "[w]hen AG Nessel took office Jan. 1, 2019, she reviewed the facts of the case . . . and determined that MDHHS could

---

[5] *Compare* 8 U.S.C. § 1182(f) *with* Mich. Comp. Laws Ann. § 722.124e(1)(e) (West 2018).

[6] ECF No. 73 at PageID.2552.

be subject to liability . . . [and] *strongly recommended* resolving the case."[7]

Even aside from Nessel's statements, the State's abrupt change in position also reveals its animus. Less than two years ago, in the Eastern District of Michigan, the State defended St. Vincent's referral practice. *E.g.,* Motion to Dismiss, *Dumont v. Gordon*, No. 17-cv-13080-PDF-EAS (E.D. Mich. Dec. 15, 2017), ECF No. 16. Yet, "[a]fter Defendant Nessel took office, the State pivoted 180 degrees." ECF No. 69 at PageID.2518. State Defendants' argument that their new policy changed nothing is wholly detached from the facts. In short, the State's "targeted attack on a sincerely held religious belief . . . calls for strict scrutiny." *Id.* at PageID.2529.

> 2. *The new policy's individualized exemptions and selective enforcement also call for strict scrutiny.*

Even if the new policy had not been the result of religious targeting, its *ad hoc*, guideline-less exceptions would still require strict scrutiny. *Ward*, 667 F.3d at 740.

Michigan has already admitted that it allows case-by-case exemptions to its anti-discrimination policy. ECF No. 34 at PageID.946. The availability of such exemptions is not, as Michigan suggests, a disputed

---

[7] Michigan Attorney General, *State Settles Same-Sex Adoption Case* (March 22, 2019), https://perma.cc/6HGY-DG4T (emphasis added). *See also* ECF No. 69 at PageID.2512; https://perma.cc/Y5SY-MP8D.

factual question, but a provision written directly into Michigan's contracts. *See* ECF No. 6-12, Page.ID352; ECF No. 6-9, ECF No.323. This practice alone triggers strict scrutiny. The State can only evade strict scrutiny if it can show that its actions were "neutral and generally applicable." *Ward*, 667 F.3d at 740. But where, as here, the government has unconstrained discretion to grant "individualized exemptions," it is "the antithesis of a neutral and generally applicable policy[.]" *Id.*

To date, Michigan has not identified a single guideline limiting its ability to issue these exemptions. In fact, State Defendants do not even mention—much less justify—the exemptions in their recent briefing. *See* ECF No. 73. This makes Michigan's actions even more deserving of strict scrutiny, as "greater discretion in the hands of governmental actors makes the action taken pursuant thereto more, not less, constitutionally suspect." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1299 (10th Cir. 2004).

Michigan has also used its new policy to selectively enforce its alleged anti-discrimination requirements against religious agencies. This too requires strict scrutiny. *Ward*, 667 F.3d at 738. Other child welfare agencies serve specific populations, some based on race, gender, or sexual orientation. *See* ECF No. 6 at PageID.181-182, PageID.203-204. Indeed, State Defendants introduced documents shortly before the hearing showing that other agencies (such as an agency which provides homes exclusively for LGBT youth), have been apprised of the MDHHS non-

discrimination policy but are not required to follow it.[8] And State Defendants have shown no intention to investigate these agencies. Instead, they seek to take aggressive enforcement actions against only religious agencies while permitting other contractors to rely on secular exemptions to the non-discrimination requirements.

    *3. The State's actions infringe on free speech and independently demand strict scrutiny.*

The State's actions demand strict scrutiny because they unconstitutionally compel St. Vincent's speech. The State's new policy would require St. Vincent to conduct home studies for same-sex couples and endorse their application to become foster or adoptive parents. These home visits and recommendations are not, as State Defendants suggest, check-the-box exercises. Rather, as the Court acknowledged, they "entail[] an exhaustive review of the family's eligibility . . . [and] call[] for subjective as well as objective determinations." ECF No. 69 at PageID.2502. If St. Vincent refuses, Michigan will exclude the agency from caring for children in the State's child welfare system.

