## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ST. VINCENT CATHOLIC
CHARITIES,

     *Plaintiff,*

  v.

ROBERT GORDON, in his official
capacity as the Director of the
Michigan Department of Health
and Human Services; JOO YEUN
CHANG, in her official capacity as
the Executive Director of the
Michigan Children's Services
Agency; DANA NESSEL, in her
official capacity as Michigan
Attorney General; ALEX AZAR, in
his official capacity as Secretary of
Health and Human Services;
UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES,

     *Defendants.*

No. 1:19-CV-00286

HON. ROBERT J. JONKER

MAG. PHILLIP J. GREEN

## PLAINTIFF'S RESPONSE TO STATE DEFENDANTS'
## MOTION TO REQUEST CERTIFICATION
## TO THE MICHIGAN SUPREME COURT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.......................................................................iii

INTRODUCTION.................................................................................. 1

ARGUMENT ....................................................................................... 3

   I.  The meaning of the 2015 Laws is clear ........................................... 4

   II. This case does not turn on an interpretation of
      Michigan law ...................................................................... 6

   III. Granting this motion will cause undue delay and
       waste judicial resources ................................................... 11

      A. Certifying a question will result in undue delays
         that further harm St. Vincent.................................. 12

      B. Certification will waste judicial resources ................................ 14

      C. This Court should not endorse Michigan's tactics.................... 16

CONCLUSION .................................................................................. 18

CERTIFICATE OF COMPLIANCE....................................................... 19

CERTIFICATE OF SERVICE............................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albers v. Eli Lilly & Co.*,
   354 F.3d 644 (7th Cir. 2004) ................................................................ 16

*Alexander v. Elec. Data Sys. Corp.*,
   13 F.3d 940 (6th Cir. 1994) ................................................................... 6

*In re Amazon.com, Inc.*,
   942 F.3d 297 (6th Cir. 2019) ............................................................ 3, 5

*In re Certified Question from U.S. Dist. Court for Eastern
   Dist. of Mich.*,
   805 N.W.2d 449 (Mich. 2011) ............................................................... 3

*Church of the Lukumi Babalau Aye v. Hialeah*,
   508 U.S. 520 (1993) .............................................................................. 10

*In re Cognate Cases*,
   No. 1:13-CV-1336, 2014 WL 12907670
   (W.D. Mich. June 5, 2014) ................................................................ 4, 11

*Fair v. Kohler Die & Specialty Co.*,
   228 U.S. 22 (1913) ................................................................................... 6

*Lehman Bros. v. Schein*,
   416 U.S. 386 (1974) ........................................................................... 3, 15

*Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*,
   138 S. Ct. 1719 (2018) .......................................................................... 11

*Mattison v. Comm'r of Soc. Sec.*,
   No. 4:05-cv-79 (W.D. Mich. Apr. 20, 2007) ........................................ 12

*In re Nexium Antitrust Litig.*,
   778 F.3d 1 (1st Cir. 2015) .................................................................... 16

*Packer Thomas & Co. v. Lamson & Sessions Co.*,
    No. 4:07MC65, 2007 WL 2886356
    (N.D. Ohio Sept. 27, 2007) .................................................................. 17

*Pennington v. State Farm Mut. Auto. Ins. Co*,
    553 F.3d 447 (6th Cir. 2009) ................................................................. 3

*Sch. Dist. of E. Grand Rapids v. Kent Cty.*
    *Tax Allocation Bd.*,
    415 Mich. 381, 330 N.W.2d 7 (Mich. 1982) ....................................... 16

*St. Vincent Catholic Charities v. Ingham Cty. Bd. of*
    *Comm'rs*,
    No. 19-cv-1050 (E.D. Mich. filed Dec. 13, 2019) ............................... 13

**Statutes**

Mich. Comp. Laws § 14.32 ....................................................................... 16

Mich. Comp. Laws § 722.124e ............................................................... 2, 5

Mich. Comp. Laws § 722.124f .................................................................. 2

## INTRODUCTION

Michigan now seeks to involve a fourth court in this case, and has sought expedited consideration of a motion it could have filed months ago. Worse still, Michigan waited until the day its appellate brief was due to simultaneously ask the Sixth Circuit to dismiss its preliminary injunction appeal (the same injunction Michigan sought, unsuccessfully, to vacate through two "emergency" motions) and ask this Court to consider its expedited motion to certify. Like this Court, the Sixth Circuit denied Michigan's request to stay the injunction pending appeal. Now, rather than continue to appeal an injunction which Michigan claimed was an "emergency" to vacate, Michigan has decided it would rather submit to that injunction, perhaps for years, by certifying a tangential question of state law to the Michigan Supreme Court. This is nonsensical and would only delay the resolution of important constitutional issues.