---

[8] *Compare* ECF No. 60-1, PageID.1985 (Ruth Ellis Center contract stating "(MDHHS) will not discriminate"); ECF No. 60-2, PageID.2042 (same); ECF No. 60-3, PageID.2099 (Boys to Men contract stating "(MDHHS) will not discriminate"), *with* ECF No. 42-2, Page.ID1591 (St. Vincent contract) ("The Contractor shall comply with the MDHHS non-discrimination statement.").

In this way, the State seeks to compel St. Vincent to repeatedly convey a message with which it sincerely disagrees. If St. Vincent wants to keep helping children, it "would have to subordinate its religious beliefs to the State-mandated orthodoxy, even though the State is not compensating them for the review services anyways." *Id.* at PageID.2517-2518.

Michigan is not merely threatening to withhold funds in order to compel speech—although that would be bad enough. Because Michigan requires adoption agencies to partner with the State in order to serve children in the child welfare system, it is threatening to ban St. Vincent from ministering to precisely those children who need it most. The Supreme Court has repeatedly reaffirmed that the government does not have "unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2375 (2018). Here, St. Vincent cannot simply decline the State's funds and continue providing foster care and adoption services to children in the child welfare system on "its own time and dime." *Agency for Int'l Dev. v. AOSI*, 570 U.S. 205, 218 (2013). This is another reason why the State's actions must face strict scrutiny.

### 4. The State's actions fail strict scrutiny.

Strict scrutiny requires State Defendants to show that their actions: (i) serve a compelling state interest and (ii) are the least restrictive

available means to achieve that interest. "A law that targets religious conduct . . . will survive strict scrutiny only in rare cases." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993); *Ward*, 667 F.3d at 740 (noting that non-neutral laws "must run the gauntlet of strict scrutiny").

This Court has already determined that Michigan is unlikely to satisfy strict scrutiny. ECF No. 69 at PageID.2519. State Defendants apparently agree, spending only four sentences in their brief on strict scrutiny—an issue on which they bear the burden of proof—and failing to even mention the second prong. ECF No. 73 at PageID.2558. Instead, they spend their time arguing that they could satisfy rational basis review, a far lower standard this Court has already rejected. *Id.* at PageID.2547.

The State's actions not only lack a compelling interest, but actively undermine Michigan's own stated goal of helping kids in need. With thousands of children in the foster care system, the State's new policy would shut down essential faith-based agencies. "Paradoxically, the State's course of action here would constrict the supply of [agencies] and undermine the State's intent of getting certified placements for kids." ECF No. 69 at PageID.2520.

State Defendants argue that their new policy addresses "invidious discrimination." ECF No. 73 at PageID.2558. However, as this Court recognized, "St. Vincent does not prevent any couples, same-sex or otherwise, from fostering or adopting." ECF No. 69 at PageID.2504. In

12

fact, State Defendants' very characterization of St. Vincent's religious beliefs as "invidious discrimination" is as wrongheaded as it is revealing. "Many who deem same-sex marriage to be wrong reach that conclusion based on decent and honorable religious or philosophical premises." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015). "Invidious discrimination" is not a talismanic phrase that allows Michigan to scrub religious beliefs it dislikes from the public square. The State Defendants are unlikely to succeed on the merits.

## B. State Defendants do not satisfy the remaining stay factors.

### 1. *The State Defendants fail to even argue they would suffer irreparable harm without a stay.*

Apparently misunderstanding the standard, State Defendants do not bother to identifying how *they* will be irreparably harmed without a stay. *See* ECF No. 73 at PageID.2559-2560. Nor could they. The requested stay would "actually undermine[] the State's stated goals of preventing discriminatory conduct and maximizing available placements for children." ECF No. 69 at PageID.2518.

### 2. *A stay would devastate St. Vincent and others.*

St. Vincent's ministry is core to its religious mission. *See Luke* 9:48 ("Whoever receives this child in my name receives me."); *see also Matthew* 19:14. Without the Court's preliminary injunction, Michigan would paralyze that mission. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

13

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality). *See also Jones v. Caruso*, 569 F.3d 258, 277 (6th Cir. 2009) (holding the same); ECF No. 69 at PageID.2523.