The law Michigan seeks to certify is clear; for this reason alone, certification is unwarranted. Only exceedingly complex and difficult questions of state law merit certification. But even apart from this, certification is unnecessary. St. Vincent's complaint does not even raise a claim under Michigan state law. Nor did this Court's preliminary

injunction decision depend on an interpretation of Michigan law to conclude that Defendants targeted St. Vincent's sincere religious beliefs. There is, in fact, *no* interpretation of the 2015 Laws[1] that would make Defendants' conduct here permissible under the federal Constitution. Moreover, Michigan could have sought certification nearly nine months ago if it truly believed that the 2015 Laws were "outcome determinative" and at the "heart" of this case. Instead, Michigan removed a separate state court case raising this issue to federal court. Certifying a question to the Michigan Supreme Court now will harm St. Vincent, result in unnecessary delay, and waste judicial resources.

Michigan's own language is telling. Michigan claims only that this Court "*seemingly* interpreted" the state law it seeks to certify and that certification "*could* affect" the outcome of this case. Br., ECF No. 88, PageID.2806, 2809 (emphasis added). But even were that all true (it isn't), the certification standard is not whether certification *might* provide *some* vague benefit. The Court should deny Michigan's motion.

---

[1] The Michigan law at issue is 2015 Public Act 53, codified as Michigan Compiled Laws § 722.124e and § 722.124f.

## ARGUMENT

Certification is rarely used, never required, and left to this Court's discretion. *Pennington v. State Farm Mut. Auto. Ins. Co*, 553 F.3d 447, 449-50 (6th Cir. 2009) ("The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." (citation omitted)). *See Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974) ("[T]he mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit.").

This Court may authorize certification only upon a written finding that "(a) the issue certified is an unsettled issue of state law; (b) the issue certified will likely affect the outcome of the federal suit; and (c) certification of the issue will not cause undue delay or prejudice." W.D. Mich. LCivR 83.1. Indeed, certification is to be granted only in the rarest of circumstances: "[w]e generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *In re Amazon.com, Inc.*, 942 F.3d 297, 300 (6th Cir. 2019) (internal quotation marks and citation omitted).

3

And as this Court has explained, "[t]he State Supreme Court rarely accepts certified questions from the federal courts, and almost never accepts them from the district court," meaning that the certification process frequently leads to long, fruitless delays. *In re Cognate Cases*, No. 1:13-CV-1336, 2014 WL 12907670, at *1 (W.D. Mich. June 5, 2014) (citation omitted); *see also In re Certified Question from U.S. Dist. Court for Eastern Dist. of Mich.*, 805 N.W.2d 449, 450-51 (Mich. 2011) (Markman, J. dissenting) (bemoaning the court's "increasingly regular decisions not to certify questions from the federal courts"). Accordingly, this Court has noted that it would only "be willing to entertain the risk of indefinite delay and almost certain disappointment if the Court were convinced that the outcome . . . inevitably turned on a definitive ruling by the Michigan Supreme Court[.]" *In re Cognate Cases*, 2014 WL 12907670, at *1. That is not the case here.

## I.   The meaning of the 2015 Laws is clear.

As an initial matter, certification is unnecessary because the meaning of the 2015 Laws is clear, and certification is not required to answer the question Michigan has posed. Only exceedingly difficult questions of state law are appropriate for certification, and Michigan has already

suggested that it believes the 2015 Laws are "very clear." Tr., ECF No. 51, PageID.1844; *In re Amazon.com*, Inc., 942 F.3d at 301 (noting that certification is reserved for complex and challenging legal questions). Nor is this law from a foreign or unfamiliar jurisdiction—it is Michigan law. This Court is more than capable of deciding what the 2015 Laws mean, should that be necessary. *Id.* (certification is more often appropriate "where the law at issue is from 'a distant State[.]'") (internal citation omitted).