Further, a stay would force St. Vincent to end its adoption and foster care ministry, leaving dozens of children and families in the lurch. "Shuttering St. Vincent would create significant disruption for the children in its care, who already face an unpredictable home life." ECF No. 69 at PageID.2523. St. Vincent would no longer be able to find families for children—as it did for Shamber Flore. Nor would it be able to provide essential services to adoptive families—as it does for Melissa and Chad Buck.

### 3. *The public interest favors keeping St. Vincent open.*

The Court need not guess where the public interest lies in this case, the 2015 law expresses it clearly: "Having as many possible qualified adoption and foster parent agencies in this state is a substantial benefit to the children of this state . . . ." Mich. Comp. Laws Ann. § 722.124e(1)(c) (West 2018). In fact, the State of Michigan has itself admitted that:

> If faith-based agencies are not allowed to operate according to their religious principles, they will shut down, which can have the effect of reducing the number of available families. *Such a result will do nothing to help a single child find a home.*

Motion to Dismiss, *Dumont v. Gordon*, No. 17-cv-13080-PDF-EAS (E.D. Mich. Dec. 15, 2017), ECF No. 16, PageID.64 (emphasis added). The

14

Court's injunction allows St. Vincent to continue helping Michigan's children and families.

### 4. *Interim events further demonstrate the need for the injunction.*

State Defendants point to nothing that would require the Court to reconsider its prior ruling: no change in law, no change in facts, no new evidence. In fact, interim events highlight the injunction's importance.

Having apparently learned nothing from the Court's last opinion, Attorney General Nessel again took to the bully pulpit. Except, this time she set her sights not only on St. Vincent's reputation, but the Court's:

- "The judge's attacks on Nessel were highly unusual."

- "Children who are wards of this state deserve families who love and respect them . . . not hostile court battles and rhetoric that overshadows the very purpose of this case . . . . Judge Jonker's comments unnecessarily inflamed [the] issue."

*Press Release*, supra n.2. These remarks—along with State Defendants' insistence that Nessel's prior statements were "neutral"—demonstrate that Michigan still does not understand its error. This emphasizes the need for judicial protection.

Additionally, State Defendants' recent appeal cuts against—not for—a stay. As this Court has previously held, "the most prudent course calls for preserving the status quo while awaiting the decision of the appellate court." *Hadix v. Caruso*, No. 4:92-CV-110, 2007 WL 2701972, at *7 (W.D.

Mich. Sept. 10, 2007). That is precisely what the preliminary injunction does.

## II. The Court should not amend or reconsider its preliminary injunction.

### A. The State fails to carry the heavy burden of showing that amendment is warranted.

State Defendants—in a cursory paragraph tacked to the end of the stay motion—ask this Court to amend the preliminary injunction. But a court may only alter or amend its order if there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017); *Goldman v. Michigan*, No. 1:17-CV-774, 2017 WL 6805682, at *1 (W.D. Mich. Nov. 7, 2017) (Jonker, J.) (same). Indeed, the law is clear that a motion to amend "does not permit parties to effectively 're-argue a case.'" *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (citation omitted). This is a high bar, yet State Defendants do not claim to have satisfied any of the four grounds for an amendment, nor do they even cite to this legal standard. For this reason alone, State Defendants' motion must be denied.

### B. The existing injunction is consistent with state contracts, and the State's request is not.

Even had Michigan's motion satisfied this high hurdle, State Defendants misunderstand their own adoption contracts and

misconstrue how adoption placements are made. As their contracts explain, "[w]hen the Contractor has an identified adoptive family for a child under supervision of another agency the Contractor shall work cooperatively with the child's agency in coordinating and sharing responsibility for pre-placement activities and associated costs for transportation and other case services." ECF No. 6-8 at PageID.307. St. Vincent complies with this provision.