Further, common sense suggests that Michigan's interpretation of the 2015 Laws cannot be right. Were Michigan's proposed interpretation adopted, the 2015 Laws would be almost meaningless. The plainly stated purpose of the 2015 Laws is to ensure "as many possible qualified adoption and foster parent agencies in [the] state." Mich. Comp. Laws § 722.124e(c) (2015). But if protection under the law—as Michigan claims—does not extend to faith-based agencies providing foster care through a government contract (as St. Vincent does), then the law does not protect foster care providers at all. The *only* way to provide foster care services in the state of Michigan is through a contract and license with the State. Mem., ECF No. 6 at PageID.174. And, if the law really was so

limited, Attorney General Nessel's statements condemning the 2015 Laws as "hate" are *even more* inflammatory and inappropriate.

## II.   This case does not turn on an interpretation of Michigan law.

But even putting aside how the 2015 Laws are to be interpreted, certification is unnecessary as this Court's preliminary injunction order did not rely on the 2015 Laws. As Michigan readily admits, St. Vincent "did not specifically plead a state-law count." Mot., ECF No. 87, PageID.2792. Instead, it sought relief only under the Constitution and federal law. Compl., ECF No. 1, PageID.42-50. Seeking such relief was fully within St. Vincent's prerogative as plaintiff and "master of [its] complaint." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994); *see also Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon."). Accordingly, interpretation of the 2015 Laws is certainly not required as a legal matter.

Yet Michigan now—and for the first time—claims that the 2015 Laws might still somehow be "outcome determinative" and "necessary" to the resolution of this case. Br., ECF No. 88, PageID.2805. Michigan further argues that this Court "seemingly interpreted" the 2015 Laws when

6

analyzing Michigan's targeting of St. Vincent's religious beliefs. *Id.* at PageID.2806.[2] Not so. As this Court is well aware, it granted St. Vincent a preliminary injunction based on overwhelming evidence that Michigan disrupted the well-established status quo and took unconstitutional action against one of the most effective foster care agencies in the state. Michigan did this because it disliked St. Vincent's sincere religious beliefs.

Numerous considerations informed this Court's analysis: "[t]he history of this case, the *Dumont* litigation, the Michigan Legislature's enactment of 2015 PA 53, the 2018 Campaign for Michigan Attorney General and General Nessel's statements" all "create[d] a strong inference" of religious targeting. Op., ECF No. 69, PageID.2517. Indeed,

---

[2] Michigan also selectively quotes the Rule 16 Conference transcript to suggest that both this Court and St. Vincent somehow conceded that certification would be appropriate. That is not the case. Instead, the transcript shows that (1) this Court clearly recognized that the 2015 Laws were not directly at issue in the litigation and (2) counsel for St. Vincent made clear that while an interpretation of the 2015 Laws that favored St. Vincent would be "a great benefit," "my clients are here in federal court because they are all too aware of what can happen when they are jerked around this way and that by the vicissitudes of politics. And that's why they are here to try and vindicate their rights under the federal Constitution[.]" Tr., ECF No. 51, PageID.1844. St. Vincent position on this issue has not changed.

7

this Court's opinion did not discuss the 2015 Laws until page ten—and even then, it did so only after discussing the historic status quo of cooperation. *Id.* at PageID.2503. 2507. While St. Vincent maintains that the 2015 Laws were passed to protect faith-based agencies that contract with the State from being forced to violate their sincere religious beliefs in the provision of public foster care and adoption services, Michigan's actions would be unconstitutional regardless of what that law said.

Indeed, putting aside the 2015 Laws, the record remains rife with evidence of religious targeting. Defendants' actions and statements speak for themselves and highlight the animosity toward St. Vincent's religious beliefs. *See* Op., ECF No. 69, PageID.2518. Further, as this Court found, Defendants chose to reverse a long-established policy of accommodation and tolerance in the foster care system that stretched back far earlier than the 2015 Laws. As this Court explained, "[h]istorically, the State of Michigan has permitted St. Vincent to refer prospective parents to other agencies if St. Vincent's sincerely held religious beliefs prevented it from assisting with the certification and licensing recommendation process." *Id.* at PageID.2503.