This is true even if an adoptive family certified by another agency is adopting a child from a St. Vincent foster home. If, for example, a same-sex or unmarried-cohabiting couple would like to adopt a child in one of St. Vincent's foster homes, St. Vincent would coordinate with the couple's chosen adoption agency, allowing the child to be adopted. Under State contracts, the agency that certifies the adoptive family also oversees the adoption: "The Contractor that has the identified adoptive family *shall be* the agency to perform adoptive activities including: placement, case management, supervision and court related requirements." ECF No. 6-8 at PageID.307 (emphasis added). In practice, this means that the agency which recruits the adoptive family also works with that family to finalize the adoption. This is how the process works *whenever* a couple certified by another agency seeks to adopt a child in St. Vincent's care, and this is how the adoption contract contemplates this process working.

17

In these situations, St. Vincent does not evaluate any adult relationships in the adoptive family and thus is not required to make endorsements and certifications that would violate its sincere religious beliefs. The agency instead provides support, guidance, and information about the child to the adoptive parents' agency, which allows the adoption to be completed successfully. *See* ECF No. 6-8, PageID.307. The agency certifying the adoptive family then files the adoption paperwork with the court and thus is responsible for finalizing the child's placement.

This understanding of how the process works is consistent with what St. Vincent has said throughout this litigation and is consistent with this Court's injunction. As St. Vincent explained, children in the agency's foster homes can be adopted by *any* family in Michigan through MARE, the State's online adoption exchange. Declaration of Gina Snoeyink, ECF No. 6-1 at PageID.235-236, ¶ 17. And this Court came to the same conclusion. *See, e.g.,* ECF No. 69 at PageID.2504 (highlighting the Court's understanding that same-sex couples certified through different agencies have been able to adopt children in St. Vincent's care in the past using MARE). The Court specifically explained that it is "[t]hrough this process," (i.e. by seeking certification with another agency) that "any certified adoptive family, whether a same-sex couple or otherwise, may adopt children in St. Vincent's care." *Id.* The current injunction permits exactly that process. In other words, it permits St. Vincent to comply with the provisions of the State contracts.

18

Thus—even were this Court to put aside the State's failure to satisfy the legal standard required to amend a judgment—the State's request should fail because St. Vincent has and continues to act in accordance with the State's contracts and this Court's injunction with regard to the placement of children in adoptive homes certified by another agency. Instead of raising a legitimate point of clarification, the State simply seeks to evade the Court's order by asking the Court to order something that *no* agency does, that would be inconsistent with the State's own contracts, and that would fundamentally alter the adoption certification and placement process.[9]

## CONCLUSION

For the reasons identified above, this Court should deny both of State Defendants' motions.

Dated: October 18, 2019           Respectfully submitted,

                                  /s/ *Lori Windham*
                                  Lori Windham
                                  Mark Rienzi
                                  Nicholas Reaves
                                  Jacob Coate
                                  The Becket Fund for Religious Liberty
                                  1200 New Hampshire Ave. NW,
                                  Suite 700
                                  Washington, DC 20036

---

[9] Further, to the extent the State seeks an injunction that would run *against* St. Vincent, the State would need to assert a cause of action and satisfy the applicable legal standard necessary for such relief. The State has done no such thing.

Telephone: (202) 955-0095
lwindham@becketlaw.org

William R. Bloomfield (P68515)
Catholic Diocese of Lansing
Lansing, Michigan 48933-1122
(517) 342-2522
wbloomfield@dioceseoflansing.org

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word limit of L. Civ. R. 7.3(b)(i) because, excluding the parts exempted by L. Civ. R. 7.3(b)(i), it contains 4,208 words. The word count was generated using Microsoft Word 2019.

/s/ *Lori Windham*
Lori H. Windham
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW,
Suite 700
Washington, DC, 20036
Tel.: (202) 955-0095
lwindham@becketlaw.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2019, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which sends an electronic notification to all counsel who have entered an appearance on the Docket.

/s/ *Lori Windham*
Lori H. Windham
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW,
Suite 700
Washington, DC, 20036
Tel.: (202) 955-0095
lwindham@becketlaw.org

*Counsel for Plaintiffs*