This "historic[]" practice of accommodation is, to be sure, consistent with the 2015 Laws, but does not depend on them. *See Id.* at PageID.2517, 2518 ("Consistent with the contract and the 2015 Laws, St. Vincent had a longstanding practice of referring to other agencies same-sex and unmarried couples seeking assistance with the certification process."); Mot. to Dismiss at 25, *Dumont v. Lyon*, No. 2:17-cv-13080-PDB-EAS (E.D. Mich. Dec. 15, 2017), ECF No. 16 (recognizing "Michigan's longstanding practice of contracting with faith-based CPAs while ensuring that every person seeking to adopt has the ability to do so").

Nor would state court interpretation of the 2015 Laws change the facts: Michigan previously took the position that it needed to continue working with religious adoption agencies like St. Vincent, and that it was bound to comply with the state law by permitting those agencies to follow their religious beliefs; it now takes the opposite position. *See id.* at 1. This about-face demonstrates religious targeting. The 2015 Laws are therefore not necessary to an analysis of how and why Defendants' actions constitute religious targeting. Michigan's sudden

9

upending in 2019 of a successful status quo to make way for a new policy aimed specifically at faith-based agencies leaves no doubt.[3]

Nor would even an adverse interpretation of the 2015 Laws by the Michigan Supreme Court resolve any of St. Vincent's claims. In the unlikely event that the Michigan Supreme Court accepted Michigan's tortured statutory interpretation, the State's actions would still be unconstitutional. Actions taken in accord with valid state laws may still run afoul of the Free Exercise Clause if they are carried out in a way that targets religious exercise. *E.g., Church of the Lukumi Babalau Aye v. Hialeah,* 508 U.S. 520, 534 (1993) (Hialeah's ordinances, including those that merely incorporated existing state law, violated the Free Exercise

---

[3] Furthermore, the question Michigan has sought to certify would resolve only a very specific issue related to the 2015 Laws (regarding when its protections are in force). *See* Mot., ECF No. 87, PageID.2792. Resolution of this issue would not change (1) Attorney General Nessel's statements about the operation of the 2015 Laws, Op., ECF No. 69, PageID.2510, 2518; (2) Michigan's prior admissions regarding the meaning of the 2015 Laws, PageID.2510; (3) Michigan's historic practice of accommodation preceding the 2015 Laws, PageID.2518; (4) Michigan's new understanding of the 2015 Laws, PageID.2518; or (5) the Michigan Legislature's statements regarding its intent to protect faith-based agencies in the text of the 2015 Laws, PageID.2498, 2507, 2524. None of these facts (which are far more relevant to this Court's analysis than the technical operation of the 2015 Laws) depend on how the Michigan Supreme Court might resolve the proposed certified question.

Clause); *Masterpiece Cakeshop v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1734 (2018) (Kagan, J. & Breyer, J., concurring) (concluding that the underlying law was neutral and generally applicable but that the government's actions were nonetheless "infected by religious hostility or bias" and thus unconstitutional). Here there is no question that— regardless of what Michigan's official policy states—Defendants' statements and actions evidenced unconstitutional religious targeting.

In short, this Court neither entertained a claim under the 2015 Laws nor needed to interpret them when granting St. Vincent an injunction based on its religious targeting claims. The outcome of this case thus does not depend on the interpretation of the 2015 Laws, making certification unnecessary and improper. *See In re Cognate Cases*, 2014 WL 12907670, at *1.

## III.  Granting this motion will cause undue delay and waste judicial resources.

Michigan has repeatedly sought to avoid adjudication of the merits of *this* case in *this* forum, but its actions will only delay the inevitable: a ruling that Defendants' conduct is unconstitutional. The State first sought to transfer this case to the Eastern District despite clear law forbidding the transfer. *See* Mot., ECF No. 29, PageID.525. The State was

11

then unhappy with this Court's preliminary injunction ruling and sought emergency relief both from this Court and from the Sixth Circuit. Mot., ECF No. 72, PageID.2534; Mot., *Buck v. Gordon*, No. 19-2185 (6th Cir. Oct. 29, 2019), ECF No. 16-1. Then—after testing the waters in the Sixth Circuit and getting soundly rejected by a motions panel—the State sought to dismiss its appeal on the very day its opening brief was due. Mot., *Buck v. Gordon*, No. 19-2185 (6th Cir. Jan. 6, 2020), ECF No. 33. And only now, over three months after this Court entered its preliminary injunction order and almost nine months after this case was filed, has the State suddenly decided that the 2015 Laws' importance to this case "cannot be overstated" and that its motion to certify somehow merits *expedited* consideration by this Court. Br., ECF No. 88, PageID.2810. This Court should not endorse Michigan's ill-conceived attempt to avoid prompt resolution of this important First Amendment case.

### A. Certifying a question will result in undue delays that further harm St. Vincent.

As this Court knows, the certification process can take years, indefinitely stalling St. Vincent's case. Order, *Mattison v. Comm'r of Soc. Sec.*, No. 4:05-cv-79 (W.D. Mich. Apr. 20, 2007), ECF No. 16 (staying the case for five years while the Michigan Supreme Court certified a

question). Michigan claims that such a delay would not harm St. Vincent because the preliminary injunction remains in place. Not so—even with the injunction in place, an indefinite and uncertain delay harms St. Vincent and those it serves. While preliminary relief confirming St. Vincent's likely success did "significantly reduce the immediate uncertainty and anxiety" caused by Michigan's threatened closure of the agency, without final resolution of this case, St. Vincent's future still remains in precarious limbo. Decl., ECF No. 42-2, PageID.1570.

Worse still, other jurisdictions—undeterred by the preliminary injunction—have sought retaliation against St. Vincent for protecting its First Amendment rights. *St. Vincent Catholic Charities v. Ingham Cty. Bd. of Comm'rs*, No. 19-cv-1050 (E.D. Mich. filed Dec. 13, 2019). Staff have left St. Vincent out of concern over the agency's future, and several prospective families have expressed similar concerns. Decl., ECF No. 42-2, PageID.1570. Permitting the state to drag out final resolution of this case indefinitely (and to throw up distractions and unnecessary procedural hurdles along the way) will exacerbate these harms. *Id*. And given that interpretation of the 2015 state law is not essential to

resolution of St. Vincent's claims, there is no reason to impose this added burden on the agency and on this Court.[4]

### B. Certification will waste judicial resources.

Michigan claims that certification will preserve judicial resources, but there is no reason to think that certification will do anything but result in needless additional briefing and argumentation before yet *another* court. Michigan has filed four expedited motions in this case, sought to unnecessarily delay briefing pending the resolution of a motion to intervene, and is now seeking to dismiss an appeal in which it previously claimed a need for emergency relief from the underlying injunction. All this has already taxed limited judicial resources for no reason.

And only now—months after this Court's preliminary injunction ruling and on the day Michigan's appellate brief was due in the Sixth

---

[4] Until filing this motion, Michigan claimed in multiple briefs that emergency relief was necessary to prevent "significant harm to third-parties" including "harm to children" through "delay in placement," "stigma," and "separation from siblings." Mot., ECF No. 73, PageID.2559. Michigan now claims that any harm resulting from the indefinite delay caused by certification will fall "almost entirely on State Defendants," without any mention of the previously alleged third-party harms.  Br., ECF No. 88, PageID.2810; Mot. at 30, *Buck v. Gordon*, No. 19-2185, ECF No. 16-1, (6th Cir. Oct. 29, 2019). Any future claims of urgency or third-party harm should not be credited.

14

Circuit—do Defendants claim that expedited consideration of a motion to certify is necessary. Michigan calls this an "opportune" time for certification. Br., ECF No. 88, PageID.2813. Defendants have tried to bob and weave from one forum to another—from here, to the Eastern District of Michigan, to the Sixth Circuit, and back here again. Lassoing a fourth court into Michigan's rodeo will only exacerbate the problem (and the judicial waste). *See generally Lehman Bros.*, 416 U.S. at 390 (The "mere" interpretation of a "local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit.").

Further, there is no reason to burden this case with Michigan's desire to resolve a plainly secondary question of state law. Had Michigan thought that resolution of the 2015 Laws in a state court forum was of utmost importance, it was presented with an ideal vehicle to resolve that issue. In *Catholic Charities v. Michigan Department of Health and Human Services*, Catholic Charities of West Michigan filed a case in state court that explicitly brought claims against Michigan in reliance on the 2015 Laws. Not. of Removal, 2:19-cv-11661 (E.D. Mich. June 5, 2019), ECF No. 1. Yet instead of seeking to litigate this state law issue in state court, Michigan removed the case to federal court. *Id.* Similarly,

15

Defendants could have pursued an Attorney General's opinion interpreting this law. *See Sch. Dist. of E. Grand Rapids v. Kent Cty. Tax Allocation Bd.*, 330 N.W.2d 7, 12 (Mich. 1982) ("[I]t is universally recognized that among the primary missions of a state attorney general is the duty to give legal advice [] to . . . agencies of state government."); Mich. Comp. Laws § 14.32 ("It shall be the duty of the attorney general, when required, to give his opinion upon all questions of law submitted to him by . . . [a] state officer[.]"). But instead, after removing a state court case with state law claims to federal court, Michigan wants a federal court case with federal claims decided in state court. This does nothing to promote judicial economy.

### C. This Court should not endorse Michigan's tactics.

Michigan's certification gambit would simply delay this court's adjudication and create a sideshow to distract from Michigan's unconstitutional religious targeting. Allowing a government actor to manipulate federal and state court jurisdiction in this way would countenance inappropriate "strategic behavior." *Albers v. Eli Lilly & Co.*, 354 F.3d 644, 646 (7th Cir. 2004). *See In re Nexium Antitrust Litig.*, 778 F.3d 1, 2 (1st Cir. 2015) ("A party should not be able to manipulate the

formation of precedent by dismissing an appeal." (cleaned up)); *Packer Thomas & Co. v. Lamson & Sessions Co.*, No. 4:07MC65, 2007 WL 2886356, at *2 (N.D. Ohio Sept. 27, 2007) ("The Court will not countenance this untimely effort to find a more favorable judicial ear in a fresh forum.").

Now—with the preliminary injunction firmly in place—Michigan has chosen to try to dismiss its supposedly urgent appeal and instead throw this case into indefinite delay by seeking to certify a tangential question of state law to the Michigan Supreme Court. Unable to win on the merits, Michigan is attempting to run out the clock, or at least significantly delay the inevitable.

This Court should not indulge such behavior, *especially* when there is no sound justification for seeking certification in the first place, much less nine months into this litigation.

## CONCLUSION

For the reasons stated above, this Court should deny Defendants'
Motion to Request Certification to the Michigan Supreme Court.


Respectfully submitted,

William R. Bloomfield (P68515)  /s/ *Lori Windham*
Catholic Diocese of Lansing     Lori H. Windham
Lansing, Michigan 48933-1122    Mark L. Rienzi
(517) 342-2522                  Nicholas R. Reaves
wbloomfield@dioceseoflansing.org William J. Haun
                                Jacob M. Coate
                                The Becket Fund for Religious
                                Liberty
                                1200 New Hampshire Ave. NW
                                Suite 700
                                Washington, DC 20036
                                Telephone: (202) 955-0095
                                Facsimile: (202) 955-0090

*Counsel for Plaintiff*

18

## CERTIFICATE OF COMPLIANCE

This memorandum complies with the word limit of W.D. Mich. LCivR 7.3(b)(i) because, excluding the parts exempted by Rule 7.3(b)(i), it contains 3,533 words. The word count was generated using Microsoft Word 2019.

<u>/s/ *Lori Windham*</u>
Lori H. Windham
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW,
Suite 700
Washington, DC, 20036
Tel.: (202) 955-0095
lwindham@becketlaw.org

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2020, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which sends an electronic notification to all counsel who have entered an appearance on the Docket.

/s/ *Lori Windham*
Lori H. Windham
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW,
Suite 700
Washington, DC, 20036
Tel.: (202) 955-0095
lwindham@becketlaw.org